IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

JACKI EASLICK, LLC, and
JE CORPORATE LLC,

                    Plaintiffs,

v.

CJ EMERALD, ABEL TANG, ACCENCYC US,
ATRISS, AUTROW, BESTOYARD, BOKWIN,
BONNIE CHILD, CBTONE, COCO'S HOUSE,
COLORED FLAG, DSVENROLY DIRECT,
ENTERTAINMENT FIRST, FACING THE OCEAN,
FEPERIG, FITNICE OFFICIAL, FULL OF
STARS.MIN, GARDEISH, GUTAPO, HEMPHILL
HEN, HERLLOY, HOME DEPUTY, IDUSHOME,
JAGOGH YSON, JINGWEI-US, JONERCEY, JRUIA,
KARIN YANG, KEYBOO INC, LASENERSM,
LIMICOUNTS, LIPU HOOKER, LITEVISO,
LMPOSING, LUKINM, M.METEORITE,
MAYBELLER, MUYUSH, MYFOLRENA
OFFICIAL, MZEKGXM, NEZA-US, NISHUNA,
PATRICK YAO, PBFZ, PENGWH SHOP, QIKITA,
ROBITENO, SHANNON WENHA, SI PEIHONG,
SINUOXIANG, SOMIROW, SURMOUNTY,
THINKCREATORS, THOMAS ZACK YANG,
TRACY ZHONG, TRAVELNA, UFURMATE US,
UME SPORTS, VITONG, WAITKEY DIRECT,
WEKIWGOT-US, YANHUSLSNE, ZARA LEI,
ZEDODIER, ZGCZZ, ZHANGHETING, and ZHONG
ROY,

                    Defendants.

Civil Action No. 2:23-cv-2000

**<u>FILED UNDER SEAL</u>**

## <u>COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF</u>

Plaintiffs hereby sue Defendants, the Individuals, Partnerships, and Unincorporated

Associations identified in the Caption, which are set forth in **Schedule "A"** hereto (collectively

"Defendants"). All Defendants are knowingly and intentionally promoting, advertising,

distributing, offering for sale, and selling patent infringing versions of Plaintiffs' patented TOTE HANGER® brand handbag hanger hook which infringe U.S. Patent No. D695,526 ("Plaintiffs' Patent"), using at least one of the Amazon.com, eBay.com, Joybuy, Temu, Wish.com, Walmart.com, and Aliexpress.com online marketplaces ("Internet Marketplaces") operating under the seller identities as set forth on **Schedule "A"** hereto (the "Seller IDs")("Infringing Products'). In support of its claims, Plaintiffs allege as follows:

## INTRODUCTION

1. Before starting her own companies, Jacklyn Easlick was the Product Development Director for Vera Bradley and ran that company's office and design studio. After a medical emergency that landed her in the ICU, she left Vera Bradley in 2010. Jobless, she began Jacki Easlick, LLC to design and create her own products. From her experience and travels, she realized that consumers needed a way to hang and organize their handbags, so she designed and invented the TOTE HANGER® brand handbag hanger hook. Jacki Easlick is the sole inventor and developer of the patented TOTE HANGER® brand handbag hanger hook. Plaintiff Jacki Easlick, LLC ("JEL") is the 100% owner of the Plaintiff JE Corporate LLC ("JEC") which owns all the intellectual property, including the trademarks and US Design Patent No.D695,526 S ("Plaintiffs' Patent"), the subject of which is the TOTE HANGER® brand handbag hanger hook.

2. Plaintiffs have created and innovated all of their own products, packaging, and advertising. This is a costly effort involving graphic design, industrial design, and tooling. It takes time to create, design, test, redesign, and retest prototypes. Products are introduced to retailers via tradeshows across the world. This introduction process costs a lot of money but it is a chance to show customers the quality and use of the product. Today, Plaintiffs' JACKI EASLICK® brand encompasses many high quality, affordable luxury products, including, but

not limited to women's clothing, shoes, handbags, jewelry, and other accessories, such as the TOTE HANGER® brand handbag hanger hook ("Plaintiffs' Product")

3. Genuine goods comprising Plaintiffs' Product as claimed in Plaintiffs' Patent are widely legitimately advertised and promoted by Plaintiffs, their authorized distributors, and unrelated third parties via the Internet. Over the past several years, visibility on the Internet, particularly via Internet search engines such as Google, Yahoo!, and Bing is increasing important to Plaintiffs' overall marketing.

4. Plaintiffs' patented TOTE HANGER® is an innovative solution for hanging handbags on a standard closet rod. Screen shots of the Plaintiffs' Amazon Store and Websites showing Plaintiffs' Product are shown in **Complaint Exhibit 2**

5. Defendants' sale, distribution, and advertising of the Infringing Products are highly likely to cause consumers to believe that Defendants are offering genuine versions of Plaintiffs' Product when in fact they are not.  To illustrate, below are several examples which vividly show that the Infringing Products themselves and the manner in which they are marketed is designed to confuse and mislead consumers into believing that they are purchasing Plaintiffs' Product or that the Infringing Products are otherwise approved by or sourced from Plaintiffs:

| Plaintiffs' Product | Listing of Defendant CJ Emerald Showing Infringing Design |
|---|---|
|  |  |
| Plaintiffs' Product | Listing of Defendant Patrick Yao Showing Infringing Design |
|  |  |
| Plaintiffs' Product | Listing of Defendant NEZA-US Showing Infringing Design |
|  |  |

Additional photograph comparisons of Plaintiffs' Product and the Infringing Products appear in **Exhibit 1** attached to the Complaint.

6. As poorly manufactured products, there is a risk of injury and disappointment from the confused customers.

7. The Infringing Products threaten to destroy the reputation of high quality that Plaintiffs' Product has earned.

8. Plaintiffs developed and sell their TOTE HANGER® brand handbag hanger hook under the registered TOTE HANGER® trademark ("Plaintiffs' Mark"). No. 4408783 for "metal hooks" in class 6. A copy of the trademark registration certificate is attached to the Complaint as **Exhibit 3A.** Plaintiffs also own US Design Patent D 695,526 S, the subject of which is the ornamental design of Plaintiffs' Product. ("Plaintiffs' Patent" or "Plaintiffs' Design Patent") (Figures of the Plaintiffs' Patent are shown below).





A copy of the Plaintiffs' Design Patent is attached to the Complaint as **Exhibit 3B**.

9. On information and belief, Defendants' sale of Infringing Products gives rise to a plausible expectation that discovery will reveal that Defendants' actions all arise from the same transaction, occurrence, or series of transactions. Specifically, on information and belief, Defendants are actively participating in a conspiracy to distribute and sell Infringing Products. For example, Defendants, on information and belief, are working together to manufacture, arrange the manufacture of and/or sell and otherwise distribute the Infringing Products. Moreover, the Infringing Products share similar characteristics including, for example, colors, size, and design.

10. This is an action for federal patent infringement

**JURISDICTION AND VENUE**

11. This Court has subject matter jurisdiction over this action pursuant to 35 U.S.C. § 271 and The All Writs Act, 28 U.S.C. § 1651(a).

12. This Court may exercise personal jurisdiction over a non-resident of the State in which the Court sits to the extent authorized by the state's laws. Fed. R. Civ. P. 4(e). Pennsylvania authorizes personal jurisdiction over the Defendant pursuant to 42 Pa. Cons. Stat. §

5322 (a) which provides in pertinent part: "A tribunal of this Commonwealth may exercise personal jurisdiction over a person ... as to a cause of action or other matter arising from such person: (1) Transacting any business in this Commonwealth. Without excluding other acts which may constitute transacting business for the purpose of this paragraph: (ii) The doing of a single act in this Commonwealth for the purpose of thereby realizing pecuniary benefit ... (3) Causing harm or tortious injury by an act or omission in this Commonwealth. (4) Causing harm or tortious injury by an act or omission outside this Commonwealth ... (10) Committing any violation within the jurisdiction of the Commonwealth of any statute, home rule charter, local ordinance or resolution, or rule or regulation promulgated thereunder by any government unit or of any order of court or other government unit." In the alternative, Federal Rule of Civil Procedure 4(k) confers personal jurisdiction over the Defendant because, upon information and belief, Defendants regularly conduct, transact and/or solicit business in Pennsylvania and in this judicial district, and/or derive substantial revenue from their business transactions in Pennsylvania and in this judicial district and/or otherwise avail themselves of the privileges and protections of the laws of the Commonwealth of Pennsylvania such that this Court's assertion of jurisdiction over Defendants does not offend traditional notions of fair play and due process, and/or Defendants' illegal infringing actions caused injury to Plaintiff in Pennsylvania and in this judicial district such that Defendants should reasonably expect such actions to have consequences in Pennsylvania and in this judicial district, for example:

a. Upon information and belief, Defendants were and/or are systematically directing and/or targeting their business activities at consumers in the United States, including Pennsylvania, through on-line platforms with Merchant Storefronts (as defined *infra*), via at least one of Amazon.com, eBay.com, Joybuy, Temu, Wish.com,

Walmart.com, and Aliexpress.com, under the Seller IDs, as well as any and all as yet undiscovered accounts with Merchant Storefronts held by or associated with Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them ("User Accounts"), through which consumers in the United States, including Pennsylvania, can view the one or more of Defendants' Merchant Storefronts that each Defendant operates, uses to communicate with Defendants regarding their listings for Infringing Products and to place orders for, receive invoices for and purchase Infringing Products for delivery in the U.S., including Pennsylvania, as a means for establishing regular business with the U.S., including Pennsylvania.

b. Upon information and belief, certain Defendants are sophisticated sellers, each operating one or more commercial businesses using their respective User Accounts through which Defendants, their respective officers, employees, agents, servants and all persons in active concert of participation with any of them, operate storefronts to manufacture, import, export, advertise, market, promote, distribute, offer for sale and/or otherwise deal in products, including the Infringing Products, which are held by or associated with Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them ("Merchant Storefront(s)") in wholesale quantities at significantly below-market prices to consumers worldwide, including to those in the U.S., and specifically Pennsylvania.

c. Upon information and belief, Defendants' Merchant Storefronts reflect multiple sales to consumers all over the world, including repeat sales to consumers in the U.S. and into this judicial district.

d. Upon information and belief, all Defendants accept payment in U.S. Dollars and offer shipping to the U.S., including to Pennsylvania and specifically to the Pennsylvania Address (as defined *infra*).

e. Upon information and belief, Defendants have transacted business with consumers located in the U.S., including Pennsylvania, for the sale and shipment of Infringing Products (as defined *infra*).

f. Upon information and belief, Defendants are employing and benefiting from substantially similar paid advertising and marketing and advertising strategies in order to make their Merchant Storefronts selling illegal goods appear more relevant and attractive to search result software across an array of search words, including but not limited to "TOTE HANGER". By their actions, Defendants are causing concurrent and indivisible harm to Plaintiffs and the consuming public by (i) depriving Plaintiffs of their right to fairly compete for space within the various on-line marketplace search results and reducing the visibility of the Plaintiffs' Product on various on-line marketplaces and/or diluting and driving down the retail market price for Plaintiffs' Product; (ii) causing an overall degradation of the value of the goodwill associated with Plaintiffs' marks and goods; and (iii) increasing Plaintiffs' overall cost to market its goods and educate consumers about brands.

g. Upon information and belief, Defendants have cooperated, communicated their plans with one another, shared information, and coordinated their efforts, all in order to create an illegal marketplace operating in parallel to the legitimate marketplace of Plaintiffs' and the legally authorized resellers of Plaintiffs' genuine goods.

h. Upon information and belief, Defendants are concurrently targeting their infringing activities toward consumers and causing harm in Allegheny County, Pennsylvania.

i. Upon information and belief, Defendants likely reside and/or operate in or, though not foreign, operate out of or from foreign jurisdictions with lax trademark and patent enforcement systems and are cooperating by creating an illegal stream of infringing and Infringing goods.

j. Upon information and belief, Defendants are aware of Plaintiffs' Product, and are aware that their illegal infringing actions alleged herein are likely to cause injury to Plaintiffs in the United States, in Pennsylvania and in this judicial district specifically, as Plaintiffs conduct substantial business in Pennsylvania.

k. Plaintiffs are suffering irreparable and indivisible injury and suffered substantial damages as a result of Defendants' unauthorized and wrongful sale of Infringing and infringing goods.

13. Venue is proper, *inter alia*, pursuant to 28 U.S.C. § 1391 and 28 U.S.C. § 1400(b) because, for example:

a. Upon information and belief, Defendants conduct, transact, and/or solicit business in this judicial district.

b. Upon information and belief, Defendants or their agent(s) may be found in this district because personal jurisdiction is proper in this district.

c.  Upon information and belief, this is a judicial district in which a substantial part of the events or omissions giving rise to the infringement claims occurred, or a substantial part of the property that is the subject of the action is situated.

d.  Defendants not resident in the United States may be sued in this judicial district because personal jurisdiction is proper in this district.

## THE PLAINTIFFS

14. Plaintiffs, Jacki Easlick, LLC ("JEL"), with a registered address of 625 Milton Road, Rye, NY 10580, and  JE Corporate LLC ("JEC"), with a registered address of 138A E Park Avenue, Long Beach, NY 11561, are limited liability companies organized under the laws of New York.

15. Plaintiffs have spent substantial time, money, and effort in building up and developing consumer recognition, awareness and goodwill in Plaintiffs' Mark and Product. The success of the Plaintiffs' Product is due in part to Plaintiffs' marketing and promotional efforts. These efforts include advertising and promotion through television, retailer websites, including Etsy and Wayfair, and other internet-based advertising, print, participation in trade shows, among other efforts, including in Pennsylvania in The Container Stores and Lowes. Plaintiffs' Product has been featured on *Get Organized* with *Home Edit* on Netflix, websites, social media, and various point-of-sale materials.

16.  Like many other brand owners, Plaintiffs suffer ongoing daily and sustained violations of their rights at the hands of infringers, such as Defendants herein, who wrongfully reproduce Plaintiffs' Product for the twin purposes of (i) duping and confusing the consuming public and (ii) earning substantial profits from the sale of their Infringing Products.  The natural and intended byproduct of Defendants' actions is the erosion and destruction of the goodwill

associated with Plaintiffs' Product and the destruction of the legitimate market sector in which Plaintiffs operate.

17. The recent explosion of counterfeiting and infringement over the Internet, including through online marketplace platforms, has created an environment that requires brand owners, such as Plaintiffs, to expend significant time and money across a wide spectrum of efforts in order to protect both consumers and Plaintiffs from the ill effects of confusion and the erosion of the goodwill associated with Plaintiffs' brand and products.

## THE DEFENDANTS

18. The Defendants are individuals and/or business entities of unknown makeup, each of whom, upon information and belief, either reside or operate in foreign jurisdictions, or (though not foreign) redistribute products from the same or similar sources in those locations. Defendants have the capacity to be sued pursuant to Federal Rule of Civil Procedure 17(b). Defendants target their business activities toward consumers throughout the United States, including within this district, and conduct pervasive business through the operation of at least one of the Internet based online marketplaces Alibaba.com, AliExpress.com Amazon.com, eBay.com, Joybuy, Temu.com, Walmart.com and Wish.com under the Seller IDs.

19. Defendants use aliases in conjunction with the operation of their businesses, including but not limited to those as set forth in **Schedule "A"** hereto.

20. Defendants are the past and present controlling forces behind the sale of products bearing and/or using infringements of at least one of the Plaintiffs' Patent and Works, and/or a substantially similar copy of Plaintiffs' Works as described herein using at least the Seller IDs.

21. Upon information and belief, Defendants directly engage in unfair competition with Plaintiffs and its authorized sellers by advertising, offering for sale and selling goods bearing

and/or using infringements of Plaintiffs' Works and Patent to consumers within the United States and this district through several fully interactive, commercial Internet websites and Internet based e-commerce stores operating under, at least, the storefronts, the Seller IDs, and any additional domain names, websites and corresponding website URLs or seller identifications and store URL aliases not yet known to Plaintiffs. Defendants have purposefully directed some portion of their illegal activities towards consumers in the Commonwealth of Pennsylvania through the advertisement, offer to sell, sale, and/or shipment of Infringing Products and infringing goods into the Commonwealth.

22. Defendants have registered, established, or purchased, and maintained the online marketplace website storefronts and Seller IDs. Upon information and belief, Defendants have engaged in fraudulent conduct with respect to the registration of the storefronts and Seller IDs by providing false and/or misleading information to the Internet based e-commerce platforms where they offer for sale and/or sell, during the registration or maintenance process related to their respective Seller ID. Upon information and belief, Defendants have anonymously registered and maintained some of the Seller IDs for the sole purpose of engaging in illegal infringing activities.

23. Upon information and belief, Defendants will continue to register or acquire new seller identification aliases for the purpose of selling and offering for sale goods bearing and/or advertised using confusingly similar imitations of Plaintiffs' Works and infringing Plaintiffs' Patent unless preliminarily and permanently enjoined.

24. Defendants' Internet-based businesses amount to nothing more than illegal operations established and operated in order to infringe the intellectual property rights of Plaintiffs.

25. Defendants' business names, i.e., the Seller IDs, associated payment accounts, and any other alias seller identification names used in connection with the sale of infringing goods bearing and/or using Plaintiffs' Works and Patent are essential components of Defendants' online activities and are the means by which Defendants further their infringement scheme and cause harm to Plaintiffs. Moreover, Defendants are using Plaintiffs' Works to drive Internet consumer traffic to their e-commerce stores operating under the Seller IDs, thereby creating, and increasing the value of the Seller IDs and decreasing the size and value of Plaintiffs' legitimate consumer marketplace at Plaintiffs' expense.

## COMMON FACTUAL ALLEGATIONS

**Plaintiffs' Patented TOTE HANGER®**

26. Plaintiffs developed and sell their TOTE HANGER® brand handbag hanger hook under the registered TOTE HANGER® trademark ("Plaintiffs' Mark"). Plaintiffs' Product is proudly manufactured using the highest quality materials and processes. Below are images of Plaintiffs' Products and packaging (ASIN[1]   B07GJ1FVGC), which retail for $12.99:

---

[1]    Refers to Amazon Standard Identification Number. Each product is assigned a unique ASIN when listed on Amazon.






27. Plaintiffs own a United States patent for its unique product. Plaintiffs' Product is the subject of a U.S. Design Patent referred to herein as "Plaintiffs' Patent."

28. Because of Plaintiffs' Patent on Plaintiffs' Product, no competitor can lawfully make, use, offer for sale, or sell a competing product that infringes Plaintiffs' patent.

29. Like many other rights owners, Plaintiffs suffer ongoing daily and sustained violations of its copyright, trademark, trade dress, and patent rights at the hands of infringers, such as Defendants herein. Plaintiffs are harmed, the consuming public is duped and confused, and the Defendants earn substantial profits in connection with the infringing conduct.

30. In order to combat the harm caused by the combined actions of Defendants and others engaging in similar infringing conduct, Plaintiffs have expended significant resources in connection with their intellectual property enforcement efforts. The recent explosion of infringement over the Internet has created an environment that requires companies to expend significant time and money across a wide spectrum of efforts in order to protect both consumers and itself from infringement of its copyrights, trademark rights and patent rights.

31. Upon information and belief, at all times relevant hereto, Defendants in this action had full knowledge of Plaintiffs' copyrights, trademark rights, trade dress, and/or patent rights, including Plaintiffs' exclusive right to use and license such intellectual property and the goodwill associated therewith. Plaintiffs have complied with the Patent Act and marked their Products providing actual notice of their design patent.

32. Defendants' actions have resulted in actual confusion in the marketplace between Defendants' goods and genuine Plaintiffs' Product. As may be seen by reviewing the Dee Odell Declaration, Exhibit 1, and the Plaintiffs' Design Patent, each of the Defendants' products infringes on the Plaintiffs' Patent. Additionally, Plaintiffs have filed the expert Declaration of Jacklyn Easlick indicating that she has reviewed all the pre-filing evidence and concluded that

each of the products identified in Exhibit 1 infringes on the Plaintiffs' Design Patent. The overall combination and arrangement of all non-functional design elements of Plaintiffs' Product and Works, including its product insert, are inherently distinctive and/or have acquired secondary meaning in the mind of the purchasing public.

**The Online Marketplace Platform and Defendants' User Accounts**

33. Online marketplace platforms (also referred to as "Third Party Service Provider"), including but not limited to Amazon.com, eBay.com, Joybuy, Temu, Wish.com, Walmart.com, and Aliexpress.com, allow manufacturers, wholesalers and other third party merchants, like Defendants, to advertise, distribute, offer for sale, sell and ship their wholesale and retail products originating from China directly to consumers worldwide and specifically to consumers residing in the United States, including Pennsylvania.

34. Defendants are individuals and/or businesses, who, upon information and belief, are located in China and other foreign countries but conduct business in the United States and other countries by means of their User Accounts and on their Merchant Storefronts on Amazon.com, aliexpress.com, eBay.com, Joybuy, Temu, Walmart.com, and/or wish.com, as well as potentially yet undiscovered additional online marketplace platforms.

35. Through their Merchant Storefronts, Defendants offer for sale and/or sell consumer products, including Infringing Products, and target and ship such products to customers located in the United States, including Pennsylvania, and throughout the world.

**Defendants' Wrongful and Infringing Conduct**

36. Defendants are promoting and advertising, distributing, selling and/or offering for sale copies of Plaintiffs' Product in interstate commerce that infringes copyright rights, trade

dress rights, and patent rights (collectively referred to as, "Infringing Product(s)" or "Infringing Product(s)"), through the fully interactive Internet based e-commerce stores operating under the Seller IDs:

a. Defendants' competing goods look nearly identical, which creates a likelihood of confusion as to source, as Defendants' competing goods are confusing similar imitations of Plaintiffs' Product.

b. Defendants make, use, offer for sale, or sell competing products that infringe Plaintiffs' Patent.

c. Defendants are advertising, marketing, offering for sale their patent-infringing versions of Plaintiffs' Product.

d. Defendants' competing goods are of a quality substantially and materially different than that of Plaintiffs' genuine goods.

e. Defendants sell or offer the infringing goods for a retail price below the usual retail price of Plaintiffs' genuine patented product.

37. E-commerce sales, including through e-commerce stores like those of Defendants, have resulted in a sharp increase in the shipment of unauthorized products into the United States. *Ference Dec[2].*, Exhibit 1, Excerpts from Fiscal Year 2021 U.S. Customs and Border Protection ("CBP") Intellectual Property Seizure Statistics Report. Over 89% of all CBP intellectual property seizures were smaller international mail and express shipments (as opposed to large

---

[2]   Referring to Declaration of Stanley D. Ference III in Support of Temporary Restraining Order, filed herewith.

shipping containers). *Id.* More than half (51%) of CBP seizures originated from mainland China and Hong Kong. *Id.* Infringing and pirated products account for billions in economic losses, resulting in tens of thousands of lost jobs for legitimate businesses and broader economic losses, including lost tax revenue.

38. Third party service providers like those used by Defendants do not adequately subject new sellers to verification and confirmation of their identities, allowing infringers to "routinely use false or inaccurate names and addresses when registering with these e-commerce platforms." *Ference Dec.*, Exhibit 2, Daniel C.K. Chow, Alibaba, Amazon, and Infringing in the Age of the Internet, 40 NW. J. INT'L L. & BUS. 157, 186 (2020); see also, report on "Combating Trafficking in Infringing and Pirated Goods" prepared by the U.S. Department of Homeland Security's Office of Strategy, Policy, and Plans (Jan. 24, 2020), attached as *Ference Dec.*, Exhibit 3 and finding that on "at least some e-commerce platforms, little identifying information is necessary for an Infringer to begin selling" and recommending that "[s]ignificantly enhanced vetting of third-party sellers" is necessary. Infringers hedge against the risk of being caught and having their websites taken down from an e-commerce platform by preemptively establishing multiple virtual store-fronts. *Ference Dec.*, Exhibit 3, at p. 22. Since platforms generally do not require a seller on a third-party marketplace to identify the underlying business entity, Infringers can have many different profiles that can appear unrelated even though they are commonly owned and operated. *Ference Dec.*, Exhibit 3 at p. 39. Further, "E-commerce platforms create bureaucratic or technical hurdles in helping brand owners to locate or identify sources of Infringing and Infringers." *Ference Dec.*, Exhibit 2 at 186-187.

39. Defendants target their business activities towards consumers throughout the United States, including within Pennsylvania, and this district in Allegheny County, and conduct

pervasive business through the operation of, at least, one fully interactive commercial Internet based e-commerce store via at least one Internet under various Seller IDs, including the Seller IDs in **Schedule "A."**

40. Defendants have purposefully directed some portion of their illegal activities towards consumers in the Commonwealth of Pennsylvania through the advertisement, offer to sell, sale, and/or shipment of infringing goods into the State.

41. Defendants are the past and present controlling forces behind the sale of products that infringe Plaintiffs' intellectual property as described herein using at least the Seller IDs in **Schedule "A"** and the Seller IDs associated with the infringing product ASIN numbers. Defendants have registered, established, or purchased, and maintained their Seller IDs.

42. Upon information and belief, some Defendants have anonymously registered and maintained some of the Seller IDs for the sole purpose of engaging in illegal infringing activities. For example, on Amazon.com after notice that a particular Seller Name has sold an infringing product with a particular ASIN number, a new Seller Name will be used (*e.g.* a new "Just Launched Seller") to sell the same infringing product under a new ASIN number associated with the new Seller Name. The result can be a never ending "Whack–A-Mole" situation where new infringers keep popping up.

43. Upon information and belief, Defendants will continue to register or acquire new Seller ID aliases for the purpose of selling and offering for sale goods that infringe Plaintiffs' trademark rights, trade dress rights, and patent rights unless preliminarily and permanently enjoined.

44. Defendants' business names, *i.e.*, Seller IDs, associated payment accounts, and any other alias seller identification names used in connection with the sale of infringing goods are essential components of Defendants' online activities and are one of the means by which Defendants further their infringing scheme and cause harm to Plaintiff. Moreover, Defendants are using without permission Plaintiffs' claimed copyrightable materials, trademarks, trade dress and patents to drive Internet consumer traffic to their e-commerce stores operating under their Seller IDs, thereby increasing the value of the Seller IDs, and decreasing the size and value of Plaintiffs' legitimate marketplace and intellectual property rights at Plaintiffs' expense.

45. Upon information and belief, Defendants are concurrently targeting their infringing activities toward consumers and causing harm within this district and elsewhere throughout the United States. As a result, Defendants are harming Plaintiffs and the consuming public for Defendants' own benefit.

46. By their actions, Defendants have created an illegal marketplace operating in parallel to the legitimate marketplace for Plaintiffs' genuine goods. Defendants are causing concurrent and indivisible harm to Plaintiffs and the consuming public by (i) depriving Plaintiffs and other third parties of their right to fairly compete for space within search engine results and reducing the visibility of Plaintiffs' genuine goods on the World Wide Web and internet, (ii) causing an overall degradation of the value of the goodwill associated with Plaintiffs' trademark rights, and (iii) increasing Plaintiffs' overall cost to market its goods and educate consumers about its brand via the Internet.

47. Plaintiffs are suffering irreparable and indivisible injury and have suffered substantial damages as a result of Defendants' unauthorized and wrongful use of Plaintiffs' intellectual property. The natural and intended byproduct of Defendants' actions is the erosion

and destruction of the goodwill associated with Plaintiffs' name and associated trademarks and the destruction of the legitimate market sector in which it operates.

48. Defendants' infringing products compete directly against Plaintiffs' Product. Defendants' infringement was a cause in Plaintiffs' unit sales decreasing during the last several months over the same time period the previous year. Plaintiffs have thus lost profits.

49. Plaintiffs have suffered and will suffer irreparable injury as a result of Defendants' continued sale of infringing products, and monetary damages are inadequate to compensate Plaintiffs for Defendants' continued sale of infringing products.

a. Defendants sell cheaper and inferior competing tote hanger products that infringe upon Plaintiffs' Patent. Defendants' sale of infringing products has caused Plaintiffs loss of market share, reputational harm, lost profits and/or jeopardy to Plaintiffs' competitive position.

b. Plaintiffs cannot effectively exercise their rights under copyright, trademark, trade dress, and patent which also damages Plaintiffs' relationship with its actual and/or potential re-sellers.

c. Defendants have infringed in the past and threaten to infringe in the future.

50. Upon information and belief, Defendants' payment and financial accounts are being used by Defendants to accept, receive, and deposit profits from Defendants' infringing and unfairly competitive activities connected to their Seller IDs and any other alias domain names or seller identification names being used and/or controlled by them.

51. Plaintiffs have no adequate remedy at law. Upon information and belief, Defendants are likely to transfer or secret their assets to avoid payment of any monetary judgment awarded to Plaintiffs.

52. Defendants would suffer no cognizable harm from ceasing infringing conduct.

a. Defendants have no right to sell products that infringe Plaintiffs' patent rights.

b. Defendants sell other products, so they would suffer little harm if they stopped selling the infringing products at issue in this lawsuit.

c. Plaintiffs will suffer great harm to their competitive position and business if Defendants sell products that infringe Plaintiffs' rights.

53. The public interest will be served when it protects Plaintiffs from infringement of its patent rights.

54. Defendants are engaging in the above-described illegal infringing activities knowingly and intentionally or with reckless disregard or willful blindness to Plaintiffs' rights. If Defendants' infringing activities are not preliminarily and permanently enjoined by this Court, Plaintiffs and the consuming public will continue to be harmed.

55. The harm and damages sustained by Plaintiffs have been directly and proximately caused by Defendants' wrongful reproduction, use, advertisement, promotion, offers to sell, and sale of their Infringing Products.

**Scope of Defendants' Unlawful Activities**

56. Upon information and belief, each Defendant did not obtain an opinion from United States Counsel about the legality of offering for sale its Infringing Products.

57. Upon information and belief, each Defendant operates more than one merchant storefront.

58. Upon information and belief, each Defendant operates merchant storefronts across multiple e-commerce marketplaces.

59. Upon information and belief, each Defendant has sold more than 150,000 units of the Infringing Product with at least $10.00 profit per unit.

60. Upon information and belief, each Defendant's profits from the sale of the Infringing Products totals more than $100,000.

61. Upon information and belief, each Defendant's profits from the sale of the Infringing Products totals more than $300,000.

62. Upon information and belief, each Defendant's profits from the sale of the Infringing Products totals more than $2,000,000.

## COUNT I – PATENT INFRINGEMENT (35 U.S.C. § 271(a))

63. Plaintiffs hereby adopt and re-allege the allegations set forth in the preceding paragraphs as if set forth herein.

64. Plaintiffs are the owners of US Design Patent No. D695,526 S ("Plaintiffs' Patent"). A copy of Plaintiffs' Patent is attached to the Complaint as **Exhibit 3B**. The Plaintiffs' Product is marked in accordance with the Patent Act.

65. Defendants have infringed and continue to infringe Plaintiffs' Patent directly or indirectly through acts of contributory infringement or inducement in violation of 35 U.S.C. § 271, by making, using, selling, importing and/or offering to sell infringing products, namely the tote hangers that are nearly identical to Plaintiffs' Product.

66. Defendants' infringement, contributory infringement and/or inducement to infringe has injured Plaintiffs, and they, therefore, are entitled to recover damages in accordance with the Patent Act, including a disgorgement of profits.

67. Defendants' infringement, contributory infringement and/or inducement to infringe has been willful and deliberate because Defendants have notice of or knew of the Plaintiffs' Patent and have nonetheless injured and will continue to injure Plaintiffs, unless and until this Court enters an injunction, which prohibits further infringement and specifically enjoins further manufacture, use, sale, importation and/or offer for sale of products or services that come within the scope of the Plaintiffs' Patent.

68. Based on Defendants' wrongful conduct, Plaintiffs are entitled to injunctive relief as well as monetary damages and other remedies as provided by the Patent Act, including damages that Plaintiffs have sustained and will sustain as a result of Defendants' illegal and infringing actions as alleged herein, enhanced discretionary damages and reasonable attorneys' fees and costs.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment on all Counts of this Complaint and an award of equitable relief and monetary relief against Defendants as follows:

a. Entry of temporary, preliminary and permanent injunctions pursuant to 35 U.S.C. § 283, and Federal Rule of Civil Procedure 65 enjoining Defendants, their agents, representatives, servants, employees, and all those acting in concert or participation therewith, from manufacturing or causing to be manufactured, importing, advertising or promoting, distributing, selling or offering to sell their Infringing Products.

b. Entry of an Order that, upon Plaintiffs' request, any Internet marketplace website operators and/or administrators that are provided with notice of the injunction, including but not limited to the online marketplaces Amazon.com, aliexpress.com, eBay.com, Joybuy, Temu, Walmart.com, and wish.com, identify any e-mail address known to be associated with Defendants' respective Seller ID, and cease facilitating access to any or all e-commerce stores through which Defendants engage in the promotion, offering for sale, and/or sale of Infringing Products.

c. Entry of an Order that, upon Plaintiffs' request, any Internet marketplace website operators and/or administrators who are provided with notice of the injunction, including but not limited to the online marketplaces Amazon.com, aliexpress.com, eBay.com, Joybuy, Temu,Walmart.com, and wish.com, permanently remove any and all listings offering for sale Infringing Products via the e-commerce stores operating under the Seller IDs, including any and all listings linked to the same seller or linked to any other alias seller identification name being used and/or controlled by Defendants to promote, offer for sale and/or sell Infringing Products.

d. Entry of an Order that, upon Plaintiffs' request, any Internet marketplace website operators and/or administrators who are provided with notice of the injunction, including but not limited to the online marketplaces Amazon.com, aliexpress.com, eBay.com, Joybuy, Temu, Walmart.com, and wish.com, immediately cease fulfillment of and sequester all goods of each Defendant or other Seller under a Seller ID offering for sale the Infringing Product in its inventory, possession, custody, or control, and surrender those goods to Plaintiff.

e. Entry of an Order awarding Plaintiffs damages adequate to compensate for the infringement of its patent, but in no event less than a reasonable royalty for the use made of the

invention by the Defendants, together with interest and costs as fixed by the Court pursuant to 35 U.S.C. § 284 and that the award be trebled as provided for under 35 U.S.C. §284.

f. In the alterative, Entry of an Order awarding Plaintiffs all profits realized by Defendants from Defendants' infringement of Plaintiffs' Patent, pursuant to 35 U.S.C. § 289.

g. Entry of an Order finding that this case is exceptional and an award to Plaintiffs of its attorney fees and costs as provided by for under 35 U.S.C. § 285.

h. Entry of an Order that, upon Plaintiffs' request, any financial institutions, payment processors, banks, escrow services, money transmitters, or marketplace platforms, and their related companies and affiliates, identify and restrain all funds, up to and including the total amount of judgment, in all financial accounts and/or sub-accounts used in connection with the Seller IDs or other domain names, alias seller identification names, or e-commerce store names or store URLs used by Defendants presently or in the future, as well as any other related accounts of the same customer(s) and any other accounts which transfer funds into the same financial institution account(s), to be surrendered to Plaintiffs in partial satisfaction of the monetary judgment entered herein.

i. Entry of an award of pre- and post-judgment interest on the judgment amount.

j. . Entry of an order for any further relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs respectfully demand a trial by jury on all claims.

Respectfully submitted,

Dated: November 20, 2023

/s/ Stanley D. Ference III
Stanley D. Ference III
Pa. ID No. 59899
courts@ferencelaw.com

Brian Samuel Malkin
Pa. ID No. 70448
bmalkin@ferencelaw.com

FERENCE & ASSOCIATES LLC
409 Broad Street
Pittsburgh, Pennsylvania 15143
(412) 741-8400 - Telephone
(412) 741-9292 - Facsimile
Attorneys for Plaintiffs

# SCHEDULE "A"
## DEFENDANTS BY STORE NAME AND STORE NUMBER

| Defendant Number | Store/Seller Name | Seller ID |
|---|---|---|
| 1 | CJ Emerald | A3ND0MZAU13880 |
| 2 | abel tang | A3MTCP3IQLZNRV |
| 3 | AccEncyc US | A1K8NIP221R7C9 |
| 4 | ATriss | A10OALJ1RBHQF0 |
| 5 | Autrow | A25AZTSBUU7TNH |
| 6 | BESTOYARD | ABULJIGL0O21W |
| 7 | Bokwin | A1JNDRE3T906B0 |
| 8 | Bonnie Child | A1OQ5NNQCW35O8 |
| 9 | CBtone | AYWNK3AGQEBS7 |
| 10 | Coco's house | A16K77N2PMV1YI |
| 11 | Colored Flag | A3NWH1DUS5URSC |
| 12 | DSVENROLY DIRECT | A1MKZS00BWKPO |
| 13 | Entertainment First | A2OLICMJ2QKQ00 |
| 14 | Facing the Ocean | A103CZTCYOW16D |
| 15 | Feperig | A20VQ8XEWNU4LL |
| 16 | Fitnice Official | A2U392CCK26QTI |
| 17 | Full of stars.min | AUGSIV2BX89DB |
| 18 | Gardeish | A1OQFKSB2W8HKQ |
| 19 | Gutapo | A2M36ARRPOO61M |
| 20 | hemphill hen | A352XCDI8JP28N |
| 21 | Herlloy | A3VPP7J0858G9G |
| 22 | HOME DEPUTY | AN9VX73I787LY |
| 23 | IdusHome | AS8P89EQ3R0N3 |
| 24 | Jagogh Yson | A1OAE621SUHTP8 |
| 25 | JINGWEI-US | AOFXV6S5AFDMK |
| 26 | Jonercey | AM28U4LJBMGBV |
| 27 | JRUIA | A16CIVDC3LL5Y1 |
| 28 | Karin Yang | A309RHGROK6DKQ |
| 29 | Keyboo Inc | A2XJAFKGCRBSOI |
| 30 | lasenersm | A3BW00NRHIPXNZ |
| 31 | Limicounts | A368RSCGNM9U8G |
| 32 | LIPU Hooker | A22X4DJTQ1LUSP |
| 33 | LiteViso | A25R1GJO6WZP2S |
| 34 | Lmposing | AXGP09LN8AQBX |
| 35 | Lukinm | AB4VO041YPXDP |
| 36 | M.Meteorite | A2URDN5CO5XHU3 |
| 37 | Maybeller | A3SFYBY0BJ0FKL |
| 38 | Muyush | A9QXELJ959BX8 |
| 39 | Myfolrena Official | A3AEIIDC5M2QMJ |

| Defendant Number | Store/Seller Name | Seller ID |
|---|---|---|
| 40 | Mzekgxm | AVALXF5M6J0G4 |
| 41 | NEZA-US | AUCU6AGMO0LYX |
| 42 | Nishuna | A3FLQ4V9O6ROV3 |
| 43 | Patrick Yao | A3L41A09LHW44R |
| 44 | PBFZ | A270EHDBEPJFXT |
| 45 | pengWH shop | A16M05AMS065YX |
| 46 | Qikita | A16OOCACS0L1H5 |
| 47 | Robiteno | A2VSX5O6IUX7B1 |
| 48 | Shannon Wenha | AVMGE4APEA1IU |
| 49 | Si Peihong | A3KJ02X2DGWZJK |
| 50 | sinuoxiang | A12BYDUYOSU6VI |
| 51 | Somirow | A2JX0XCNBXIC4 |
| 52 | Surmounty | A1A2IFMUH5Y33S |
| 53 | ThinkCreators | A249NIEGQOAWEI |
| 54 | Thomas Zack Yang | A38SSFCRCBKLEZ |
| 55 | tracy Zhong | A26RSV9N9NW3ZX |
| 56 | Travelna | ASFCE8Q7QGH3O |
| 57 | UFURMATE US | A23XDYARXDLA9 |
| 58 | Ume Sports | A3COCG58X0E4FG |
| 59 | Vitong | A1V5IGNQ5W58RK |
| 60 | Waitkey Direct | AC7TDTEH0EMEW |
| 61 | WEKIWGOT-US | A36V2NQA6W6DYE |
| 62 | yanhuslsne | A16DHMH6HPZMHO |
| 63 | zara lei | A2D47Z3REZKALD |
| 64 | ZEDODIER | A2VIECA561DKBZ |
| 65 | ZGCZZ | AR1LDLTQUIZJM |
| 66 | zhangheting | A82D1OYLA4V0R |
| 67 | ZHONG ROY | A2M32LDHISYHL6 |

## LISTING OF EXHIBITS

Exhibit 1 …………………… Exemplar comparison of Plaintiffs' Product and Infringing Goods

Exhibit 2 …………………… Screen shots of the Plaintiffs' Amazon Store and Website

Exhibit 3A ………………… US Trademark Reg. No. 4408783

Exhibit 3B ………………… US Design Patent No. D 695,526 S