IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JACKI EASLICK, LLC, et al., | | |
| | Plaintiffs, | Civil Action No. 2:23-cv-2000 |
| v. | | |
| CJ EMERLD, *et al*., | | |
| | Defendants. | **FILED UNDER SEAL** |

**MEMORANDUM OF LAW IN SUPPORT OF
*EX PARTE* APPLICATION FOR: 1) TEMPORARY RESTRAINING ORDER;
2) AN ORDER RESTRAINING ASSETS AND MERCHANT STOREFRONTS;
3) AN ORDER TO SHOW CAUSE WHY A PRELIMINARY INJUNCTION SHOULD
NOT ISSUE; AND 4) AN ORDER AUTHORIZING EXPEDITED DISCOVERY**

Stanley D. Ference III
Pa. ID No. 59899
courts@ferencelaw.com

Brian Samuel Malkin
Pa. ID No. 70448
bmalkin@ferencelaw.com

FERENCE & ASSOCIATES LLC
409 Broad Street
Pittsburgh, Pennsylvania 15143
(412) 741-8400 – Telephone
(412) 741-9292 – Facsimile

Attorneys for Plaintiffs

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................ iii

I.    INTRODUCTION ..........................................................................................1

II.   STATEMENT OF FACTS ..............................................................................6

      A.    PLAINTIFFS' PRODUCT ....................................................................6

      B.    PLAINTIFFS' RIGHTS..........................................................................9

      C.    PLAINTIFFS' EFFORTS TO POLICE THE DEFENDANTS'
            CONDUCT ..........................................................................................11

      D.    THE DEFENDANTS' WRONGFUL CONDUCT ...............................12

III.  ARGUMENT ...............................................................................................16

      A.    THIS COURT HAS PERSONAL JURISDICTION OVER DEFENDANTS ......16

            1.    Defendants are Subject to Personal Jurisdiction
                  Under 42 P.A. C.S.A. § 5322....................................................16

            2.    Exercising Personal Jurisdiction Over Defendants
                  Comports With Due Process......................................................21

      B.    PLAINTIFFS ARE ENTITLED TO AN *EX PARTE* TEMPORARY
            RESTRAINING ORDER AND A PRELIMINARY INJUNCTION...................28

            1.    Plaintiffs Will Suffer Irreparable Harm in The Absence of an Injunction
                  Leaving Them With No Adequate Remedy at Law...................................31

            2.    Plaintiffs Are Likely to Prevail on the Patent Infringement Claim ..........35

            3.    The Balance of Hardships Favors Plaintiffs .............................................44

            4.    The Relief Sought Serves the Public Interest ............................................45

      C.    PLAINTIFFS ARE ENTITLED TO AN ORDER PREVENTING
            1) THE FRAUDULENT TRANSFER OF ASSETS AND 2) FREEZING OF
            DEFENDANTS' MERCHANT STOREFRONTS...............................................46

            1.    Defendants' Assets Must be Frozen .........................................................46

2.    Defendants' User Accounts and Merchant Storefronts
Must be Frozen ................................................................................48

D.    PLAINTIFFS ARE ENTITLED TO AN ORDER AUTHORIZING
EXPEDITED DISCOVERY ...............................................................50

E.    PLAINTIFFS' REQUEST FOR A SECURITY BOND
IN THE AMOUNT OF $5,000 IS ADEQUATE...................................53

IV.    CONCLUSION.............................................................................................56

# Table of Authorities

**Cases**

1457 (quoting *Atlas Powder Co. v. Ireco Chems.*, 773 F.2d 1230, 1233 (Fed. Cir. 1985)) .....- 37 -

*A1 Mortg. Corp. v. A1 Mortg. and Financial Services, LLC,* 2006 WL 1437744 (W.D. Pa. 2006) ...................................................................................................................- 22 -

*A-1 Mortg. Corp. v. Day One Mortg., LLC,* 2007 WL 30317 (W.D. Pa. 2007).......................- 23 -

*Abbott Labs. v. Sandoz, Inc.*, 544 F.3d 1341, 1361-62 (Fed. Cir. 2008) ...................................- 37 -

*Abbott Labs. v. Sandoz, Inc.,* 544 F.3d 1341, 1362 (Fed. Cir. 2008).......................................- 38 -

*Abercrombie & Fitch Trading Co. v. Abercrombieclassic.com,* No. 15-62579-CIV-CMA, 2015 U.S. Dist. LEXIS 179041, at *5 (S.D. Fla. Dec. 11, 2015) ..................................................- 25 -

*Adidas AG v. 007adidasuk.com,* No. 15-61275-CIV-GAYLES, 2015 U.S. Dist. LEXIS 179020, at *8 (S.D. Fla. 2015)......................................................................................................- 25 -

*Admarketplace, Inc. v. Tee Support, Inc.,* No. 13-cv-5635- LGS, 2013 U.S. Dist. LEXIS 129749, at *5 (S.D.N.Y. Sep. 11, 2013) ....................................................................... - 57 -, - 58 -

*Advanced Portfolio Technologies, Inc. v. Advanced Portfolio Technologies Ltd.,*1994 U.S. Dist. LEXIS 18457, at *7 (S.D.N.Y. Dec. 28, 1994) ...................................................................- 56 -

*Advanced Tactical Ordnance Systems, LLC v. Real Action Paintball, Inc.,* 751 F.3d 796, 803 (7th Cir. 2010) .............................................................................................................................- 24 -

*Aevoe Corp. v. AE Tech Co., Ltd.*, No. 2:12-cv-0053, 2012 WL 760692, at *5 (D. Nev. Mar. 7, 2012) ...................................................................................................................................- 39 -

*Airigan Solutions, LLC v. Artifacts_Selling, No. 18-cv-1462 (W.D. Pa. Oct. 31, 2018) (Fischer, J.)* ........................................................................................................................ - 20 -, - 60 -

*Airigan Solutions, LLC v. Babymove, No. 19-cv-166 (W.D. Pa. Feb. 14, 2019) (Fischer, J.)* ...................................................................................................................... - 20 -, - 60 -

*Allstar Marketing Group, LLC v. 158, et al.,* No. 18-cv-4101-GHW, Dkt. 22 (S.D.N.Y. May 17, 2018) .................................................................................................................................- 20 -

*Asahi Metal Indus. Co., Ltd. v. Superior Court of California,* 480 U.S. 102, 109, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987) ................................................................................................- 27 -

*AstraZeneca LP v. Apotex Corp.,* 633 F.3d 1042, 1063 (Fed. Cir. 2010)................................- 39 -

*AT&T Co. v. Winback and Conserve Program, Inc.*, 42 F.3d 1421, 1427 (3d Cir. 1994) .......- 36 -

*AW Licensing, LLC v. Bao,* No. 15-cv-1373, 2015 U.S. Dist. LEXIS 177101, at *3 (S.D.N.Y. Apr. 1, 2015) ................................................................................................- 20 -, - 54 -

*Ayyash v. Bank Al-Madina,* 233 F.R.D. 325, 326 (S.D.N.Y. 2005) .........................................- 57 -

*Balenciaga Am., Inc. v. Dollinger,* No. 10-cv-2912-LTS, 2010 U.S. Dist. LEXIS 107733, at *22 (S.D.N.Y. Oct. 8, 2010) .................................................................................................- 51 -

*Belstaff Grp. SA v. Doe, No. 15-cv-2242-PKC/MHD,* 2015 U.S. Dist. LEXIS 178124, at *2 (S.D.N.Y. June 18, 2015)................................................................................................- 20 -

*Best Van Lines, Inc. v. Walker,* 490 F.3d 239, 243 (2d. Cir. 2007) ...............................- 24 -, - 26 -

*Bio-Tech. Gen. Corp. v. Genentech, Inc.,* 80 F.3d 1553, 1566 (Fed. Cir. 1996).....................- 37 -

*Boschetto v. Hansing,* 539 F.3d 1011, 1019 (9th Cir. 2008) ...................................................- 23 -

*Broad. Music, Inc. v. Prana Hosp.,* Inc., 158 F. Supp. 3d 184, 196 (S.D.N.Y. 2016) .............- 50 -

*Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475 (U.S. 1985).....................- 26 -, - 28 -, - 32 -

*Bushnell, Inc. v. Brunton Co.*, 673 F.Supp.2d 1241, 1263 (D. Kan. 2009) ............................- 39 -

*Calder v. Jones,* 465 U.S. 783, 788 (1984)..............................................................................- 26 -

*Carteret Sav. Bank, F.A. v. Shushan*, 954 F.2d 141 (3d Cir. 1992)........................................- 26 -

*Chambers v. Nasco, Inc.*, 501 U.S. 32, 44 (1991) ...................................................................- 33 -

*Chanel Inc. v. Yang,* No. C-12-04428-PJH (DMR), 2013 U.S. Dist. LEXIS 151104, at *5-6 (N.D. Cal. Aug. 13, 2013)............................................................................................- 19 -

*Chanel, Inc. v. 2012leboyhandbag.com,* No. 15-61986-CIV-WJZ, 2015 U.S. Dist. LEXIS 177989, at *3 (S.D. Fla. Oct. 13, 2015) .....................................................................- 25 -

*Chanel, Inc. v. Chanelsstore.com,* No. 15-61156-CIV- CMA, 2015 U.S. Dist. LEXIS 179101, at *5 (S.D. Fla. August 31, 2015) ......................................................................- 25 -

*Chanel, Inc. v. Conklin Fashions, Inc*., No. 3:15-cv-893-MAD/DEP, 2015 U.S. Dist. LEXIS 109886, at *10-13 (N.D.N.Y. Aug. 14, 2015) ....................................................- 20 -

*Chanel, Inc. v. Powell,* No. C/A 2:08-0404-PMD-BM, 2009 U.S. Dist. LEXIS 127709, at *7 (D.S.C. 2009) .........................................................................................................- 19 -

*Chloe v. Designersimports.com USA, Inc*., No. 07-cv-1791 -CS/GAY, 2009 U.S. Dist. LEXIS 42351, at *2 (S.D.N.Y. Apr. 29, 2009)..........................................................- 20 -

*Coalition for Parity, Inc. v. Sebelius*, 709 F.Supp.2d 6 (D.D.C. 2010) ....................................- 36 -

*Columbia Pictures Indus., Inc. v. Jasso*, 927 F. Supp. 1075 (N.D. Ill. 1996) ..........................- 35 -

*CSC Holdings, Inc. v. Greenleaf Elec., Inc.*, 2000 WL 715601 (N.D. Ill. 2000) .....................- 53 -

*D'Jamoos v. Pilatus Aircraft, 566 F.3d 94, 102 (3d Cir. 2009)* ................................... - 21 -, - 31 -

*Dama S.P.A.* v. *Doe,* 2015 U.S. Dist. LEXIS 178076, at *4-6 (S.D.N.Y. June 12, 2015) ....... - 53 -

*Dell Inc. v. BelgiumDomains, LLC*, Case No. 07-22674 2007 WL 6862341 (S.D Fla. Nov. 21, 2007) ................................................................................................................. - 34 -

*Doctor's Assocs., Inc. v. Stuart*, 85 F.3d 975, 985 (2d Cir. 1996) ................................... - 60 -

*Doggie Dental Inc. v. Anywill, No. 19-cv-682 (W.D. Pa. June 13, 2019) (Hornak, J.) (sellers on amazon.com)* ....................................................................................... - 20 -

*Doggie Dental Inc. v. Go Well, No. 19-cv-1282 (W.D. Pa. Oct. 11, 2019) (Hornak, J.) (sellers on amazon.com)* ............................................................................... - 19 -

*Doggie Dental Inc. v. Max_Buy, No. 19-cv-746 (W.D. Pa. June 27, 2019) (Hornak, J.) (sellers on ebay.com)* ................................................................................ - 19 -

*Doggie Dental Inc. v. Worthbuyer, No. 19-cv-1283 (W.D. Pa. Oct. 11, 2019) (Hornak, J.) (sellers on ebay.com)* ................................................................................... - 19 -

*eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 394 (2006) ..................................... - 37 -

*EnviroCare Techs, LLC v. Simanovsky, No. 11-CV-3458, 2012 U.S. Dist. LEXIS 78088, at *10 (E.D.N.Y. June 4, 2012)* ............................................................................... - 23 -

*F.T. Int'l Ltd. v. Mason*, 2000 WL 1514881 (E.D. Pa. 2000) ......................................... - 53 -

*Gentex Corp. v. Abbott,* 978 F. Supp. 2d 391, 398 (M. D. Pa. 2013) ................................ - 30 -

*Gourmet Video, Inc. v. Alpha Blue Archives, Inc.,* 2008 WL 4755350, *3 (D.N.J. Oct. 29, 2008) .................................................................................................................... - 30 -

*Grand Entm't Group, Ltd., v. Star Media Sales, Inc.,* 988 F.2d 476, 483 (3rd Cir.1993) ........ - 32 -

*Gucci Am., Inc. v. Gucc- Outlet.com,* No. 15-62165-CIV-DPG, 2015 U.S. Dist. LEXIS 181483, at *3-4 (S.D. Fla. Nov. 9, 2015) ...................................................................... - 25 -

*Gucci Am., Inc. v. Tyrrell-Miller,* 678 F. Supp. 2d 117, 119 (S.D.N.Y. 2008) ..................... - 19 -

*Gucci Am., Inc. v. Weixing Li,* 768 F.3d 122, 126 (2d Cir. 2014) ..................................... - 54 -

*Gucci America, Inc., et al v. Alibaba Group Holding LTD, et al,* No. 1:15-cv-03784-PKC (S.D.N.Y. June 23, 2015) ....................................................................................... - 20 -

*Hall v. Johnson*, 599 F.Supp.2d 1, 6 n. 2 (D.D.C. 2009) ............................................... - 36 -

*Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. at 414 (1984) ..................... - 26 -

*HICKIES, Inc. v. Shop1668638 Store, et al.,* No. 17-cv-9101-ER, Dkt. 14 (S.D.N.Y. Dec. 6, 2017) ................................................................................................................. - 20 -

*Hoxworth v. Blinder, Robinson & Co., Inc.*, 903 F.2d 186 (3d Cir. 1990) .............................- 10 -

*Hoxworth v. Blinder, Robinson & Co., Inc.,* 903 F.2d 186, 210 n. 31 (3d Cir.1990).... - 52 -, - 59 -

*Hybritech Inc. v. Abbott Labs.*, 849 F.2d 1446, 1456-57 (Fed. Cir. 1988) .............................- 37 -

*Ideavillage Products Corp. v. Aarhus, et al.,* No. 18-cv-2739- JGK, Dkt. 22 (S.D.N.Y. March 28, 2018) ......................................................................................................................................- 20 -

*Ideavillage Products Corp. v. abc789456, et al*., No. 18- cv-2962-NRB, Dkt. 11 (S.D.N.Y. April 11, 2018) ......................................................................................................................................- 20 -

*Ideavillage Products Corp. v. Bling Boutique Store, et al*., No. 16-cv-09039-KMW, Dkt. 9 (S.D.N.Y. Nov. 21, 2016) ................................................................................................................- 20 -

*Ideavillage Products Corp. v. Dongguan Opete Yoga Wear Manufacturer Co., Ltd., et al.,* No. 17-cv-9099-JMF, Dkt. 19 (S.D.N.Y. Nov. 27, 2017) ............................................................- 20 -

*Ideavillage Products Corp. v. Dongguan Shipai Loofah Sponge Commodity Factory, et al.,* No. 18-cv-901-PGG, Dkt. 20 (S.D.N.Y. Feb. 1, 2018) ...................................................................- 20 -

*Ideavillage Products Corp. v. Shenzhen City Poly Hui Foreign Trade Co., Ltd., et al.,* No. 17-cv-8704-JGK. .(S.D.N.Y. May 24, 2017) .............................................................................- 20 -

*Illinois v. Hemi Group LLC,* 622 F.3d 754, 756 (7th Cir. 2010) ..............................................- 25 -

*IMO Industries, Inc. v. Kiekert AG*, 155 F.3d 254 (3rd Cir.1998) ...........................................- 21 -

*Instant Air Freight Co. v. C.F. Air Freight, Inc.,* 882 F.2d 797, 804 (3d Cir.1989) ................- 59 -

*Int'l Shoe v. Washington,* 326 U.S. 310 (1945) .......................................................................- 31 -

*Intenze Products, Inc. v. 1586, et al.,* No. 18-cv-4611-RWS (S.D.N.Y. May 24, 2018) .........- 20 -

*Interlink Int'l Fin. Servs,, Inc.* v. *Block*, 145 F. Supp. 2d 312, 314 (S.D.N.Y. 2001) ..............- 60 -

*International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945) - 27 -

*JLM Couture, Inc. v. Aimibridal, et al.,* No. 18-cv-1565-JMF, Dkt. 18 (S.D.N.Y. Feb. 21, 2018) ...................................................................................................................................................- 20 -

*Klipsch Grp., Inc. v. Big Box Store Ltd.,* No. 1:12-cv-06283-VSB, 2012 U.S. Dist. LEXIS 153137, at \*3-4 (S.D.N.Y. Oct. 24, 2012) ....................................................................................- 20 -

*L'At hen e, Inc. v. EarthSpring LLC,* 570 F.Supp. 588, 593–94 (D. Del. 2008) .....................- 30 -

*Link v. Wabush R. R.*, 370 U.S. 626, 630 – 31 (1962) .............................................................- 33 -

*Local 1814, Int'l Longshoremen's Ass'n v. N.Y. Shipping Ass'n, Inc.,* 965 F.2d 1224, 1228 (2d Cir. 1992) ...............................................................................................................................- 36 -

*Lorillard Tobacco Co. v. Applewood Party Store, Inc.,* 2006 WL 2925288 ...........................- 22 -

*Louis Vuitton Malletier, S.A. v. 2015shoplvhandbag.com,* No. 15-62531-CIV-BLOOM, 2015 U.S. Dist. LEXIS 181477, at \*11 (S.D. Fla. Dec. 18, 2015) ................................- 25 -

*Louis Vuitton Malletier, S.A. v. Mosseri,* 736 F.3d 1339, 1356-58 (11th Cir. 2013) ...............- 24 -

*Malcom v. Esposito,* 63 Va. Cir. 440, 446 (Cir. Ct. 2003)........................................................- 24 -

*Malibu Media, LLC v. Doe,* 2015 U.S. Dist. LEXIS 87751, at \*2-3 (S.D.N.Y. July 6, 2015).- 57 -

*Malibu Media, LLC v. Doe,* 2016 U.S. Dist. LEXIS 64656, at \*4 (S.D.N.Y. May 16, 2016) .- 57 -

*Malletier v. 2015louisvuittons.com,* No. 15-61973-CIV-BB, 2015 U.S. Dist. LEXIS 181452, at \*11 (S.D. Fla. Sep. 29, 2015)......................................................................................- 25 -

*Malletier v. 2016bagsilouisvuitton.com,* No. 16-61554-CIV- DPG, 2016 U.S. Dist. LEXIS 93072, at \*3 (S.D. Fla. July 18, 2016) ................................................................................- 19 -

*Mason Tenders Dist. Council Pension Fund v. Messera*, 1997 WL 223077 (S.D.N.Y. May 7, 1997) ...........................................................................................................................- 52 -

*McGee v. Int'l Life Ins. Co.,* 355 U.S. 220, 223, 78 S.Ct. 199, 2 L. Ed. 2d 223 (1957)...........- 31 -

*Mellon Bank (East) PSFS, N.A. v. DiVeronica Bros., Inc.*, 983 F.2d 551, 556 (3d Cir. 1993) - 28 -

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. O'Connor,* 194 F.R.D. 618, 624 (N.D. 1ll. 2000) ...............................................................................................................................- 57 -

*Milk Studios, LLC v. Samsung Elecs. Co.,* 2015 U.S. Dist. LEXIS 38710, at \*4-5 (S.D.N.Y. Mar. 25, 2015) ................................................................................................................- 57 -

*Milliken v. Meyer,* 311 U.S. 457 (1940) ..................................................................................- 26 -

*Mint, Inc. v. Iddi Amad*, No. 10-cv-9395-SAS, 2011 U.S. Dist. LEXIS 49813, at \*9 , n.23 (S.D.N.Y. May 9, 2011)....................................................................................- 38 -, - 50 -

*Monster Energy Co. v. Chen Wensheng,* 136 F. Supp. 3d 897, 906 (N.D. Ill. 2015)...............- 25 -

*Moose Toys Pty LTD et al. v. Guangzhou Junwei Trading Company d/b/a Backgroundshop et al.,* No. 17-cv-2561-LAK, Dkt. 12 (S.D.N.Y. May 11, 2017)....................................................- 20 -

*Moose Toys Pty Ltd. et al., v. 963, et al.*, No. 18-cv-2187-VEC, Dkt. 16 (S.D.N.Y. April 2, 2018) ...............................................................................................................................- 20 -

*Moose Toys Pty, Ltd. v. Thriftway Hylan Blvd. Drug Corp.,* No. 15- cv-4483-DLI/MDG, 2015 U.S. Dist. LEXIS 105912, at \*8 (E.D.N.Y. Aug. 6, 2015)....................................................- 35 -

*Mycoskie v.2016tomsshoessaleoutlet.us,* No. 16-61523- CIV -GAYLES, 2016 U.S. Dist. LEXIS 95963, at \*4 (S.D. Fla. July 22, 2016) ................................................................................- 25 -

*N. Face Apparel Corp. v. Fujian Sharing Imp. & Exp. Ltd. Co.*, No. 1:10- cv-1630-AKH, 2011 U.S. Dist. LEXIS 158807 (S.D.N.Y. June 24, 2011).........................................................- 20 -

*Nike , Inc. v. Fuijian Bestwinn Industry Co., Ltd.*, 166 F.Supp.3d 1177, 1179 (D. Nev. 2016) ...............................................................................................................................- 40 -

*O'Connor v Sandy Lane Hotel Co., Ltd*, 496 F.3d 312 (3rd Cir. 2007).........................- 31 -, - 32 -

*O2 Mirco INt'l Ltd. v. Beyond Innovation Tech. Co.*, No. 2:04-cv-0032, 2007 WL 869576, at *2 (E.D. Tex. Mar. 21, 2007).................................................................................................- 39 -

*Off-White, LLC v. A445995685, et al.,* No. 18-cv-2009-LGS, Dkt. 5 (S.D.N.Y. March 27, 2018) ...............................................................................................................................- 20 -

*Oldfield v. Pueblo De Bahia Lora, S.A.,* 558 F.3d 1210, 1219-1224 (11th Cir. 2011) ............- 24 -

*Ontel Products Corp. v. Airbrushpainting Makeup Store a/k/a Airbrushespainting, et al.,* No. 17-cv-871-KBF, Dkt. 20 (S.D.N.Y. Feb. 6, 2017)..........................................................- 20 -, - 60 -

*Otter Prods. V. Anke Group Indus. Ltd.*, 2:13-cv-00029, 2013 WL 5910882, at *2 (D. Nev. Jan. 8, 2013) ..........................................................................................................................- 39 -

*Pennzoil Prods. Co. v. Colelli & Assocs., Inc.,* 149 F.3d 197, 207 (3rd Cir.1998) .................- 32 -

*Philip Morris USA Inc. v. 5 Bros. Grocery Corp.,* No. 13-cv-2451- DLI/SMG, 2014 U.S. Dist. LEXIS 112274 (E.D.N.Y. Aug. 5, 2014)...........................................................................- 50 -

*Polymer Techs., Inc. v. Bridwell,* 103 F.3d 970, 975-76 (Fed. Cir. 1996 ................................- 38 -

*Polymer Techs., Inc. v. Bridwell,* 103 F.3d 970, 975-76 (Fed. Cir. 1996).............................- 38 -

*Poole v. Sasson,* 122 F. Supp. 2d 556 (E. D. Pa. 2000).........................................................- 27 -

*Provident Nat'l Bank v. Cal. Fed. Sav. & Loan Ass'n*, 819 F. 2d 434, 436 (3rd Cir. 1987) ....- 21 -

*Purdue Pharma L.P. v. Boehringer Ingelheim GmbH,* 237 F.3d 1359, 1368 (Fed. Cir. 2001) ...............................................................................................................- 37 -, - 38 -

*Rapid Slicer, LLC v. Buyspry, 19-cv-249 (W.D. Pa. March 11, 2019) (Horan, J.)*..................- 60 -

*Reebok Int'l Ltd. v. J. Baker, Inc.,* 32 F.3d 1552, 1558 (Fed. Cir. 1994) ...............................- 39 -

*Remick v. Manfredy,* 238 F.3d 248, 255 (3rd Cir.2001) .........................................................- 27 -

*Renner v. Lanard Toys Limited,* 33 F.3d 277, 279 (3d Cir.1994)...........................................- 27 -

*Robert Bosch, LLC v. Pylon Mfg. Corp.*, 659 F.3d 1142, 1156 (Fed. Cir. 2011) ....................- 39 -

*Rolex Watch, U.S.A., Inc. v. Pharel*, 09 CV 4810 (RRM) (ALC), 2011 U.S. Dist. LEXIS 32249, at 6 (E.D.N.Y. Mar. 11, 2011) .........................................................................................- 24 -

*Rovio Entertainment Ltd. and Rovio Animation OY v. Angel Baby Factory d/b/a Angelbaby_factory et al.,* No. 17-cv-1840-KPF, Dkt. 11 (S.D.N.Y. March 27, 2017) ................................................................................................................- 20 -, - 60 -

*Rovio Entertainment Ltd. and Rovio Animation OY v. Best Baby and Kid Store, et al.,* No. 17-cv-4884-KPF, Dkt. 6 (S.D.N.Y. June 28, 2017) .................................................- 60 -

*SEC v. Caledonian Bank Ltd.,* 317 F.R.D. 358 (S.D.N.Y. 2016) ...............................- 53 -

Seventh Circuit, in *Illinois v. Hemi Group LLC* .......................................................- 25 -

*Showtech Merchndising, Inc. v. Various John Doe, et al,* 2:12-cv-1270 (W.D. PA September 6, 2012) ..............................................................................................- 60 -

*Sin, Inc. v. Does 1-176,* 279 F.R.D. 239, 241 (S.D.N.Y. 2012)...............................- 57 -

*Skrodzki v. Marcello,* 810 F. Supp. 2d 501, 512-13 (E.D.N.Y. 2011)......................- 24 -

*Spin Master Ltd. and Spin Master, Inc. v. 158, et al.,* No. 18-cv-1774-PAE, Dkt. 18 (Feb. 27, 2018) ...........................................................................................- 20 -

*Spin Master Ltd. and Spin Master, Inc. v. Alisy, et al.,* No. 18-cv-543-PGG, Dkt. 16 (S.D.N.Y. Jan. 22, 2018)...............................................................................- 20 -

Square D Co. v. Scott Elec. Co., No. 06-459, 2008 WL 4462298, at *3 (W.D. PA September 30, 2008) ..........................................................- 29 -, - 30 -, - 31 -, - 32 -

*Sterling Commercial Credit-Michigan, LLC v. Phoenix Industries I, LLC*, 762 F.Supp.2d 8 (D.D.C. 2011) ...........................................................................................- 36 -

*Stern v. Cosby,* 246 F.R.D. 453, 457 (S.D.N.Y. 2007) ............................................- 57 -

*Time Warner Entertainment Co., L.P.* v. Does, 876 F. Supp. 407, 410-11 (E.D.N.Y. 1994) ..- 35 -

*Tinnus Enters., LLC v. Telebrands Corp.*, 846 F.3d 1190, 1205 (Fed. Cir. 2017) ...................- 49 -

*Tory Burch LLC v. Yong Sheng Intl Trade Co., Ltd.*, No. 10-Civ-9336 (S.D.N.Y. December 17, 2010) .......................................................................................................- 20 -

*Toys "R" Us, Inc. v. Step Two, S.A.,* 318 F.3d 446 (3rd Cir.2003) .................................- 28 -, - 30 -

*TRE Services, Inc. v. U .S. Bellows, Inc.,* 2012 WL 2872830, *4–5 (W.D.Pa. July 12, 2012) - 30 -

*True Religion Apparel, Inc. et al. v. Xiaokang Lee et al.*, No. 1:11-cv-08242-HB (S.D.N.Y. Nov. 15, 2011) .......................................................................................................- 20 -

*Walter v. Stacey*, 837 A.2d 1205 (Pa. Super. 2003)...........................................- 10 -, - 51 -, - 52 -

*Warner Bros. Entm't Inc. v. Doe,* No. 14-cv-3492- KPF, 2014 U.S. Dist. LEXIS 190098 (S.D.N.Y. May 29, 2014).................................................................................- 51 -

*William Mark Corporation v. 1&cc, et al.,* No. 18-cv-3889-RA, Dkt. 18 (S.D.N.Y. May 2, 2018)
.................................................................................................................................- 20 -

*Willyoung v. Colorado Custom Hardware, Inc.,* 2009 WL 3183061 (W. D. Pa. Sept.30, 2009)
.............................................................................................................- 29 -, - 31 -

*Windsurfing Intern, Inc. v. AMF, Inc.,* 782 F.2d 995, 1003 n.12 (Fed. Cir. 1986)...................- 50 -

*Wishnatzki &Nathel, Inc. v. H.P. Island-Wide, Inc.,* No. 00-cv-8051-JSM, 2000 U.S. Dist.
LEXIS 15664, at *4 (S.D.N.Y. 2000).........................................................................- 51 -

*WOW Virtual Reality, Inc. v. Bienbest, et al.,* No. 18-cv-3305-VEC, Dkt. 9 (S.D.N.Y. April 16,
2018) ...............................................................................................................- 20 -

*Wow-Virtual Reality, Inc. v. 740452063 et al.,* No. 18-cv-3618, Dkt. 18 (S.D.N.Y. April 25,
2018) ...............................................................................................................- 60 -

*WowWee Group Limited, et al. v. A249345157, et al,* No. 17-cv-9358-VEC, Dkt. 18 (S.D.N.Y.
Dec. 11, 2017)...................................................................................................- 20 -

*WowWee Group Limited, et al. v. Meirly, et al.,* No. 18-cv-706-AJN, Dkt. 11 (S.D.N.Y. Jan. 26,
2018) ...............................................................................................................- 20 -

*Zippo Mfg. Co. v. Zippo DOT Com, 952 F.Supp. 1119 (W.D.Pa.1997)*............................... passim

## Statutes

35 U.S.C. § 282 ..................................................................................................- 49 -

42 P. A. Cons. Stat. § 5322 ....................................................................................- 21 -

42 Pa. C. S. A. § 5322(b) (1981) ..............................................................................- 27 -

Fed. R. Civ. P. 26(d)(1)..........................................................................................- 56 -

Fed. R. Civ. P. 30(b), 34(b)......................................................................................- 56 -

Fed. R. Civ. P. 4 (e) (1) ..........................................................................................- 21 -

Fed. R. Civ. P. 65(a) ............................................................................................- 60 -

Fed. R. Civ. P. 65(b) ............................................................................................- 33 -

Fed. R. Civ. P. 65(d)(2)(C) ......................................................................................- 58 -

Fed.R.Civ.P. 4(f)(3) ..............................................................................................- 55 -

Fed.R.Civ.P. 65(c) ................................................................................................- 58 -

## Rules

Fed. R. Civ. P. 64................................................................................................- 10 -

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JACKI EASLICK, LLC, et al., | |
| Plaintiffs, | Civil Action No. |
| v. | |
| CJ EMERALD, *et al*., | |
| Defendants. | **FILED UNDER SEAL** |

## I.  **INTRODUCTION**

Plaintiffs submit this memorandum of law in support of its *ex parte* application for: 1) a temporary restraining order; 2) an order restraining assets and Merchant Storefronts (as defined *infra);* 3) an order to show cause why a preliminary injunction should not issue; and 4) an order authorizing expedited discovery against above-referenced Defendants (hereinafter collectively referred to as "Defendants" or individually as "Defendant"), and the third parties, Amazon Services, LLC d/b/a Amazon.com, and Amazon Payments, Inc. d/b/a Amazon Pay (collectively "Amazon"), eBay, Inc. d/b/a ebay.com, Joybuy Marketplace operated by Jingdong E-Commerce (Trade) Hong Kong Co. , Ltd and JD E-Commerce America (collectively, "Joybuy"), Whaleco Inc., a Delaware Corporation, which is a wholly owned subsidiary of Pinduoduo Inc. which is owned by PDD Holdings (collectively, "Temu"),Walmart Inc. and Wal-Mart.com USA, LLC, wish.com, Alibaba.com US LLC d/b/a Alibaba.com and Aliexpress.com ("Third Party Service Providers") and financial institutions, including but not limited to, Zhejiang Ant Small and Micro Financial Services Group Co., Ltd. AliPay (China) Internet Technology Co. Ltd., and

Alipay.com Co., Ltd. (collectively referred to as "AliPay")[1], Amazon Payments, Inc., Walmart Pay, PayPal, Inc. d/b/a paypal.com, and Context Logic, Inc. d/b/a wish.com ("Financial Institutions") ("Application").**[2]**

All Defendants are knowingly and intentionally promoting, advertising, distributing, offering for sale, and selling patent infringing versions of Plaintiffs' TOTE HANGER® brand handbag hanger hook which infringe U.S. Patent No. D695,526 S ("Plaintiffs' Patent") throughout the United States, including within the Commonwealth of Pennsylvania and this district, by operating fully interactive, commercial Internet based e-commerce stores established via third-party marketplaces accessible in Pennsylvania operating using the seller identities identified on Schedule "A" to the Complaint (the "Seller IDs").

Specifically, Plaintiffs have obtained evidence clearly demonstrating that Defendants are promoting, selling, offering for sale and distributing goods infringing Plaintiffs' Patent (collectively, the "Infringing Products") within this district through at least one of the Amazon.com, eBay.com, Joybuy, Temu, Wish.com, Walmart.com, and Aliexpress.com online marketplaces ("Internet Marketplaces") operating under the seller identities as set forth on **Schedule "A"** hereto (the "Seller IDs").  Based on this evidence, Plaintiffs' Complaint alleges claims against all the Defendants for patent infringement. Shown below are selected infringing listings compared to the Plaintiffs' authentic listing:

*Easlick Dec..*, ¶ 18.[3]

---

[1]    WorldPay US, Inc. ("WorldPay") processes transactions on behalf of Alibaba and Alipay, which may appear as "Aliexpress" on a cardholder's credit card statement.

[2]    Plaintiffs acknowledge that they are seeking multiple forms of relief. Plaintiffs will promptly provide supplemental briefing or oral argument on any issue should the Court request it.

[3]    Refers to the Declaration of Jacklyn Easlick filed herewith.



| Plaintiffs' Product | Listing of Defendant CJ Emerald Showing Infringing Design |
| Plaintiffs' Product | Listing of Defendant Patrick Yao Showing Infringing Design |
| Plaintiffs' Product | Listing of Defendant NEZA-US Showing Infringing Design |

As poorly designed and manufactured products, the flimsiness of the product may disappoint a customer who may give the product a bad review. Defendants' actions have resulted in actual confusion in the marketplace between Defendants' Infringing Product and the genuine version of Plaintiffs' Product. *Easlick Dec.,* ¶ 19.

According to the Fiscal Year 2021 U.S. Customs and Border Protection ("CBP") Intellectual Property Seizure Statistics Report, e-commerce sales have resulted in a sharp

increase in the shipment of unauthorized products into the United States. *Declaration of Stanley D. Ference III* (the "Ference Dec.") at ¶ 3. Over 89% of all CBP intellectual property seizures were smaller international mail and express shipments (as opposed to large shipping containers). *Id.* Over half (51%) of CBP seizures originated from mainland China and Hong Kong. *Id.* An analysis by Daniel C.K. Chow, in "Alibaba, Amazon, and Counterfeiting in the Age of the Internet," 40 NW. J. INT'L L. & BUS. 157, 186 (2020), finds that third-party service providers do not adequately subject new sellers to verification and confirmation of their identities, allowing counterfeiters to "routinely use false or inaccurate names and addresses when registering with these e-commerce platforms." *Id.* at ¶ 4. A report prepared by the U. S. Department of Homeland Security's Office of Strategy, Policy, and Plans (January 2020) finds that counterfeiters hedge again the risk of being caught and having their websites taken down from an e-commerce platform by preemptively establishing multiple virtual storefronts. Since platforms generally do not require marketplace sellers to identify the underlying business entity, counterfeiters have many difference profiles even though they are commonly owned and operated. *Id.* at ¶ 5.

Defendants' unlawful activities have deprived and continue to deprive Plaintiffs of their rights to fair competition. By their activities, Defendants are defrauding Plaintiffs and the consuming public for Defendants' benefit. Defendants should not be permitted to continue their unlawful activities, which are causing Plaintiffs ongoing irreparable harm. Accordingly, Plaintiffs are seeking entry of a temporary restraining order prohibiting Defendants' further infringement of its valuable intellectual property as described below.

Moreover, Plaintiffs have obtained evidence that Defendants use money transfer and/or retention/processing services with financial institutions such as Amazon, Alipay, eBay, Joybuy,

Paypal, Temu, Walmart Pay, and Context Logic, Inc. *See Declaration of Dee Odell* (the "*Odell Dec.*") ¶¶ 1 - 2, filed herewith. Plaintiffs seek to restrain Defendants' assets. In light of the inherently deceptive nature of the counterfeiting and knock-off business, Plaintiffs have good reason to believe Defendants will hide or transfer their ill-gotten assets beyond the jurisdiction of this Court unless they are restrained. In Pennsylvania, a pre-judgment restraint of existing assets is appropriate where a plaintiff asserts a claim for money damages.[4] *Walter v. Stacey*, 837 A.2d 1205 (Pa. Super. 2003) (injunction entered restraining assets in action seeking damages for a wrongful death); *Hoxworth v. Blinder, Robinson & Co., Inc.*, 903 F.2d 186 (3d Cir. 1990) (affirming injunction entered restraining assets in class action lawsuit). To prevent the depletion of ill-gotten gains of the Defendants and the ability to at least partially satisfy a judgment, Plaintiffs seek an *ex parte* order restraining Defendants' assets, including specifically, funds transmitted through the Financial Institutions. Our Courts have unanimously granted the relief sought herein in actions involving claims for trademark counterfeiting, copyright infringement, unfair competition, and patent infringement. *See, e.g., Pike Brands LLC v. Teegem,* No. 22-171 (December 5, 2022)(Colville, J)*; Broadway Pine Brands LLC v. Cococity*, No. 22-cv-510 (November 30, 2022)(Ranjan, J); *Broadway Pine Brands LLC v. Mustb Toy Store*, No. 21-cv-1665 (November 30, 2022)(Ranjan, J.); and *Broadway Pine Brands LLC v. Amtoy*, No. 22-cv-358 (November 30, 2022)(Ranjan, J.); *Aquapaw LLC v. Allnice,* No. 20-1954 (W.D. Pa., July 29, 2022)(Wiegand, J.); *Aquapaw Brands LLC v. Flopet*, No. 21-988 (W.D. Pa., July 29, 2022)(Wiegand, J); *Aquapaw Brands LLC v. TikToks*, No. 21-696 (W.D. Pa., August 2, 2022)(Wiegand, J); *Doggie Dental, Inc. v AVANTDIGITAL*, No. 21-cv-271 (W.D. Pa., February 23, 2022)(Hornak, CJ); *Doggie Dental, Inc. v CDOFFICE*, No. 21-cv-565 (W.D. Pa., February

---

[4]    Fed. R. Civ. P. 64 provides "every remedy is available that, under the law of the state where the court is located, provides for seizing a person or property to secure satisfaction of the potential judgment."

23, 2022)(Hornak, CJ); *Doggie Dental, Inc. v Ahui, et al*., No. 19-cv-1627 (W.D. Pa., Sept. 27, 2021 (Hornak, CJ); *See Doggie Dental v. Anywill*, No. 19-cv-682 (W.D. Pa., August 14, 2020) (Hornak, CJ); *Doggie Dental v. Max_Buy*, 19-746 (W.D. Pa., August 14, 2020) (Hornak, CJ); *Doggie Dental v. Go Well*, 19-1282 (W.D. Pa., August 14, 2020) (Hornak, CJ); and *Doggie Dental v. Worthbuye*r, 19-1283 (W.D. Pa., August 14, 2020) (Hornak, CJ). *See Airigan Solutions, LLC v. Belvia,* No. 20-cv-284 (W.D. Pa., April 21, 2020) (Schwab, J.); *Airigan Solutions, LLC v. Abagail,* No. 19-cv-503 (W.D. Pa., Aug 13, 2019) (Fischer, J.), *Rapid Slicer LLC v. Art-House*, No. 19-411 (W.D. Pa., Jan. 9, 2020) (Horan, J.).

## II. <u>STATEMENT OF FACTS</u>

### A. Plaintiffs' Product

Plaintiffs are in the business of producing, marketing, and selling the patented TOTE HANGER® brand handbag hanger hook. Before starting her own companies, Jacklyn Easlick was the Product Development Director for Vera Bradley and ran that company's office and design studio. After a medical emergency that landed her in the ICU, she left Vera Bradley in 2010. Jobless, she began Jacki Easlick, LLC to design and create her own products. From her experience and travels, she realized that consumers needed a way to hang and organize their handbags, so she designed and invented the TOTE HANGER® brand handbag hanger hook. Jacki Easlick is the sole inventor and developer of the patented TOTE HANGER® brand handbag hanger hook. Plaintiff Jacki Easlick, LLC ("JEL") is the 100% owner of the Plaintiff JE Corporate LLC ("JEC") which owns all the intellectual property, including the trademarks and US Design Patent No.D695,526 S ("Plaintiffs' Patent"), the subject of which is the TOTE

HANGER® brand handbag hanger hook. (*Easlick Dec.*[5] ¶¶ 1 – 6). Plaintiffs' Product permits the user to store a handbag on a standard closet bar. (*Id.* at ¶ 11) The Plaintiffs' Product is known and famous for its distinctive design such that consumers recognize the design as originating from Plaintiffs. Below are images of Plaintiffs' Product (ASIN[6] B07GJ1FVGC) which retails for $12.99:



---

[5]    Refers to Declaration of Jacklyn Easlick filed herewith.
[6]    Refers to Amazon Standard Identification Number. Each product is assigned a unique ASIN when listed on Amazon.

 

Plaintiffs' Product has become well-known among consumers and retailers and has received and continues to receive widespread publicity. (*Easlick Dec*., ¶ 7).

Plaintiffs' Product is sold under the Plaintiffs' Mark and advertising using the Plaintiffs' Works, and is widely legitimately advertised and promoted by Plaintiff, its authorized distributors, and unrelated third parties via the Internet. *Easlick Dec*., ¶ 8. Over the past several years, visibility on the Internet, particularly via Internet search engines such as Google, Yahoo!, and Bing have become increasing important to Plaintiffs' overall marketing. *Id.*

Thus, Plaintiffs and their authorized distributors expend significant monetary resources on Internet marketing, including search engine optimization ("SEO") strategies. *Easlick Dec*., ¶ 9. Other costs include print catalog ads, tradeshows, and handing out free samples. *Id.* Those strategies allow Plaintiffs and their authorized retailers to fairly and legitimately educate

consumers about the value associated with Plaintiffs' brand and the goods sold thereunder.

Those strategies allow Plaintiffs and their authorized retailers to fairly and legitimately educate

consumers about the value associated with Plaintiffs' brand and the goods sold thereunder.  The

success of the Plaintiffs' Product is due in part to Plaintiffs' marketing and promotional efforts.

These efforts include advertising and promotion through television, retailer websites, including

Etsy and Wayfair, and other internet-based advertising, print, participation in trade shows,

among other efforts, including in Pennsylvania in The Container Stores and Lowes. Plaintiffs'

Product has been featured on *Get Organized* with *Home Edit* on Netflix, websites, social media,

and various point-of-sale materials. *Id.*  Similarly, Defendants' individual seller's stores are

indexed on search engines and compete directly with Plaintiffs for space in the search results. *Id.*

## B.  Plaintiffs' Rights

Plaintiffs have taken numerous steps to protect Plaintiffs' Product.  Plaintiffs' handbag

hanger hook ("Plaintiffs' Product") is sold under the registered trademark TOTE

HANGER®.(US Reg. No. 4408783) *Easlick Dec.*, ¶ 10.  Plaintiffs are the owners of D695,526 S,

the subject of which is the ornamental design of Plaintiffs' Product ("Plaintiffs' Patent" or

"Plaintiffs' Design Patent") *Id.*  A copy of Plaintiffs' Patent is attached to the Complaint as

**Exhibit 3B**, and the figures appear below (*Id.*):



The unique features of Plaintiffs' Product, including the distinct photographs, the design, the instructions, the packaging, and the unique presentation of the product, all comprise Plaintiffs' valuable intellectual property ("IP") and all have become distinct in consumer's minds such that consumers associate all of this IP with Plaintiffs' Product. *Easlick Dec.*, ¶¶ 12 -13 Screenshots of Plaintiffs' Website and Amazon Store are attached as Complaint **Exhibit 2.** *Easlick Dec.*, ¶ 13.

### C.  Plaintiffs' Efforts to Police the Defendants' Conduct

The Defendants use the interactive commercial Internet websites and Internet based e-commerce stores using the Seller IDs set forth on "**Schedule A**" to the Complaint.  *See Odell Dec.*, ¶ 2. These interactive commercial Internet websites provide on-line Merchant Storefronts (as defined *infra*) that allow the Defendants to maintain their anonymity while advertising, offering for sale, and selling Infringing Products into the United States and into Pennsylvania. The Internet marketplaces used by these Defendants include Amazon.com, Alibaba.com, Aliexpress.com, eBay.com, Joybuy, Temu.com, Walmart.com, and wish.com.  *See Odell Dec.,* ¶ 2 and **Composite Exhibit 1** attached thereto.

Plaintiffs have been forced to police the various Internet marketplaces to identify and seek takedowns of unlawful listings for the Infringing Products since allowing the unlawful listings to continue is causing damage to Plaintiffs' reputation and bottom line. *Easlick Dec.,* at ¶¶ 15 - 16. Some Defendants sell the Infringing Products at a fraction of the controlled retail price. *Id.* Because of the software provided by the various Internet marketplaces, the lowest priced items are sorted to the top and/or promoted by the software and then purchased by the consumers. *Id.* The Plaintiffs' genuine Product is ignored. *Id.*  Plaintiffs have had varied success in identifying and requesting takedowns of the various unlawful listings and as soon as one is taken down another unlawful listing replaces it.  *Id.*

Another major problem with the Internet marketplaces is that there is a direct and convenient connection between various Chinese and other unidentified manufactures to the Infringing Products.  *Easlick Dec.,* at ¶ 16. In essence, a counterfeiter in Vietnam or Russia, for example, may order a crate of Infringing Products from a Chinese manufacturer, have them drop shipped to a fulfillment center in the United States, and then sell the Infringing Products to a US

consumer through a Third-Party Service Provider. *Id.* The ease of this system encourages counterfeits to flourish. *Id.*

For these reasons, Plaintiffs retained the legal counsel of Ference & Associates LLC ("the Ference firm") to perform the policing of various Internet marketplaces. *Easlick Dec.,* at ¶ 17. During the process, the Ference firm identified many Chinese manufacturers operating on Marketplace Storefronts hosted by the Internet marketplaces. *See id.* These manufacturers were supplying many of the other identified Defendants with Infringing Products flooding the Internet marketplaces and damaging Plaintiffs' business. This damage to Plaintiffs' business will continue unless Plaintiffs receive the sought after restraining order and injunctive relief. *Id.*

### D. The Defendants' Wrongful Conduct

Defendants do not have, nor have they ever had, the right or authority to infringe upon at Plaintiffs' Patent, Mark, Works and/or or Trade Dress, for any purpose. *Easlick Dec.*, ¶¶ 18 - 22. Despite their known lack of authority, however, Defendants are promoting, selling, offering for sale and distributing goods that infringe on Plaintiffs' Patent, Mark, Works and/or or Trade Dress, without Plaintiffs' authorization. *Id.*

Given Defendants' copying and therefore infringing on Plaintiffs' Patent in violation of 35 U.S.C. § 271, the Infringing Products are indistinguishable to consumers, both at the point of sale and post-sale. By using Plaintiffs' intellectual property, Defendants have created a false association between their Infringing Products, their Internet e-commerce stores, and Plaintiffs. Such false association, constitutes unfair competition, infringes on Plaintiffs' Patent, and is causing and will continue to cause Plaintiffs irreparable harm and damage. *Easlick Dec.*, ¶¶ 18 – 24.

The infringements of Plaintiffs' Patent deprive Plaintiffs of the ability to control the creative content protected by the Patent Act, it devalues the Plaintiffs' Product by associating it with inferior quality goods, and it undermines the value of the Plaintiffs' IP by creating the impression that infringement may be undertaken with impunity which threatens Plaintiffs' ability to attract investors and markets for the Plaintiffs' Products. Easlick Dec., ¶ 23.

As part of Plaintiffs' counsel's ongoing investigation regarding the sale of Infringing Products, Plaintiffs' counsel investigated the promotion and sale of Infringing Products by Defendants and obtained available payment account data for receipt of funds by Defendants for the sale of infringing versions of Plaintiffs' Product through the Seller IDs. *Odell Dec.*, ¶ 2. Through visual inspection of Defendants' listings for Infringing Products, it was confirmed that each Defendant is selling knock-offs infringing upon at least one claim of the Plaintiffs' Patent, without authorization, which are, in fact, not genuine products. *Id.* The checkout pages or order forms for the Infringing Products confirm that each Defendant was and/or is still currently offering for sale and/or selling Infringing Products through their respective Merchant Storefronts and User Accounts and that each Defendant provides shipping and/or has actually shipped Infringing Products to the United States[7], including to customers located in Pennsylvania.  At checkout, a shipping address located in the Pittsburgh area ("the Pennsylvania Address") in the Western District of Pennsylvania verified that each Defendant provides shipping to the Pennsylvania Address.  *Id.*  Easlick inspected the detailed web listings describing the Infringing Products Defendants are offering for sale through the Internet based e-commerce stores operating under each of their respective Seller IDs, and determined the products were not genuine versions

---

[7]    If shipped and received, the products were examined physically to confirm that they are infringing and knock-offs and not genuine.

of Plaintiffs' Products and Defendant's Products are infringing versions of Plaintiffs' Product infringing Plaintiffs' Patent. *Id.* and Composite Exhibit 1, and *Easlick Dec.,* ¶¶ 25 – 27.[8]

Defendants' goods are being promoted, advertised, offered for sale, and sold by Defendants to consumers within this district and throughout the United States. *Easlick Dec.,* ¶ 29. Defendants are making substantial sums of money by preying upon members of the general public, many of whom have no knowledge Defendants are defrauding them. Ultimately, Defendants' Internet activities infringe upon Plaintiffs' intellectual property rights. The Seller IDs, and associated payment accounts, are a substantial part of the means by which Defendants further their scheme and cause harm to Plaintiffs.

In light of the covert nature of Defendants' apparent offshore and infringing activities and the importance of creating economic disincentives for such infringing activities, courts have recognized these concerns and routinely grant *ex parte* applications for relief in cases asserting violations of intellectual property rights on the Internet.[9] Accordingly, Plaintiffs respectfully

---

[8]    See *e.g., Gucci Am., Inc. v. Tyrrell-Miller,* 678 F. Supp. 2d 117, 119 (S.D.N.Y. 2008) (Plaintiff's Intellectual Property Manager found that the products offered for sale on the Defendant's websites were non-genuine counterfeit products, based on a visual inspection of Defendant's websites); *Malletier v. 2016bagsilouisvuitton.com,* No. 16-61554-CIV- DPG, 2016 U.S. Dist. LEXIS 93072, at *3 (S.D. Fla. July 18, 2016) (Plaintiff's representative reviewed the items bearing the Louis Vuitton Marks offered for sale through Defendant's Internet websites and determined the products to be non-genuine, unauthorized versions of the Plaintiff's products.); *Chanel Inc. v. Yang,* No. C-12-04428-PJH (DMR), 2013 U.S. Dist. LEXIS 151104, at *5-6 (N.D. Cal. Aug. 13, 2013) (Plaintiff's Director of Legal Administration reviewed the various Chanel-branded products offered for sale by Defendants on each of the websites operating under the subject domain names, and determined that the products were non-genuine Chanel products); *Chanel, Inc. v. Powell,* No. C/A 2:08-0404-PMD-BM, 2009 U.S. Dist. LEXIS 127709, at *7 (D.S.C. 2009) (Plaintiff's representative personally reviewed the printouts reflecting the various Chanel brand products offered for sale by the Defendant through its website, and concluded that those products were non-genuine Chanel products).

[9]    *See, e.g., Doggie Dental Inc. v. Go Well,* No. 19-cv-1282 (W.D. Pa. Oct. 11, 2019) (Hornak, J.) (sellers on amazon.com); *Doggie Dental Inc. v. Worthbuyer,* No. 19-cv-1283 (W.D. Pa. Oct. 11, 2019) (Hornak, J.) (sellers on ebay.com); *Doggie Dental Inc. v. Max_Buy,* No. 19-cv-746 (W.D. Pa. June 27, 2019) (Hornak, J.) (sellers on ebay.com); *Doggie Dental Inc. v. Anywill,* No. 19-cv-682 (W.D. Pa. June 13, 2019) (Hornak, J.) (sellers on amazon.com); *Airigan Solutions, LLC v. Abagail,* No. 19-cv-503 (May 28, 2019) (Fischer, J.) (sellers on amazon.com); *Airigan Solutions, LLC v. Babymove,* No. 19-cv-166 (W.D. Pa. Feb. 14, 2019) (Fischer, J.) (sellers on amazon.com); *Airigan Solutions, LLC v. Artifacts_Selling,* No. 18-cv-1462 (W.D. Pa. Oct. 31, 2018) (Fischer, J.) (sellers on ebay.com and aliexpress.com). *See also Intenze Products, Inc. v. 1586, et al.,* No. 18-

request that this Court grant its *ex parte* Application for the following: 1) a temporary restraining order; 2) an order restraining assets and Merchant Storefronts; 3) an order to show cause why a preliminary injunction should not issue; and 4) an order authorizing expedited discovery against Defendants, the Third Party Service Providers and Financial Institutions.

---

cv-4611-RWS (S.D.N.Y. May 24, 2018)*; Allstar Marketing Group, LLC v. 158, et al.,* No. 18-cv-4101-GHW, Dkt. 22 (S.D.N.Y. May 17, 2018)*; William Mark Corporation v. 1&cc, et al.,* No. 18-cv-3889-RA, Dkt. 18 (S.D.N.Y. May 2, 2018)*; WOW Virtual Reality, Inc. v. Bienbest, et al.,* No. 18-cv-3305-VEC, Dkt. 9 (S.D.N.Y. April 16, 2018)*; Ideavillage Products Corp. v. abc789456, et al*., No. 18- cv-2962-NRB, Dkt. 11 (S.D.N.Y. April 11, 2018)*; Ideavillage Products Corp. v. Aarhus, et al.,* No. 18-cv-2739- JGK, Dkt. 22 (S.D.N.Y. March 28, 2018)*; Moose Toys Pty Ltd. et al., v. 963, et al*., No. 18-cv-2187-VEC, Dkt. 16 (S.D.N.Y. April 2, 2018)*; Off-White, LLC v. A445995685, et al.,* No. 18-cv-2009-LGS, Dkt. 5 (S.D.N.Y. March 27, 2018)*; Spin Master Ltd. and Spin Master, Inc. v. 158, et al.,* No. 18-cv-1774-PAE, Dkt. 18 (Feb. 27, 2018)*; JLM Couture, Inc. v. Aimibridal, et al.,* No. 18-cv-1565-JMF, Dkt. 18 (S.D.N.Y. Feb. 21, 2018)*; Spin Master Ltd. and Spin Master, Inc. v. Alisy, et al.,* No. 18-cv-543-PGG, Dkt. 16 (S.D.N.Y. Jan. 22, 2018)*; WowWee Group Limited, et al. v. Meirly, et al.,* No. 18-cv-706-AJN, Dkt. 11 (S.D.N.Y. Jan. 26, 2018)*; Ideavillage Products Corp. v. Dongguan Shipai Loofah Sponge Commodity Factory, et al,* No. 18-cv-901-PGG, Dkt. 20 (S.D.N.Y. Feb. 1, 2018)*; WowWee Group Limited, et al. v. A249345157, et al,* No. 17-cv-9358-VEC, Dkt. 18 (S.D.N.Y. Dec. 11, 2017)*; HICKIES, Inc. v. Shop1668638 Store, et al.,* No. 17-cv-9101-ER, Dkt. 14 (S.D.N.Y. Dec. 6, 2017)*; Ideavillage Products Corp. v. Dongguan Opete Yoga Wear Manufacturer Co., Ltd., et al.,* No. 17-cv-9099-JMF, Dkt. 19 (S.D.N.Y. Nov. 27, 2017)*; Ideavillage Products Corp. v. Shenzhen City Poly Hui Foreign Trade Co., Ltd., et al.,* No. 17-cv-8704-JGK. .(S.D.N.Y. May 24, 2017)*; Moose Toys Pty LTD et al. v. Guangzhou Junwei Trading Company d/b/a Backgroundshop et al.,* No. 17-cv-2561-LAK, Dkt. 12 (S.D.N.Y. May 11, 2017)*; Rovio Entertainment Ltd. and Rovio Animation OY v. Angel Baby Factory d/b/a Angelbabyfactory et al.,* No. 17- cv-1840-KPF, Dkt. 11 (S.D.N.Y. March 27, 2017); *Ontel Products Corporation v. Airbrushpainting Makeup Store a/k/a Airbrushespainting et al.,* No. 17-cv-871-KBF, Dkt. 20 (S.D.N.Y. Feb. 6, 2017)*; Ideavillage Products Corp. v. Bling Boutique Store, et al*., No. 16-cv-09039-KMW, Dkt. 9 (S.D.N.Y. Nov. 21, 2016); *Gucci America, Inc., et al v. Alibaba Group Holding LTD, et al,* No. 1:15-cv-03784-PKC (S.D.N.Y. June 23, 2015) (unpublished); *Chanel, Inc. v. Conklin Fashions, Inc*., No. 3:15-cv-893-MAD/DEP, 2015 U.S. Dist. LEXIS 109886, at *10-13 (N.D.N.Y. Aug. 14, 2015)*; Belstaff Grp. SA v. Doe, No. 15-cv-2242-PKC/MHD,* 2015 U.S. Dist. LEXIS 178124, at *2 (S.D.N.Y. June 18, 2015); *AW Licensing, LLC v. Bao*, No. 15-cv-1373, 2015 U.S. Dist. LEXIS 177101, at *2-3 (S.D.N.Y. Apr. 1, 2015)*; Klipsch Grp., Inc. v. Big Box Store Ltd.,* No. 1:12-cv-06283-VSB, 2012 U.S. Dist. LEXIS 153137, at *3-4 (S.D.N.Y. Oct. 24, 2012); *True Religion Apparel, Inc. et al. v. Xiaokang Lee et al*., No. 1:11-cv-08242-HB (S.D.N.Y. Nov. 15, 2011) (unpublished)*; N. Face Apparel Corp. v. Fujian Sharing Imp. & Exp. Ltd. Co*., No. 1:10- cv-1630-AKH, 2011 U.S. Dist. LEXIS 158807 (S.D.N.Y. June 24, 2011); *Tory Burch, LLC v. Yong Sheng Int'l Trade Co., Ltd*., No. 1:10-cv-09336-DAB, (S.D.N.Y. Jan. 4, 2011) (unpublished); *Chloe v. Designersimports.com USA, Inc*., No. 07-cv-1791 -CS/GAY, 2009 U.S. Dist. LEXIS 42351, at *2 (S.D.N.Y. Apr. 29, 2009); *see also In re Vuitton et Fils, S.A*., 606 F.2d 1 (2d Cir. 1979) (holding that ex parte temporary restraining orders are indispensable to the commencement of an action when they are the sole method of preserving a state of affairs in which the court can provide effective final relief).

### III. <u>ARGUMENT</u>

### A.     THIS COURT HAS PERSONAL JURISDICTION OVER DEFENDANTS

Federal courts "may assert personal jurisdiction over a nonresident of the state in which the court sits to the extent authorized by the law of that state." *D'Jamoos v. Pilatus Aircraft, 566 F.3d 94, 102 (3d Cir. 2009)* (quoting *Provident Nat'l Bank v. Cal. Fed. Sav. & Loan Ass'n*, 819 F. 2d 434, 436 (3rd Cir. 1987)). This determination entails a two-step inquiry. First, the court must determine whether the long-arm statute of the forum allows courts of that state to exercise jurisdiction over the defendant. Fed. R. Civ. P. 4 (e) (1). Second, if the forum state allows jurisdiction, the court must determine whether exercising personal jurisdiction over the defendant in a given case is consistent with the Due Process Clause of the U.S. Constitution. *See IMO Industries, Inc. v. Kiekert AG*, 155 F.3d 254, 259 (3rd Cir.1998). As alleged herein, Defendants' unlawful, infringing activities subject them to long-arm jurisdiction in Pennsylvania under 42 P. A. Cons. Stat. § 5322. Furthermore, Pennsylvania's exercise of jurisdiction over Defendants thereunder comports with due process.

### 1. <u>Defendants are Subject to Personal Jurisdiction Under 42 P.A. C.S.A. § 5322</u>

Pennsylvania authorizes personal jurisdiction over the Defendants pursuant to 42 Pa. Cons. Stat § 5322 (a) which provides in pertinent part: "A tribunal of this Commonwealth may exercise personal jurisdiction over a person ... as to a cause of action or other matter arising from such person: (1) Transacting any business in this Commonwealth.  Without excluding other acts which may constitute transacting business for the purpose of this paragraph: (ii) The doing of a single act in this Commonwealth for the purpose of thereby realizing pecuniary benefit…(3) Causing harm or tortious injury by an act or omission in this Commonwealth. (4) Causing harm or tortious injury by an act or omission outside this Commonwealth. . .(10) Committing any

violation within the jurisdiction of the Commonwealth of any statute, home rule charter, local ordinance or resolution, or rule or regulation promulgated thereunder by any government unit or of any order of court or other government unit."

Courts have regularly conferred personal jurisdiction on a given defendant based on that defendant's operation of a fully interactive website through which consumers can access the site from anywhere and purchase products, as is the case with Defendants' User Accounts and Merchant Storefronts, and allow for customers all over the world (including within Allegheny County, Pennsylvania) to view and purchase products, including Infringing Products, as demonstrated by the websites themselves and Plaintiffs' purchase of Infringing Products. *See Odell Dec., ¶ 2 and Composite Exhibit 1, and Easlick Dec., ¶ 27 - 29. See notes 7 and 9, infra.* (collecting cases in which operating interactive websites was deemed sufficient to confer personal jurisdiction upon the Court).

Here, by advertising, offering for sale, selling, distributing and shipping retail products directly to consumers across the world, including consumers located throughout the U.S. and specifically in Pennsylvania, Defendants have committed tortious acts, as alleged herein, outside of Pennsylvania, thus directly giving rise to the claims asserted in the instant action. *See Odell Dec., ¶ 2 and Composite Exhibit 1; see also Lorillard Tobacco Co. v. Applewood Party Store, Inc.,* 2006 WL 2925288 (E.D. Mich. 2006) (defendant's local sale of counterfeit "Newport" cigarettes had an economic effect on interstate commerce)*; A1 Mortg. Corp. v. A1 Mortg. and Financial Services, LLC,* 2006 WL 1437744 (W.D. Pa. 2006) (while Plaintiffs' provision of services was "predominantly intrastate" in character, its mark was eligible for protection since, even absent an interstate sale, its advertising crossed state lines and, therefore, had entered interstate commerce), see later opinion, *A-1 Mortg. Corp. v. Day One Mortg., LLC,* 2007 WL

30317 (W.D. Pa. 2007) (court awarded permanent injunctive relief in its award of summary judgment to plaintiff).

Here, the injury clearly occurred within Pennsylvania, as Defendants' Infringing Listings, resulted in consumers throughout the U.S., and specifically in Pennsylvania, purchasing Infringing Products. *See Odell Dec.,* ¶ 2 and Composite Exhibit 1. As a direct result of Defendants' infringing actions, Plaintiffs have suffered harm in Pennsylvania through lost sales in Pennsylvania and lost Pennsylvania consumers. *See Easlick Dec.,* ¶¶ 28 - 30.

Accordingly, this Court has personal jurisdiction over Defendants who have intentionally availed themselves of the opportunity to do business in Pennsylvania, and specifically in Allegheny County, Pennsylvania, through their fully interactive web sites, as well as yet undiscovered online marketplaces, to offer for sale and/or sell Infringing Products. The identified Defendants merely use fanciful and made-up store names or seller ids without complete addresses, contact information, phones numbers and the like. *See Ference Dec.,* ¶¶ 6 - 7; Defendants used and continue to advertise, market, promote, offer for sale, sell, distribute and/or import Infringing Products to Pennsylvania customers and/or potential customers, including in Allegheny County, Pennsylvania. *See Easlick Dec.* ¶¶ 26 - 29.

Here, the fact that Defendants have chosen to open their respective User Accounts for the purpose of selling Infringing Products through their Merchant Storefronts, as well as any and all as yet undiscovered online marketplace platforms, alone supports a finding that Defendants have intentionally used these marketplace platforms, "as a means for establishing regular business with a remote forum." *EnviroCare Techs, LLC v. Simanovsky, No. 11-CV-3458, 2012* U.S. Dist.. *LEXIS 78088, at *10 (E.D.N.Y. June 4, 2012)* (quoting *Boschetto v. Hansing,* 539 F.3d 1011, 1019 (9th Cir. 2008); *see also Lifeguard Licensing Corp.,* 2016 U.S. Dist.. LEXIS 89149, at *8

and *EnviroCare Techs., LLC,* 2012 U.S. Dist.. LEXIS 78088, at *10. Courts have indeed found that "commercial sellers" on "well-known, national . . . website[s]" are in fact subject to personal jurisdiction, as these Defendants "must have been able to foresee the possibility of being hauled into court [in the present jurisdiction]." *Malcom v. Esposito,* 63 Va. Cir. 440, 446 (Cir. Ct. 2003); *see also EnviroCare Techs., LLC,* 2012 U.S. Dist.. LEXIS 78088, at *12.

Whether a Defendant physically shipped Infringing Products into Pennsylvania is not determinative of whether personal jurisdiction exists, as courts in this Circuit examine a given defendant's online interactions with consumers in considering whether a particular defendant has transacted business in the forum state. *See Odell Dec.* ¶ 2. *See Zippo Mfg. Co.,* 952 F. Supp. at 1119; *Rolex Watch, U.S.A., Inc. v. Pharel,* 09 CV 4810 (RRM) (ALC), 2011 U.S. Dist. LEXIS 32249, at 6 (E.D.N.Y. Mar. 11, 2011) (finding personal jurisdiction over defendant, a resident of South Carolina, because he transacted business in New York by monitoring and responding to inquiries for counterfeit watches through websites accessible in New York). Plaintiffs and Plaintiffs' counsel have viewed Defendant's Infringing Products via their online User Accounts and Merchant Storefronts. *See Odell Dec.*, ¶ 2 and *Easlick Dec.* ¶¶ 23 - 28.**[10]** Thus, Defendants'

---

[10]    *See Skrodzki v. Marcello,* 810 F. Supp. 2d 501, 512-13 (E.D.N.Y. 2011), and that, "[t]he offering for sale of even one copy of an allegedly infringing item, even if no sale results, is sufficient to give personal jurisdiction over the alleged infringer under N.Y. CPLR § 302. *Cartier v. Seah LLC,* 598 F. Supp. 2d 422, 425 (S.D.N.Y. 2009). Moreover, under Second Circuit case law, when analyzing personal jurisdiction in the Internet context, "traditional statutory and constitutional principles remain the touchstone of the inquiry," and while a website's interactivity, "may be useful" for analyzing personal jurisdiction 'insofar as it helps to decide whether the defendant 'transacts any business' in New York,'" ... "it does not amount to a separate framework for analyzing internet-based jurisdiction." *Best Van Lines, Inc.,* 490 F.3d at 252 (quoting *Best Van Lines, Inc. v. Walker,* No. 03- Civ. 6585 (GEL), 2004 U.S. Dist. LEXIS 7830, at *9 (S.D.N.Y. May 4, 2004)) (citing *Zippo Manufacturing Co. v. Zippo Dot Com, Inc.,* 952 F. Supp. 1119 (W.D. Pa. 1997)). Sister circuits similarly rely on the traditional principles guiding the personal jurisdiction analysis when analyzing the same in the Internet context, namely the Eleventh Circuit (see, *e.g., Oldfield v. Pueblo De Bahia Lora, S.A.,* 558 F.3d 1210, 1219-1224 (11th Cir. 2011) (criticizing the over-reliance on the sliding scale of interactivity analysis and instead applying a traditional personal jurisdiction analysis in an Internet case where the website was fully interactive); *see also Louis Vuitton Malletier, S.A. v. Mosseri,* 736 F.3d 1339, 1356-58 (11th Cir. 2013) (applying the traditional purposeful availment test in a case where defendant's fully interactive website was accessible in Florida, and was selling and distributing infringing goods through his website to Florida consumers), and the Seventh Circuit (see, e.g., *Advanced Tactical Ordnance Systems, LLC v. Real Action Paintball, Inc.,* 751 F.3d 796, 803 (7th Cir. 2010)

sophisticated commercial operations, specifically including their offering for sale and/or selling of Infringing Products through their highly interactive User Accounts and Merchant Storefronts, along with Defendants' own representations on their Merchant Storefronts that they ship Infringing Products to the U.S., including to Pennsylvania addresses, unequivocally establishes that Defendants conduct business within this District and the claims in this suit arise from Defendants' business dealings and transactions with consumers in Pennsylvania. *See Zippo Mfg. Co. v. Zippo DOT Com*, 952 F. Supp. 1119 (W.D. Pa. 1997).

---

(addressing the impact of a defendant's online activities upon the personal jurisdiction analysis and reiterating that, as with offline activities, the Court must focus upon the deliberate actions of the defendant within the State)), are instructive in considering whether the exercise of jurisdiction over Defendants in the instant action is appropriate under similar, if not identical facts. For example, courts in the Eleventh Circuit have routinely granted temporary restraining orders, preliminary injunctions and default judgments in online counterfeiting cases where no purchases of the counterfeit/infringing products were made, but the Plaintiff alleged and confirmed that each of the foreign defendants operated fully interactive commercial websites through which they advertised, promoted, offered for sale, and sold products bearing what the plaintiff determined to be counterfeit and infringing trademarks into the U.S., and in interstate commerce, in violation of the plaintiff's rights. *See, e.g., Malletier,* 2016 U.S. Dist. LEXIS 93072, at *3; *Mycoskie v. 2016tomsshoessaleoutlet.us,* No. 16-61523- CIV-GAYLES, 2016 U.S. Dist. LEXIS 95963, at *4 (S.D. Fla. July 22, 2016); *Adidas AG v. 007adidasuk.com,* No. 15-61275-CIV-GAYLES, 2015 U.S. Dist. LEXIS 179020, at *8 (S.D. Fla. 2015); *Louis Vuitton Malletier, S.A. v. 2015shoplvhandbag.com,* No. 15-62531-CIV-BLOOM, 2015 U.S. Dist. LEXIS 181477, at *11 (S.D. Fla. Dec. 18, 2015); *Abercrombie & Fitch Trading Co. v. Abercrombieclassic.com,* No. 15-62579-CIV-CMA, 2015 U.S. Dist. LEXIS 179041, at *5 (S.D. Fla. Dec. 11, 2015); *Gucci Am., Inc. v. Gucc-Outlet.com,* No. 15-62165-CIV-DPG, 2015 U.S. Dist. LEXIS 181483, at *3-4 (S.D. Fla. Nov. 9, 2015); *Chanel, Inc. v. 2012leboyhandbag.com,* No. 15-61986-CIV-WJZ, 2015 U.S. Dist. LEXIS 177989, at *3 (S.D. Fla. Oct. 13, 2015); *Abercrombie & Fitch Trading Co. v. Abercrombieandfitchdk.com,* No. 15-62068-CIV-BB, 2015 U.S. Dist. LEXIS 179117, at *5 (S.D. Fla. Oct. 7, 2015); *Malletier v. 2015louisvuittons.com,* No. 15-61973-CIV-BB, 2015 U.S. Dist. LEXIS 181452, at *11 (S.D. Fla. Sep. 29, 2015); *Chanel, Inc. v. Chanelsstore.com,* No. 15-61156-CIV- CMA, 2015 U.S. Dist. LEXIS 179101, at *5 (S.D. Fla. August 31, 2015). Similarly, the Seventh Circuit, in *Illinois v. Hemi Group LLC,* held that it had personal jurisdiction over the foreign defendants because they operated a nationwide business model where they intentionally created and operated several commercial, interactive websites to offer products for sale and allow online orders from Illinois residents, specifically noting that the "[defendants] maintained commercial websites through which customers could purchase cigarettes, calculate their shipping charges using their zip codes, and create accounts," and as a result, the "[defendants] stood ready and willing to do business with Illinois residents." *Illinois v. Hemi Group LLC,* 622 F.3d 754, 756 (7th Cir. 2010); *see also Monster Energy Co. v. Chen Wensheng,* 136 F. Supp. 3d 897, 906 (N.D. Ill. 2015) (holding that defendants had "expressly aimed" their actions at the state, making specific personal jurisdiction proper even without a sale made to an Illinois resident, because in addition to intentionally creating and operating commercial, fully interactive AliExpress.com Internet stores through which consumers can purchase counterfeit Monster Energy Products, the defendants had affirmatively selected a shipping option to ship counterfeit products to the U.S., including to Illinois residents, and the Plaintiff's exhibits showed that the named defendants had specifically offered to sell particular counterfeit products to individuals with Illinois shipping addresses and provided Amazon Pay account number for the buyer to make the payment for the item, and as a result, the defendants expressly elected to do business with the residents of all fifty states, including Illinois).

2. <u>**Exercising Personal Jurisdiction Over Defendants Comports With Due Process**</u>

The assertion of personal jurisdiction over Defendants also comports with the Due Process Clause of the U.S. Constitution, as Defendants have "certain minimum contacts ... such that maintenance of th[is] suit does not offend 'traditional notions of fair play and substantial justice.'" *Calder v. Jones,* 465 U.S. 783, 788 (1984) (quoting *Milliken v. Meyer,* 311 U.S. 457 (1940)).

This Court may exercise personal jurisdiction when the plaintiff can establish that the cause of action at issue arose from the defendant's activities within the forum state. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. at 414 (1984). The plaintiff initially bears the burden of proving a *prima facie* case, by a preponderance of the evidence, that the defendant's contacts with the forum state meet the "minimum contacts" test. *Carteret Sav. Bank, F.A. v. Shushan*, 954 F.2d 141, 146 (3d Cir. 1992). *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475 (U.S. 1985); *see Best Van Lines, Inc. v. Walker,* 490 F.3d 239, 243 (2d. Cir. 2007) ("In the language of minimum contacts, when the defendants committed 'their intentional, and allegedly tortious, actions expressly aimed at California, they must have reasonably anticipated being hailed into court there.'") (internal quotations omitted); here, the Defendants intentionally directed their activity towards the Pennsylvania market, thereby purposefully availing themselves of "the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws."  *See Easlick Dec*. ¶ 29.  *See Odell Dec*. ¶ 2 and Composite Exhibit 1.  Thus, the Plaintiffs have made out a *prima facie* case, by a preponderance of the evidence that Defendants' contacts with the Pennsylvania meet the "minimum contacts" test.

Pennsylvania's long-arm statute provides that jurisdiction may be exercised "to the fullest extent allowed under the Constitution of the U.S. and may be based on the most minimum

contact with this Commonwealth allowed under the Constitution of the U.S.."  42 Pa. C. S. A. §

5322(b) (1981).  Thus, because Pennsylvania's long-arm statute is coextensive with the dictates

of the U.S. Constitution, the traditional two-step analysis is collapsed into a single inquiry:

"whether the exercise of personal jurisdiction would conform with the Due Process Clause."

*Poole v. Sasson,* 122 F. Supp.  2d 556, 558 (E. D. Pa. 2000); *see also Renner v. Lanard Toys*

*Limited,* 33 F.3d 277, 279 (3d Cir. 1994) ("[T]his court's inquiry is solely whether the exercise

of personal jurisdiction over the defendant would be constitutional."). Due process requires that

the defendant have "minimum contacts" with the forum state.  *Remick v. Manfredy,* 238 F.3d

248, 255 (3d Cir. 2001) (quoting *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66

S.Ct. 154, 90 L.Ed. 95 (1945)). "Minimum contacts must have a basis in 'some act by which the

defendant purposefully avails itself of the privilege of conducting activities within the forum

state, thus invoking the benefits and protections of its laws.'" *Remick,* 238 F.3d at 255 (quoting

*Asahi Metal Indus. Co., Ltd. v. Superior Court of California,* 480 U.S. 102, 109, 107 S.Ct. 1026,

94 L.Ed.2d 92 (1987)).

        Here, each of the Defendants has used an interactive website for offering for sale and

selling Infringing Products.  This Court has personal jurisdiction over each Defendant based

upon internet-based sales activity into the US and this judicial district. The seminal opinion in

this regard is *Zippo Mfg. Co*, 952 F. Supp. at 1119.  In *Zippo,* this court established a "sliding

scale" analytical framework for internet-based personal jurisdiction cases based upon the "level

of interactivity and commercial nature of the exchange of information that occurs on the Web

site." 952 F. Supp. at 1124. The court explained:

        [T]he likelihood that personal jurisdiction can be constitutionally exercised is
        directly proportionate to the nature and quality of commercial activity that an
        entity conducts over the Internet. This sliding scale is consistent with well-
        developed personal jurisdiction principles. At one end of the spectrum are

situations where a defendant clearly does business over the Internet. If the defendant enters into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the Internet, personal jurisdiction is proper. At the opposite end are situations where a defendant has simply posted information on an Internet Web site which is accessible to users in foreign jurisdictions. A passive Web site that does little more than make information available to those who are interested in it is not grounds for the exercise personal jurisdiction. The middle ground is occupied by interactive Web sites where a user can exchange information with the host computer. In these cases, the exercise of jurisdiction is determined by examining the level of interactivity and commercial nature of the exchange of information that occurs on the Web site.

*Id*.

The Third Circuit endorsed this general framework in *Toys "R" Us, Inc. v. Step Two, S.A.,* 318 F.3d 446 (3rd Cir. 2003), but clarified that the plaintiff must also provide evidence of "the intentional nature of the defendant's conduct vis-a-vis the forum state." *Id.* at 452. In other words, "there must be some evidence that the defendant 'purposefully availed' itself of conducting activity in the forum state, by directly targeting its website to the state, knowingly interacting with residents of the forum state via its website, or through sufficient other related contacts." *Id.* at 454. *See also Mellon Bank (East) PSFS, N.A. v. DiVeronica Bros., Inc.*, 983 F.2d 551, 556 (3d Cir. 1993) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985))

In the wake of *Zippo* and *Toys "R" Us,* most courts have concluded that a defendant that intentionally conducts business transactions over an interactive website with customers in the forum state has purposefully directed itself of the laws of that forum.  In *Square D,* for example, the defendant's website contained links providing "a [telephone] number and e-mail address for the purpose of placing an order," information concerning product warranties, and a link that permitted a potential purchaser to "submit a form specifying the manufacturer, catalog number, and quantity of the product to be purchased, as well as the purchaser's company name, phone, fax and e-mail." *Square D Co. v. Scott Elec. Co.,* No. 06-459, 2008 WL 4462298, at *3 (W.D.

Pa. Sept. 30, 2008). There was also a space on the form for additional "comments" concerning a proposed transaction. *Id.* Although a customer could not directly order products using only the website, customers could "commence the ordering process" by "provid[ing] much of the same type of information that would be required for an order (e.g., manufacturer, quantity, catalog number, contact information)." *Id.* at *8, Indeed, the court noted that the website had produced "twenty-four (24) Pennsylvania customers and a total of $10,238.25 in sales" for the defendant. *Id.* at *9. Although this amount represented "less than 1%" of the defendant's total sales, the Court concluded that it was sufficient to establish personal jurisdiction in the state of Pennsylvania. *Id.* As explained by the court:

> The website was more than a mere advertisement; rather, it was an interactive site that allowed customers to take the first step in an ordering process that could be completed with one phone call or e-mail. By knowingly selling and shipping a product that is at issue in this litigation to a customer [in] Pennsylvania, the Moving Defendants purposefully availed themselves of the laws and privileges of this forum. *Id.* at *11.

*Willyoung v. Colorado Custom Hardware, Inc.* is similarly instructive. *Willyoung v. Colorado Custom Hardware, Inc.,* 2009 WL 3183061 (W. D. Pa. Sept. 30, 2009). In *Willyoung,* the website at issue allowed visitors to "request a catalog by supplying certain information according to the website prompts, contact the company directly by e-mail, subscribe to [defendant's] on-line newsletter, and search, view, and select products for on-line purchase via a 'shopping cart.' " *Id* . at *12. Over a two-year period, Pennsylvania customers had utilized the website to place 211 orders amounting to $41,566.05 in sales. *Id.* Based on the foregoing, the court concluded that the defendant had purposefully availed itself of the privilege of conducting business in the state of Pennsylvania by "intentionally and repeatedly engag[ing] in internet-based sales of its products to Pennsylvania residents via its website." *Id.* at *13. Other courts have frequently reached the same conclusion. *See also Gentex Corp. v. Abbott,* 978 F. Supp. 2d

391, 398 (M.D. Pa. 2013) (finding personal jurisdiction where non-resident defendant's interactive website was used by Pennsylvania residents to place at least 17 orders over a three-year period); *TRE Services, Inc. v. U .S. Bellows, Inc.,* 2012 WL 2872830, *4–5 (W.D. Pa. July 12, 2012) (finding personal jurisdiction based on defendant's commercially interactive website that accepted orders from Pennsylvania); *Gourmet Video, Inc. v. Alpha Blue Archives, Inc.,* 2008 WL 4755350, *3 (D.N.J. Oct. 29, 2008) ("Personal jurisdiction is properly exercised over a defendant using the Internet to conduct business in the forum state."); *L'Athene, Inc. v. EarthSpring LLC,* 570 F. Supp. 588, 593–94 (D. Del. 2008) (defendants purposely availed themselves of doing business in state of Delaware where they operated a website accessible in Delaware, received orders and payments from customers in Delaware, and shipped their products to Delaware). Thus, the Defendants in this case have all offered interactive web sites for viewing, ordering, and paying for the Counterfeit Goods and have purposefully availed themselves of the opportunity to conduct business with Pennsylvania citizens with their respective Merchant Storefronts.

    Further there is sufficient evidence to establish the type of "intentional interaction with the forum state" required by the Third Circuit for the exercise of personal jurisdiction.  *See Toys "R" Us,* 318 F.3d at 451–52 (requiring evidence that the defendant has "intentionally interact[ed] with the forum state). *See, e.g., Square D.,* 2008 WL 4462298 at *9 n. 10 (concluding that an amount equal to less than 1% of overall sales was sufficient to establish minimum contacts); *Zippo,* 952 F.Supp. at 1127 (exercising personal jurisdiction despite that only 2% of the defendant's customers were Pennsylvania residents); *L'Athene,* 570 F. Supp. 2d at 593–94 (exercising personal jurisdiction despite that sales to the forum state constituted less than 1% of defendants' total annual sales based on units sold). As noted in *Zippo,* "[t]he Supreme

Court has made clear that even a single contact can be sufficient." *Zippo,* 952 F. Supp. at 1127 (citing *McGee v. Int'l Life Ins. Co.,* 355 U.S. 220, 223, 78 S.Ct. 199, 2 L. Ed. 2d 223 (1957)); *see also Square D.,* 2008 WL 4462298 at *9 n. 10 (noting that, while an argument based on a minute number of overall sales might be "valid in the context of general jurisdiction, in the context of specific jurisdiction it is evidence that supports Plaintiffs' argument that the Moving Defendants purposefully availed themselves of the laws and privileges of Pennsylvania by selling and shipping products to residents of the Commonwealth.").

Since the Defendants have purposefully availed themselves of the opportunity to conduct business with Pennsylvania citizens through their interactive websites, the Court must next consider whether this litigation "arise[s] out of and relate[s] to" those sales. *D'Jamoos,* 566 F.3d at 102. Here, the lawsuit directly arises out of the Defendants' respective sales of Infringing Products to Pennsylvania residents through their interactive websites. *See, e.g., Willyoung,* 2009 WL 3183061 at *13 ("The second part of our jurisdictional inquiry is also easily satisfied because this litigation arises out of and relates to BGM's use of its web site to conduct internet-based sales of its merchandise to Pennsylvania residents.") (internal quotation marks omitted); *Square D.,* 2008 WL 4462298 at *11 (finding the relatedness requirement satisfied where "at least one" of the products sold to a Pennsylvania resident by the defendant was from the allegedly infringing line of products at issue in the litigation). All of the Infringing Products which are the subject of this lawsuit were sold into Pennsylvania. Therefore, the "arise[s] out of and relate[s] to" test is easily met here.

Finally, the Court must consider whether the exercise of jurisdiction would otherwise comport with "traditional notions of fair play and substantial justice." *O'Connor v Sandy Lane Hotel Co., Ltd,* 496 F.3d 312, 316 (3rd Cir. 2007)(quoting *Int'l Shoe,* 326 U.S. at 316). Because

the existence of minimum contacts makes jurisdiction presumptively constitutional, the

defendant at step three of the specific-jurisdiction-inquiry process "must present a compelling

case that the presence of some other considerations would render jurisdiction unreasonable." *Id* .

(quoting *Burger King,* 471 U.S. at 477). The burden upon the defendant at this stage of the

inquiry is considerable. *See Pennzoil Prods. Co. v. Colelli & Assocs., Inc.,* 149 F.3d 197, 207

(3rd Cir. 1998) (noting that if minimum contacts are present, then jurisdiction will be

unreasonable only in "rare cases"); *Grand Entm't Group, Ltd., v. Star Media Sales, Inc.,* 988

F.2d 476, 483 (3rd Cir.1993) ("The burden on a defendant who wishes to show an absence of

fairness or lack of substantial justice is heavy."). As the Third Circuit has observed:

> The Supreme Court has identified several factors that courts should
> consider when balancing jurisdictional reasonableness. Among them are
> the burden on the defendant, the forum State's interest in adjudicating the
> dispute, the Plaintiffs' interest in obtaining convenient and effective relief,
> the interstate [and international] judicial system's interest in obtaining the
> most efficient resolution of controversies, and [t]he procedural and
> substantive interests of other nations.

*O'Connor,* 496 F.3d at 324 (internal quotations omitted).

Here, the Plaintiffs' interest in obtaining convenient and effective relief in the forum of

their choice and Pennsylvania's interest in protecting its citizens from the sale of infringing

goods within its borders are factors that weigh heavily in finding personal jurisdiction of the

Defendants. *See Square D*, 2008 WL 4462298 at *12 (concluding that jurisdiction should be

exercised in Pennsylvania "because the counterfeit goods in question potentially pose a danger to

the public and were sold to residents of this Commonwealth."); *Zippo,* 952 F.Supp. at 1127

(noting Pennsylvania's strong interest in resolving trademark infringement claims implicating its

citizens and giving "due regard to the Plaintiffs' choice to seek relief in Pennsylvania"). As the

court noted in *Zippo,* "[i]f [the defendant] had not wanted to be amenable to jurisdiction in

Pennsylvania, the solution would have been simple—it could have chosen not to sell its [products] to Pennsylvania residents." *Id* . at 1126–27.

Accordingly, Plaintiffs respectfully submit that this Court has personal jurisdiction over Defendants in this action.

### B.    PLAINTIFFS ARE ENTITLED TO AN *EX PARTE* TEMPORARY RESTRAINING ORDER AND A PRELIMINARY INJUNCTION

The Patent Act authorizes courts to issue injunctive relief "in accordance with the principles of equity to prevent the violation of any right secured by patent, on such terms as the court deems reasonable." 35 U.S.C. § 283.  An *ex parte* order is essential in this case to prevent immediate and irreparable injury to Plaintiff. Rule 65(b) of the Federal Rules of Civil Procedure provides, in pertinent part, that a temporary restraining order may be granted without written or oral notice to the opposing party or that party's counsel where "it clearly appears from the specific facts shown by affidavit . . . that immediate and irreparable injury, loss or damage will result to the applicant before the adverse party or that party's attorney can be heard in opposition."  Fed. R. Civ. P. 65(b).  Further, this court has inherent power to grant an *ex parte* restraining order. *See Link v. Wabush R. R.*, 370 U.S. 626, 630 – 31 (1962) ("Inherent powers are governed by the 'control necessarily vested in courts to manage their own affairs as to achieve the orderly and expeditious disposition of cases.'(citation omitted)"). Indeed, the Supreme Court has indicated that federal courts have broad inherent powers to accomplish justice. *See Chambers v. Nasco, Inc.*, 501 U.S. 32, 44 (1991).

Defendants herein fraudulently promote, advertise, sell, and offer for sale goods that infringe on at least one claim of the Plaintiffs' Patent, via their fully interactive, commercial Internet e-commerce stores using the Seller IDs.  By their actions, Defendants are passing off

Infringing Products as a genuine version of Plaintiffs' Products and creating a false association in the minds of consumers between Defendants and Plaintiff. The entry of a temporary restraining order would serve to immediately stop Defendants from benefiting from their wrongful use of Plaintiffs' intellectual property at issue and preserve the status quo until such time as a hearing can be held. *See Dell Inc. v. BelgiumDomains, LLC*, Case No. 07-22674 2007 WL 6862341, at *2 (S.D Fla. Nov. 21, 2007) (finding *ex parte* relief more compelling where Defendants' scheme "is in electronic form and subject to quick, easy, untraceable destruction by Defendants.")

Absent a temporary restraining order without notice, Defendants can and, based upon Plaintiffs' counsel's past experience, will significantly alter the status quo before the Court can determine the parties' respective rights. In particular, the Seller IDs at issue are under the Defendants' complete control. Thus, Defendants have the ability to modify e-commerce store data and content, redirect consumer traffic to other seller identification names, change payment accounts, and transfer assets. *Ference Dec.*, ¶ 6. Such modifications can happen in a short period of time after Defendants are provided with notice of this action. *Id.* Defendants can also easily electronically transfer and secret the funds sought to be restrained if they obtain advance notice of Plaintiffs' Application for a Temporary Restraining Order and thereby thwart the Court's ability to grant meaningful relief and can completely erase the status quo. *Id.* As Defendants engage in illegal infringing activities, Plaintiffs have no reason to believe Defendants will make their assets available for recovery pursuant to an account of profits or will adhere to the authority of this Court any more than they have adhered to the Patent, Copyright or Trademark Acts.

"Courts in other circuits dealing with foreign on-line counterfeiters have not hesitated to exercise [their] authority [to grant an *ex parte* order] in infringement cases in which there is a danger the defendants will destroy, conceal, or transfer counterfeit goods." *Moose Toys Pty, Ltd.*

*v. Thriftway Hylan Blvd. Drug Corp.,* No. 15- cv-4483-DLI/MDG, 2015 U.S. Dist.. LEXIS

105912, at *8 (E.D.N.Y. Aug. 6, 2015). Moreover, federal courts have long recognized that civil

actions against counterfeiters - whose very business is built around the deliberate

misappropriation of rights and property belonging to others - present special challenges that

justify proceeding on an *ex parte* basis. *See Columbia Pictures Indus., Inc. v. Jasso*, 927 F.

Supp. 1075, 1077 (N.D. Ill. 1996) (observing that "proceedings against those who deliberately

traffic in infringing merchandise are often useless if notice is given to the infringers"); *Time*

*Warner Entertainment Co., L.P.* v. *Does*, 876 F. Supp. 407, 410-11 (E.D.N.Y. 1994).

This Court should prevent an injustice from occurring by issuing an *ex parte* temporary

restraining order which precludes Defendants from continuing to display their infringing content

via the Internet e-commerce stores or modifying or deleting any related content or data. Only

such an order will prevent ongoing irreparable harm and maintain the status quo. The

immediate and irreparable harm to Plaintiffs' business in denying its Application for an *ex parte*

temporary restraining order, greatly outweighs the harm to Defendants' interests in continuing to

offer for sale and sell Infringing Products. Many courts have granted an *ex parte* temporary

restraining order in situations where the harm to Plaintiffs far outweighed the harm to

defendants.[11]

The Third Circuit holds that a district court must evaluate the following four factors in

deciding whether preliminary injunctive relief is appropriately entered: (1) the extent to which

the moving party will suffer irreparable harm without injunctive relief; (2) the likelihood that the

moving party will succeed on the merits; (3) the extent to which the nonmoving party will suffer

---

[11]    *See, supra* fn. 8 (collecting cases granted *ex parte* temporary restraining order in situations where harm to
Plaintiff far outweighed harm to defendants.).

irreparable harm if the injunction is issued; and (4) the public interest. *AT&T Co. v. Winback and Conserve Program, Inc.*, 42 F.3d 1421, 1427 (3d Cir. 1994).  As shown below, Plaintiff readily meet the criteria for obtaining a temporary restraining order and preliminary injunction. The "standards which govern consideration of an application for a temporary restraining order are the same standards as those which govern a preliminary injunction." *Local 1814, Int'l Longshoremen's Ass'n v. N.Y. Shipping Ass'n, Inc.,* 965 F.2d 1224, 1228 (2d Cir. 1992). *See also Hall v. Johnson*, 599 F.Supp.2d 1, 6 n. 2 (D.D.C. 2009); *accord Sterling Commercial Credit-Michigan, LLC v. Phoenix Industries I, LLC*, 762 F.Supp.2d 8 (D.D.C. 2011); *Coalition for Parity, Inc. v. Sebelius*, 709 F.Supp.2d 6 (D.D.C. 2010). As detailed below, Plaintiffs have met the standard for a preliminary injunction, and accordingly, a temporary restraining order should also issue against Defendants.

      1.      **<u>Plaintiffs Will Suffer Irreparable Harm in The Absence of an Injunction Leaving Them With No Adequate Remedy at Law</u>**

Defendants' infringing activities must be stopped immediately in order to prevent any further harm to Plaintiffs. Not only do Plaintiffs stand to suffer lost profits as a result of Defendants' competing substandard Infringing Products, but they destroy the inherent value of Plaintiffs' brand, it impairs Plaintiffs' reputation for providing quality products, and it negatively affects Plaintiffs' relationships with their current customers and their ability to attract new customers.

The Plaintiffs will suffer irreparable harm through the continued infringement of the Plaintiffs' Patent by Defendants.  35 U.S.C. § 154(a)(1) provides "[e]very patent shall contain ... a grant to the patentee, his heirs or assigns, of the right to exclude others from making, using, offering for sale, or selling the invention throughout the United States...."  "It is well-settled that,

because the principal value of a patent is its statutory right to exclude, the nature of the patent grant weighs against holding that monetary damages will always suffice to make the patentee whole." *Hybritech Inc. v. Abbott Labs.*, 849 F.2d 1446, 1456-57 (Fed. Cir. 1988). "If monetary relief were the sole relief afforded by the patent statute then injunctions would be unnecessary and infringers could become compulsory licensees for as long as the litigation lasts." *Id.* at 1457 (quoting *Atlas Powder Co. v. Ireco Chems.*, 773 F.2d 1230, 1233 (Fed. Cir. 1985)).

The Federal Circuit held a refusal by the plaintiff to license his invention was evidence of an intention to obtain market exclusivity. *Douglas Dynamics, LLC v. Buyers Prods. Co.*, 717 F.3d 1336, 1345 (Fed. Cir. 2013). "[Exclusivity] is an intangible asset that is part of a company's reputation, and here, [Plaintiffs'] exclusive right to make, use, and sell the patented inventions is under attack by [Defendant's] infringement." *Id.* In this case, Plaintiffs have not licensed their invention to third parties, and Defendants' sales and advertising of Infringing Products is attacking Plaintiffs' right to market exclusivity (*Easlick Dec.* at ¶ 28).

Accordingly, injunctive relief is an appropriate remedy for patent infringement. *See eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 394 (2006) ("We hold only that the decision whether to grant or deny injunctive relief rests within the equitable discretion of the district courts, and that such discretion must be exercised consistent with traditional principles of equity, in patent disputes no less than in other cases governed by such standards.").

Unless the Defendants are enjoined, the Plaintiffs will lose their hard-earned market share, which further supports a finding of irreparable harm. *Abbott Labs. v. Sandoz, Inc.*, 544 F.3d 1341, 1361-62 (Fed. Cir. 2008) (citing *Purdue Pharma L.P. v. Boehringer Ingelheim GmbH*, 237 F.3d 1359, 1368 (Fed. Cir. 2001)); *Bio-Tech. Gen. Corp. v. Genentech, Inc.*, 80 F.3d 1553, 1566 (Fed. Cir. 1996); *Polymer Techs., Inc. v. Bridwell,* 103 F.3d 970, 975-76 (Fed. Cir.

1996)).  In this case, the Plaintiffs almost certainly will suffer great and unpredictable harm should Defendants continue their infringing activity.

Defendants are offering their substandard Infringing Products, often in wholesale quantities, at significantly below market prices with which Plaintiffs cannot compete given the high-quality materials and construction necessary to manufacture the genuine Plaintiffs' Product. *See Easlick Dec.,* ¶ 16  and *Mint, Inc. v. Iddi Amad*, No. 10-cv-9395-SAS, 2011 U.S. Dist. LEXIS 49813, at *9 , n.23 (S.D.N.Y. May 9, 2011) ("the loss of pricing power resulting from the sale of inexpensive 'knock-offs' is, by its very nature, irreparable") (citing *Abbott Labs. v. Sandoz, Inc.,* 544 F.3d 1341, 1362 (Fed. Cir. 2008) (citing *Purdue Pharma L.P. v. Boehringer Ingelheim GmbH,* 237 F.3d 1359, 1368 (Fed. Cir. 2001) (likelihood of price erosion and loss of market position are evidence of irreparable harm); *Polymer Techs., Inc. v. Bridwell,* 103 F.3d 970, 975-76 (Fed. Cir. 1996) (loss of market opportunities cannot be quantified or adequately compensated and is evidence of irreparable harm).

When consumers become accustomed to seeing advertised prices significantly lower online, they will be reluctant to pay more money for Plaintiffs' high-quality product, causing long term price erosion that is difficult to calculate. *See Apnea Scis. Corp. v. Koncept Innovators, Inc.*, 2016 U.S. Dist. LEXIS 188988, at *13 (C.D. Cal. Nov. 7, 2016).

Another consideration supporting a finding of irreparable harm is that this is a new market. Without Defendants' infringement, Plaintiffs would be able to advertise their goods to the public and create strong relationships with customers. The flood of Defendants' Infringing Products into the market is harmful because consumers may assume all similar products are of a poor quality, including Plaintiffs' Products. *Power Survey, LLC v. Premier Util. Servs., LLC*, 61 F. Supp. 3d 477, 487 (D.N.J. 2014).

Harm to a patent holder's goodwill also supports issuance of a preliminary injunction. *AstraZeneca LP v. Apotex Corp.*, 633 F.3d 1042, 1063 (Fed. Cir. 2010); *see also Reebok Int'l Ltd. v. J. Baker, Inc.*, 32 F.3d 1552, 1558 (Fed. Cir. 1994) ("Harm to reputation resulting from confusion between an inferior accused product and a patentee's superior product is a type of harm that is often not fully compensable by money because the damages caused are speculative and difficult to measure."). Here, there is ample evidence (*See Easlick Dec.*, ¶¶ 18–29) that Defendants' infringing conduct will irreparably harm the goodwill and reputation of the Plaintiffs.

Finally, because Defendants are individuals and business who, upon information and belief, likely reside in the foreign jurisdictions with no U.S. presence, any monetary judgment is likely uncollectable. *See Robert Bosch, LLC v. Pylon Mfg. Corp.*, 659 F.3d 1142, 1156 (Fed. Cir. 2011) (reversing denial of permanent injunction where the likely availability of monetary damages was in question, citing *O2 Mirco INt'l Ltd. v. Beyond Innovation Tech. Co.*, No. 2:04-cv-0032, 2007 WL 869576, at *2 (E.D. Tex. Mar. 21, 2007) where "'all three defendants are foreign corporation and that there is little assurance that [plaintiff] could collect money damages'"). Furthermore, other district court have found that money damages were insufficient in similar cases involving foreign infringers. *E.g., Aevoe Corp. v. AE Tech Co., Ltd.*, No. 2:12-cv-0053, 2012 WL 760692, at *5 (D. Nev. Mar. 7, 2012) ("[A] finding of irreparable harm was not clearly erroneous because it also found that since AE Tech is a foreign corporation, money damages would be insufficient."); *Otter Prods. V. Anke Group Indus. Ltd.*, 2:13-cv-00029, 2013 WL 5910882, at *2 (D. Nev. Jan. 8, 2013) ("because Anke has no presence in the United States, it may be difficult or impossible to Otterbox to enforce a monetary judgment against Anke"); *Bushnell, Inc. v. Brunton Co.*, 673 F.Supp.2d. 1241, 1263 (D. Kan. 2009) (granting preliminary

injunction; "the prospect of collecting money damages from a foreign defendant with few to no assets in the United States tips in favor of a finding of irreparable harm"); *Nike , Inc. v. Fuijian Bestwinn Industry Co., Ltd.*, 166 F.Supp.3d 1177, 1179 (D. Nev. 2016) ("[B]ecause Bestwinnhas no presence in the United States, it may be difficult or impossible for NIKE to recover a money judgment against Bestwinn").

For the reasons stated above, Plaintiffs will suffer immediate and irreparable injury, loss, or damage if an *ex parte* Temporary Restraining Order is not issued in accordance with Federal Rule of Civil Procedure 65(b)(1).

**2.    Plaintiffs Are Likely to Prevail on the Patent Infringement Claim**

A design patent contains a single claim. 37 C.F.R. § 1.153. "Whether a design patent is infringed is determined by first construing the claim to the design … and then comparing it to the design of the accused device." *OddzOn Prods., Inc. v. Just Toys, Inc*., 122 F. 3d 1396, 1404-05 (Fed. Cir. 1997) (citation omitted). The Federal Circuit has established that the sole test for design patent infringement is the ordinary observer test. *Egyptian Goddess, Inc. v. Swisa, Inc*., 543 F.3d 665, 678 (Fed. Cir. 2008). The ordinary observer test originated in *Gorham v. White*, 81 U.S. 511 (U.S. 1872), where the Supreme Court held "if, in the eye of an ordinary observer, giving such attention as a purchaser usually gives, two designs are substantially the same, if the resemblance is such as to deceive such an observer, inducing him to purchase one supposing it to be the other, the first one patented is infringed by the other." *Id.* at 528. Thus, to show infringement under the ordinary observer test, a plaintiff must demonstrate that "an ordinary observer, familiar with the prior art designs, would be deceived into believing that the accused product is the same as the patented design." *Crocs Inc. v. ITC et al*., 598 F.3d 1294, 1303 (Fed. Cir. 2010) (citing *Egyptian Goddess*, 543 F.3d at 681). Ordinary observers are those having

"ordinary acuteness, bringing to the examination of the article upon which the design has been placed that degree of observation which men of ordinary intelligence give." *Gorham*, 81 U.S. at 528. "[T]he test of infringement must be the effect produced upon the eye of a prospective purchaser who for the first time sees the two articles and is pleased to the point of buying." *Sanson Hosiery Mills, Inc. v. Warren Knitting Mills, Inc.*, 202 F.2d 395, 398 n.2 (3d Cir. 1953) (quoting *Standard Match Corporation v. Bell Machine Co.*, 7 Cir., 1936, 83 F.2d 365, 367).

The case of *Hoop v. Hoop*, 279 F.3d 1004 (Fed. Cir. 2002) is illustrative of how a design can be determined to be "substantially the same," *Gorham*, 81 U.S. at 528, in the design patent context. In *Hoop*, the Federal Circuit upheld a preliminary injunction issuing on a claim of design patent infringement. At issue in *Hoop* were two competing designs (see *Illustration 1*) where, because the designs of FIG. 1 and 2 (first design) were substantially similar to FIG. 3 (second design), a preliminary injunction was affirmed. *Hoop*, 279 F.3d at 1008.



Figure 1          Figure 2          Figure 3

In *Hoop*, noting that "…the two eagles have the same proportions, body size, orientation, three rows of feathers, head and beak shape, and eye placement", the Federal Circuit concluded that "…the trial court could permissibly conclude at the preliminary injunction stage that the

second design was likely to be found to be merely a more refined version of the first." *Hoop*, 279 F.3d at 1006.

### a. Construing the Claim

With respect to construing the claimed design, "[a]s the Supreme Court has recognized, a design is better represented by an illustration 'than it could be by any description and a description would probably not be intelligible without the illustration.'" *Egyptian Goddess*, 543 F.3d at 679 (quoting *Dobson v. Dornan*, 118 U.S. 10, 14 (1886). There is no need for the district court "to provide a detailed verbal description of the claimed design, as is typically done in the case of utility patents." *Egyptian Goddess*, 543 F.3d at 679 (citing *Contessa Food Prods., Inc*. 282 F.3d at 1377 (approving district court's construction of the asserted claim as meaning "a tray of a certain design, as shown in Figures 1-3")); *see also Crocs Inc*., 598 F.3d at 1302  ("This court has cautioned, and continues to caution, trial courts about excessive reliance on a detailed verbal description in a design infringement case.") (citation omitted). For this reason, a detailed verbal claim construction is not required and may actually be misleading; instead, a claim construction based on the figures may be used.

Plaintiffs' Patent illustrates the Plaintiffs' handbag hanger device of the general shape and character as represented by Illustrations in Complaint ¶ 8, which reproduce an exemplar of the various figures from each of these patents. These figures illustrate the overall visual effect of the ornamental design of Plaintiffs' Patent.

The ordinary observer is presumed to be familiar with the prior art; thus, "when the claimed and accused designs are not plainly dissimilar, resolution of the question whether the ordinary observer would consider the two designs to be substantially the same will benefit from a comparison of the claimed and accused designs with the prior art…" *Egyptian Goddess*, 543

F.3d at 678. Accordingly, a comparison with the prior art may be informative because "…differences between the claimed and accused designs that might not be noticeable in the abstract can become significant to the hypothetical ordinary observer who is conversant with the prior art." *Id*.

In considering the prior art, however, it is important to consider the design as a whole, as "the deception that arises is a result of the similarities in overall design, not of similarities in ornamental features in isolation." *Crocs Inc.*, 598 F.3d at 1303 (citation and internal quotation marks omitted). Thus, "[t]he ordinary observer test applies to the patented design in its entirety, as it is claimed. Id (citation omitted). Furthermore, while a comparison of the claimed and accused designs with the prior art may benefit the ordinary observer analysis, it is the accused infringer, not the patentee, that bears the burden of pointing out prior art that it considers pertinent to the comparison between the claimed and accused designs (although the patentee is free to make such comparisons). *Egyptian Goddess*, 543 F.3d at 678-79.

In the instant case, the differences between the design claimed by the Plaintiffs' Patent and the prior art, as aptly represented by the references cited by the United States Patent and Trademark Office ("USPTO"), are significant. The representative references cited by the USPTO establishes that no prior design, or combination of designs, create the overall visual effect of the ornamental design of the Plaintiffs' Patent.

Claims of a design patent are also to be construed with the understanding that "[w]here a design contains both functional and non-functional elements, the scope of the claim must be construed in order to identify the non-functional aspects of the design as shown in the patent." *Richardson v. Stanley Works, Inc*., 597 F.3d 1288, 1293 (2010) (quoting *OddzOn Prods*., 122 F. 3d at 1405) (internal quotation remarks removed). "If … a design contains both functional and

ornamental features, the patentee must show that the perceived similarity is based on the ornamental features of the design. The patentee 'must establish that an ordinary person would be deceived by reason of the common features in the claimed and accused designs which are ornamental.'" *OddzOn Prods*., 122 F. 3d at 1405 (quoting *Read Corp. v. Portec, Inc*., 970 F.2d 816, 825 (Fed. Cir. 1992)). Thus, a district court properly factors out the functional aspects of a design as part of its claim construction. *Id.*

Many designs or design elements perform some function; however, so long as a design choice has been applied to the design or design element in question, the design or design element is not dictated by function and the ornamental nature of the design or design element should be given patentable weight. *L.A. Gear, Inc. v. Thom McAn Shoe Co*., 988 F.2d 1117, 1123 (Fed. Cir. 1993) ("When there are several ways to achieve the function of an article of manufacture, the design of the article is more likely to serve a primarily ornamental purpose."). Here, as with many designs, it may be alleged that the design claimed in the Plaintiffs' Patent contains some functional elements. However, even if there are some functional elements, the Plaintiffs' Patent design claims are to be construed as encompassing the ornamental design applied to such elements. *Richardson*, 597 F.3d at 1294 (citing *L.A. Gear*, 988 F.2d at 1123 ("The elements of the design may indeed serve a utilitarian purpose, but it is the ornamental aspect that is the basis of the design patent").

Thus, although a handbag hanger or any similar article of manufacture may include some functional elements, such as elements to hold a handbag, the ornamental design applied in the design is properly considered part of the design claimed. Such ornamentation is not functional and thus is properly included in the construed design claim. Accordingly, it cannot be concluded that any of the elements of the Plaintiffs' Patent design are "'dictated by' the use or purpose of

the article", *L.A. Gear*, 988 F.2d at 1123, and thus functionality should not significantly impact the claim construction of the Plaintiffs' Patent.

Accordingly, an appropriate claim construction in this case is simply the figures for the design for the Plaintiffs' Patent, with the understanding that the prior art does not give the overall visual effect as seen in these figures, and further with the understanding that any functional elements should be discounted in claim construction.

As such, the ordinary observer test is to be applied to the design for the handbag hanger as illustrated in the figures for the design for Plaintiffs' Patent. *Crocs Inc*., 598 F.3d at 1303 ("The administrative judge and the Commission needed to apply the ordinary observer test to 'the design shown in Figures 1-7'").

**b. Comparison of the Patented Designs with the Accused Products**

"The comparison step of the infringement analysis requires the fact-finder to determine whether the patented design as a whole is substantially similar in appearance to the accused design. The patented and accused designs do not have to be identical in order for design patent infringement to be found." *OddzOn Prods*., 122 F.3d at 1405. "The proper comparison requires a side-by-side view" of the patent design and the accused product. *Crocs Inc*., 598 F.3d at 1304. The accused products in this case are the Defendants' handbag hangers. Example views of the Defendants' handbag hangers, with corresponding example figures from the Plaintiffs' Patent are generally set forth in Complaint and **Composite Exhibit 1** and the *Easlick Dec*. As is readily apparent from a side-by-side comparison, the Defendants' handbag hangers include the same design features, distinguishable from the prior art and not to be discounted due to functionality, as the design claimed in the figures for the Plaintiffs' Patent. As the side-by-side comparison

demonstrates, the Defendants' handbag hangers have a deceptively similar if not identical overall visual effect that deceives purchasers and easily satisfies the ordinary observer test.

The accused products provide a strikingly similar overall visual effect that is essentially indistinguishable from the claimed design to the ordinary observer, even when the prior art is taken into consideration and functional elements, if any, are filtered out of the analysis. Here, the design covered by the Plaintiffs' Patent "departs conspicuously from the prior art," and the accused product parrots these ornamental features; thus, "the accused design is naturally more likely to be regarded as deceptively similar to the claimed design, and thus infringing." *Egyptian Goddess*, 543 F.3d at 677.

In contrast to the stark differences between the design claimed by the Plaintiffs' Patent and the references cited by the USPTO, the differences, if any, between the design claimed in the Plaintiffs Patent and the accused product are so minor as to escape the attention of the ordinary observer, particularly given that the ordinary observer only gives "such attention as a purchaser usually gives." *Gorham*, 81 U.S. at 528. The overall effect of minute differences, if any, is negligible and does not change the overall visual effect or the deception of the ordinary observer.

Moreover, to the extent that any of the elements of the design claimed in the Plaintiffs' Patent should be discounted on the basis that they are functional, these elements do not contribute to the overall visual effect of the patented design. Essentially all of the features, including the overall visual effect of the patented design of the Plaintiffs' Patent are nonfunctional. In addition to the myriad of other design choices manufacturers have available to them to make handbag hangers, the non-functionality of the design of the Plaintiffs' Patent is also evidenced by the many alternative design choices available for achieving the "functions" – insofar as there are any relevant to the analysis – associated with a handbag hanger.

Thus, any arguably functional element, even if discounted, would not change the ordinary observer analysis inasmuch as an ordinary observer would still be deceived into thinking the accused product designs are the same as the Plaintiffs' Patent designs because these elements, if any, do not contribute significantly to the overall visual effect of the design as a whole.

Moreover, a comparison of the commercial embodiment of the design claimed in the Plaintiffs' Patent and the Defendants' handbag hangers provides further support that the designs are confusingly similar under the ordinary observer test. *See L.A. Gear*, 988 F.2d at 1125-26 ("When the patented design and the design of the article sold by the patentee are substantially the same, it is not error to compare the patentee's and the accused articles directly … indeed, such comparison may facilitate application of the *Gorham* criterion of whether an ordinary purchaser would be deceived into thinking that one were the other.") (internal citation omitted).

Accordingly, an ordinary observer, familiar with the prior art, and discounting any functional elements, would be deceived into believing the design of the accused product is the same as the design claimed by the Plaintiffs' Patent. It follows that Plaintiffs are also likely to prove infringement at trial, and as such, injunctive relief is warranted here. *See e.g., Hoop*, 279 F.3d at 1008 ("We will affirm [a preliminary injunction under the patent laws] unless we find it to be an abuse of discretion upon an error of law, or a serious misjudgment of the evidence.").

### c. Plaintiffs' Expert Concludes that Each of the Defendants' Products Infringe

Plaintiffs have filed the Expert Declaration of Nicholas Mesiti. He is a am an attorney duly admitted to practice law in the State of New York and was retained by Plaintiffs in the above-captioned action.  (*Mesiti Dec*. ¶ 1). Attorney Mesiti was retained to provide an opinion on whether Defendant's accused product shown in **Composite Exhibit 1**, infringes US Patent D 695,526 S, the subject of which is the ornamental design of Plaintiffs' Product.  (*Mesiti Dec*. ¶

4). After reviewing all the evidence, Mr. Mesiti concludes that the Plaintiff's Patent is valid and each of the Defendants' Infringing Listings infringes on the Plaintiffs' Patent. (*Mesiti Dec*. ¶¶ 3 - 44).

### d. Plaintiffs Are likely to Prevail on Design Patent Validity at Trial

Plaintiffs must also show that it "will likely withstand challenges, if any, to the validity of the patent." *Titan Tire Corp*., 566 F.3d at 1376. "In assessing whether the patentee is entitled to the injunction, the court views the matter in light of the burdens and presumptions that will inhere at trial." *Id.* "At trial … an issued patent comes with a statutory presumption of validity under 35 U.S.C. § 282. Because of this presumption, an alleged infringer who raises invalidity as an affirmative defense has the ultimate burden of persuasion to prove invalidity by clear and convincing evidence, as well as the initial burden of going forward with evidence to support its invalidity allegation." *Id.* (internal citations omitted) (emphasis in original).

"Before trial … these burdens and presumptions [are] tailored to fit the preliminary injunction context." *Id*. at 1377 (emphasis in original). "Thus, if a patentee moves for a preliminary injunction and the alleged infringer does not challenge validity, the very existence of the patent with its concomitant presumption of validity satisfies the patentee's burden of showing a likelihood of success on the validity issue." *Id.* at 1377. If Defendants come forward with evidence of invalidity, Plaintiffs are entitled to respond. *Id.*

In addition to the presumption of validity, the prosecution of the Plaintiffs' Patent before the USPTO supports the validity of the Plaintiffs' Patent because the Patent issued from the USPTO after having a large number of references cited against it, none of which were close to the design of the Plaintiffs' Patent. Other considerations also evidence the novelty of the design

covered by the Plaintiffs' Patent. For example, the design as applied in a commercial embodiment have enjoyed great commercial success. (Easlick Dec. ¶15).

The clear differences between the claimed design and the prior art, as discussed in the context of claim construction, also support a conclusion that the Plaintiffs' Patent is valid. Moreover, and as discussed in the context of claim construction, any elements that may be alleged as functional are clearly inconsequential to the overall visual effect, which also supports a conclusion that the Plaintiffs' Patent is valid. Accordingly, the Plaintiffs, not the Defendants, are likely to prevail on the validity of the Plaintiffs' Patent at trial.

In this case, Plaintiffs are the lawful owner of the Plaintiffs' Patent. Plaintiffs have submitted extensive documentation showing that Defendants make, use, offer for sale, sell, and/or import in the United States for subsequent sale or use products that infringe directly on Plaintiffs' Patent. *Odell Dec.*, **Composite Exhibit 1**; *Easlick Dec.*, ¶¶ 23 – 27., *see generally*, *Mesiti Dec*. In reviewing the photographs and listings of the Defendants products in Exhibit 1 and comparing them to the Plaintiffs' design patent, it is demonstrated that the Defendants' products infringe on the Plaintiffs' Patent. Thus, Plaintiffs have shown they are likely to prevail on their patent infringement claims. The Plaintiffs' Products are marked in accordance with the Patent Act.

As to validity, "[e]ach issued patent carries with it a presumption of validity under 35 U.S.C. § 282." *Tinnus Enters., LLC v. Telebrands Corp.*, 846 F.3d 1190, 1205 (Fed. Cir. 2017). "This presumption is sufficient to establish a likelihood of success on the validity issue, absent a challenge by the accused infringer." *Id.* See also *Mesiti Dec.*, ¶¶ 38 – 44 (concluding Plaintiff's Patent if valid).

### 3. **The Balance of Hardships Favors Plaintiffs**

The balance of hardships unquestionably and overwhelmingly favors Plaintiffs in this case. Here, as described above, Plaintiffs have suffered, and will continue to suffer, irreparable harm to their business, the value, goodwill and reputation built up in and associated with the Plaintiffs' Product and to their reputation as a result of Defendants' willful and knowing sales of Infringing Products. *See Easlick Dec.,* ¶¶ 21- 28.  In contrast, any harm to Defendants would only be the loss of Defendants' ability to continue to offer their Infringing Products for sale, or, in other words, the loss of the benefit of being allowed to continue to unfairly profit from their illegal and infringing activities. "Indeed, to the extent defendants 'elect[] to build a business on products found to infringe[,] [they] cannot be heard to complain if an injunction against continuing infringement destroys the business so elected." *Windsurfing Intern, Inc. v. AMF, Inc.*, 782 F.2d 995, 1003 n.12 (Fed. Cir. 1986); *Broad. Music, Inc. v. Prana Hosp.,* Inc., 158 F. Supp. 3d 184, 196 (S.D.N.Y. 2016) (quoting *Mint, Inc. v. Amad,* 2011 U.S. Dist.. LEXIS 49813, at *3 (S.D.N.Y. 2011) (internal quotation marks and citation omitted)); *see also Mitchell Group USA LLC*, No. 14-cv-5745-DLI/JO, 2014 U.S. Dist.. LEXIS 143001, at *6-7 (E.D.N.Y Feb. 17, 2014) (citing *Philip Morris USA Inc. v. 5 Bros. Grocery Corp.,* No. 13-cv-2451- DLI/SMG, 2014 U.S. Dist.. LEXIS 112274 (E.D.N.Y. Aug. 5, 2014) ("Absent an injunction, there will be further erosion of Plaintiffs' goodwill and reputation. Defendants, on the other hand, will be called upon to do no more than refrain from what they have no right to do in the first place.")).

### 4.  **The Relief Sought Serves the Public Interest**

As Plaintiffs have demonstrated, Defendants have been profiting from the sale of Infringing Products.  Thus, the balance of equities tips decisively in Plaintiffs' favor.  The public is currently under the false impression that Plaintiffs have granted a license or permission to Defendants with respect to the Plaintiffs' Patent.  In this case, the injury to the public is

significant, and the injunctive relief that Plaintiffs seek is specifically intended to remedy that injury be dispelling the public confusion created by Defendants' actions. Since Defendants have willfully and knowingly inserted knock-off Infringing Products into the marketplace, the public would benefit from a temporary restraining order and preliminary injunction halting any further sale and distribution of Defendants' Infringing Products. *See Easlick Dec.,* ¶¶ 24 - 31. As such, equity requires that Defendants be ordered to cease their unlawful conduct.

### C. PLAINTIFFS ARE ENTITLED TO AN ORDER PREVENTING 1) THE FRAUDULENT TRANSFER OF ASSETS AND 2) FREEZING OF DEFENDANTS' MERCHANT STOREFRONTS

#### 1. Defendants' Assets Must be Frozen

In addition, the Court should enter an order limiting the transfer of Defendants' unlawfully gained asserts. Plaintiffs have demonstrated above that they will likely succeed on the merits of their claims. Furthermore, it is unlikely that Defendants possess the funds to satisfy any potential judgment. Due to the deceptive nature of Defendants' business, and Defendants' deliberate violations of patent law, Plaintiffs respectfully request this Court grant additional *ex parte* relief restraining the transfer of all monies held or received by as Amazon, Alipay, eBay, Joybuy, Paypal, Temu, Walmart.com, or Context Logic, Inc., or other financial institutions for the benefit of any one or more of the Defendants. *See, e.g., Balenciaga Am., Inc. v. Dollinger,* No. 10-cv-2912-LTS, 2010 U. S. Dist. LEXIS 107733, at *22 (S.D.N.Y. Oct. 8, 2010) (citing *Wishnatzki &Nathel, Inc. v. H.P. Island-Wide, Inc.,* No. 00-cv-8051-JSM, 2000 U.S. Dist. LEXIS 15664, at *4 (S.D.N.Y. 2000) ("[W]here Plaintiff seek both equitable and legal relief in relation to specific funds, a court retains it equitable power to freeze assets."); *Walter v. Stacey,* 837 A.2d 1205 (Pa. Super. 2003) (injunction entered restraining assets in action seeking damages for a wrongful death); *Hoxworth v. Blinder, Robinson & Co., Inc.,* 903 F.2d 186 (1990) (district

court has power to issue an injunction in order to protect a future damages remedy; the unsatisfiability of a money judgment can constitute irreparable injury).

This Court has broad authority to grant such an order. The Third Circuit has ruled that district courts have the power to grant preliminary injunctions to prevent a defendant from transferring assets in order to protect a future damages remedy. *Hoxworth v. Blinder, Robinson & Co., Inc.*, 903 F.2d 186 (1990). Pennsylvania courts have also restrained assets to protect a future damages remedy. *Walter v. Stacey*, 837 A.2d 1205 (Pa. Super. 2003) (injunction entered restraining assets in action seeking damages for a wrongful death). Moreover, almost every Circuit has interpreted Rule 65 of the Federal Rules of Civil Procedure to grant authority to restrain assets *pendent elite*. *See Mason Tenders Dist. Council Pension Fund v. Messera*, 1997 WL 223077 (S.D.N.Y. May 7, 1997) (acknowledging that "[a]lmost all of the Circuit Courts have held that Rule 65 is available to freeze assets *pendent lite* under some set of circumstances").

An asset freeze in the instant matter is unquestionably warranted because Defendants, who appear to be unknown individuals, that are manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale and/or selling Infringing Products to U.S. consumers solely via the Internet, and accepting payment for such Infringing Products in U.S. Dollars through Financial Institutions, thereby causing irreparable harm to Plaintiffs in the form of lost sales, loss of goodwill and loss of control of their reputation with licensees, retailers and consumers, and can, and most certainly have the incentive to, transfer and hide their ill-gotten funds if their assets are not frozen. *See Ference Dec.,* ¶ 6.

Moreover, to provide complete equitable relief, courts have granted such orders without providing notice to the defendants. Specifically, federal courts have held that where advance

notice of an asset restrain is likely to cause a party to alienate the assets sought to be restrained, a temporary restraining order may be issued *ex parte*. *See F.T. Int'l Ltd. v. Mason*, 2000 WL 1514881 *3 (E.D. Pa. 2000) (granting *ex parte* TRO restraining defendants' bank accounts upon finding that advance notice would likely have caused the defendants to secret or alienate funds); *CSC Holdings, Inc. v. Greenleaf Elec., Inc.*, 2000 WL 715601 (N.D. Ill. 2000) (granting *ex parte* TRO enjoining cable television pirates and restraining pirates' assets); *Dama S.P.A.* v. *Doe,* 2015 U.S. Dist. LEXIS 178076, at *4-6 (S.D.N.Y. June 12, 2015) (agreeing that, "Plaintiffs' concerns regarding the likelihood of dissipating assets merit the extraordinary remedy of *ex parte* relief and that there is a strong likelihood that advance notice of the motion would cause Defendants to drain Financial Institution accounts, thereby depriving Plaintiff of the remedy it seeks") and *SEC v. Caledonian Bank Ltd.,* 317 F.R.D. 358 (S.D.N.Y. 2016) (granting Plaintiffs' request for an *ex parte* asset freeze based on Plaintiffs' assertion that Defendants were foreign entities, and therefore could easily move assets out of bank or brokerage accounts at a moment's notice).**[12]**

In this case, Defendants' blatant violations of patent law warrant an *ex parte* order restraining the transfer of their ill-gotten assets. Moreover, as Defendants' business are conducted anonymously over the Internet, Plaintiffs have additional cause for *ex parte* relief, as Defendants may easily secret or transfer their assets with the Court's or Plaintiffs' knowledge.

### 2. Defendants' User Accounts and Merchant Storefronts Must be Frozen

A temporary restraining order which, in part, restrains and enjoins the Third Party Service Provider(s), as well as any and all as yet undiscovered online marketplace platforms, from providing services to Defendants' User Accounts and Merchant Storefronts is warranted and necessary because the continued offering for sale and/or sale of the Infringing Products by

---

[12]    See also *supra fn. 8.*

Defendants on their Merchant Storefronts through their User Accounts will result in immediate and irreparable injury to Plaintiffs, as described above. *See Gucci Am., Inc. v. Weixing Li,* 768 F.3d 122, 126 (2d Cir. 2014) (Hon. Richard J. Sullivan entered a temporary restraining order, which, in part, enjoined the sale of counterfeit goods on the Internet) and *AW Licensing, LLC v. Bao,* No. 15-cv-1373, 2015 U.S. Dist.. LEXIS 177101, at *3 (S.D.N.Y. Apr. 1, 2015) (Hon. Katherine B. Forrest entered a temporary restraining order which was subsequently converted into a preliminary injunction, which, in part, disabled the defendants' websites, which were their means of distributing, offering for sale and selling Infringing Products.).[13]

One reason why courts have ordered this relief is the ease with which a Merchant Storefront may be set up. For example, a defendant who knowingly sells Infringing Products will likely try and set up another Merchant Storefront to keep selling when the current Merchant Storefront stops working. *See Ference Dec.*, ¶ 6. This brings into play a balancing of the hardship to Defendants against the hardship to Plaintiffs if the relief is not granted. In the present case, the hardship to Plaintiffs outweighs any hardship to Defendants. The proposed Order does not block any of the enjoined Defendants from setting up another Merchant Storefront to sell non-Infringing Products. The proposed Order merely blocks any goodwill associated with the Merchant Storefront which sold Infringing Products; the Defendants are free to set up a new Merchant Storefront that does not sell Infringing Products.

Blocking the good will associated with the Merchant Storefront helps prevent the situation with the defendants where the Infringing Product listing has been taken down but if someone (e.g., a repeat buyer) contacts a Defendant at the Merchant Storefront using the messaging system provided by the online marketplace asking for the Infringing Product it will be

---

[13]    See also *supra id.*

made available by a Defendant.  *Id*.  The only way to preclude this type of harm to Plaintiffs is to freeze the Defendants' Merchant Storefronts.

A freezing of Defendants' Merchant Storefronts also acts to provide immediate notice of the present action to Defendants.  Indeed, a number of cases have required that the domain names on which a defendant's storefront operates be turned over to the plaintiff and pointed to a webpage providing notice of the lawsuit against the defendant.  *Iron Maiden Holdings Ltd. v. The P'ships & Unicorporated Assns. Identified on Schedule "A"*, No. 18-CV-522 (N.D. Ill. Feb. 1, 2018) ("Plaintiff may provide notice of these proceedings to Defendants, including notice of the preliminary injunction hearing and service of process pursuant to Fed.R.Civ.P. 4(f)(3), by electronically publishing a link to the Complaint, this Order and other relevant document on a website to which the Defendant Domain Names which are transferred to Plaintiffs' control will redirect").  Thus, the freezing of Defendants' Merchant Storefronts is also a manner of ensuring that Defendants receive notice of the present action.

### D.    PLAINTIFFS ARE ENTITLED TO AN ORDER AUTHORIZING EXPEDITED DISCOVERY

Additionally, Plaintiffs respectfully request that the Court order expedited discovery from Defendants, Financial Institutions and the Third Party Service Providers regarding the scope and extent of Defendants' infringing activities, as well as Defendants' account details and other information relating to Defendants' Financial Accounts, Assets and/or any and all User Accounts and or Financial Accounts with the Third Party Service Providers, including, without limitation any and all websites, any and all accounts with online marketplace platforms, as well as any and all as yet undiscovered accounts with additional online marketplace platforms held by or associated with Defendants, their respective officers, employees, agents, servants and all other

- 50 -

persons in active concert with any of them ("User Accounts"), and any and all User Accounts through which Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them operate storefronts to manufacture, import, export, advertise, market, promote, distribute, display, offer for sale, sell and/or otherwise deal in products, including Infringing Products, which are held by or associated with Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them ("Merchant Storefront(s)") including, without limitation, those owned and operated, directly or indirectly, by the Third Party Service Providers and the Financial Institutions.

District courts have broad power to require early document production and to permit expedited discovery. *See* Fed. R. Civ. P. 30(b), 34(b). Expedited discovery may be granted when the party seeking it demonstrates: (1) irreparable injury; (2) some likelihood of success on the merits; (3) some connection between expedited discovery and the avoidance of irreparable injury; and (4) some evidence that the injury which will result without expedited discovery looms greater than the injury that defendant will suffer if expedited discovery is granted. *See, e.g., Advanced Portfolio Technologies, Inc. v. Advanced Portfolio Technologies Ltd.*, 1994 U.S. Dist.. LEXIS 18457, at *7 (S.D.N.Y. Dec. 28, 1994).

Generally, a party may not seek discovery prior to a Rule 26(f) conference unless authorized by a court order. *See* Fed. R. Civ. P. 26(d)(1). While in the past, Courts have often applied a four-factor test to determine when expedited discovery may be granted,[14] they now

---

[14]  ". . . the plaintiff must demonstrate (1) irreparable injury, (2) some probability of success on the merits, (3) some connection between the expedited discovery and the avoidance of the irreparable injury, and (4) some evidence that the injury that will result without expedited discovery looms greater than the injury that the defendant will suffer if the expedited relief is granted." *Advanced Portfolio Techs., Inc. v. Advanced Portfolio Techs., Ltd.,* 1994 U.S. Dist. LEXIS 18457, at *7 (S.D.N.Y. Dec. 28, 1994).

apply a more flexible "good cause" test to examine "the discovery request . . . on the entirety of the record to date and the *reasonableness* of the request in light of all the surrounding circumstances." *Ayyash v. Bank Al-Madina,* 233 F.R.D. 325, 326 (S.D.N.Y. 2005) (quoting *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. O'Connor,* 194 F.R.D. 618, 624 (N.D. 1ll. 2000)).[15]  Regardless of which test is applied, Plaintiffs have established that they are entitled to the expedited discovery requested. Plaintiffs have demonstrated both irreparable injury and their probability of success on the merits above, and taking into account the covert nature of Defendants, their business operations and the fact that they appear to be foreign individuals or companies who have both the incentive and the capability to hide or destroy relevant business records and other discoverable information and documentation upon hearing of this action, Plaintiffs respectfully submit that there is good cause for this Court to grant Plaintiffs the expedited discovery requested herein because it will prevent further injury to Plaintiffs and assist Plaintiffs in pursuing its claims against Defendants and in recovering the damages to which they are entitled.  *See Ayyash,* 233 F.R.D., at 327.

Despite the likelihood of success of Plaintiffs' claims and the injury it has and continues to endure, if this Court were to deny expedited discovery, Plaintiffs may lose the opportunity to effectively pursue its claims against Defendants because there are several aspects of Defendants' infringing activities that Plaintiffs are not yet able to confirm, including: 1) the true identities of Defendants, 2) the full scope of Defendants' infringing activities, 3) the source or location of Defendants' inventory of Infringing Products and/or 4) where the proceeds from Defendants'

---

[15]  See, *e.g., Malibu Media, LLC v. Doe*, 2016 U.S. Dist. LEXIS 64656, at *4 (S.D.N.Y. May 16, 2016); *Malibu Media, LLC v. Doe,* 2015 U.S. Dist. LEXIS 87751, at *2-3 (S.D.N.Y. July 6, 2015); *Milk Studios, LLC v. Samsung Elecs. Co.,* 2015 U.S. Dist. LEXIS 38710, at *4-5 (S.D.N.Y. Mar. 25, 2015); *Admarketplace, Inc. v. Tee Support, Inc.,* No., 2013 U.S. Dist. LEXIS 129749, at *3-4 (S.D.N.Y. Sept. 11, 2013); *Dig. Sin, Inc. v. Does 1-176,* 279 F.R.D. 239, 241 (S.D.N.Y. 2012); and *Stern v. Cosby,* 246 F.R.D. 453, 457 (S.D.N.Y. 2007) (agreeing with the *Ayyash* Court that the more flexible approach is the better approach.)

infringing activities have gone.  *See Admarketplace, Inc. v. Tee Support, Inc.,* No. 13-cv-5635-LGS, 2013 U.S. Dist.. LEXIS 129749, at *5 (S.D.N.Y. Sep. 11, 2013) (finding that a plaintiff "who has a potentially meritorious claim and no ability to enforce it absent expedited discovery, has demonstrated good cause for expedited discovery"). Therefore, only through an order from the Court allowing expedited discovery will Plaintiffs be able to fully ascertain the extent of Defendants' infringing activities.

Plaintiffs respectfully request an *ex parte* Order allowing expedited discovery in order to permit them to discover certain identifying information, including information concerning all of Defendants' Financial Accounts, Assets and User Accounts and their sales of Infringing Products.  The discovery requested on an expedited basis in Plaintiffs' [Proposed] Order has been limited to include only that which is essential to prevent further irreparable harm. Under Fed. R. Civ. P. 65(d)(2)(C), this Court has the power to bind any third parties who are in active concert with Defendants that are given notice of the Order to provide expedited discovery. Moreover, Financial Institutions and the Third Party Service Provider have complied with similar requests for expedited discovery in like actions before this Court.  *See supra* note 6. Plaintiffs respectfully submit that its request should be granted.

### E.    PLAINTIFFS' REQUEST FOR A SECURITY BOND IN THE AMOUNT OF $5,000 IS ADEQUATE

Generally, a bond is a condition of preliminary injunctive relief.  Fed. R. Civ. P.  65(c) requires a successful applicant for a preliminary injunction to post a bond, "in such sum as the [district] court deems proper, for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined."  Thus, the injunction

bond "provides a fund to use to compensate incorrectly enjoined defendants." *Instant Air Freight Co. v. C.F. Air Freight, Inc.,* 882 F.2d 797, 804 (3d Cir. 1989) (quotations omitted).

The injunction bond also serves other functions. "It is generally settled that, with rare exceptions, a [party] wrongfully enjoined has recourse only against the bond." *Id.; see also Hoxworth v. Blinder, Robinson & Co., Inc.,* 903 F.2d 186, 210 n. 31 (3d Cir.1990) (Applicants "derive some protection from the bond requirement, for [enjoined parties] injured by wrongfully issued preliminary injunctions can recover only against the bond itself."). Thus, the bond generally limits the liability of the applicant and informs the applicant of "the price [it] can expect to pay if the injunction was wrongfully issued." *Instant Air Freight,* 882 F.2d at 805; *see also id.* at 805 n. 9 ("The bond can thus be seen as a contract in which the court and [the applicant] 'agree' to the bond amount as the 'price' of a wrongful injunction.") (quotations omitted).

Plaintiffs respectfully submit that in connection with the Court's order pursuant to its inherent equitable power requiring that the Defendants' Assets and Defendants Financial Accounts be frozen by the Financial Institutions, Plaintiffs' provision of security in the amount of $5,000 ("Security Bond") is more than sufficient. This Security Bond is equal to an amount that similar Plaintiffs have posted in related cases before Courts. See Generally, *Plaintiffs Request for Judicial Notice* (indicating $5000.00 bond amount required in all counterfeiting and infringement cases in the Western District of Pennsylvania); *See also. Doggie Dental Inc. v. Go Well, No. 19-cv-1282 (W.D. Pa. Oct. 11, 2019) (Hornak, J.) (Temporary Restraining Order required $5,000 bond); Doggie Dental Inc. v. Worthbuyer, No. 19-cv-1283 (W.D. Pa. Oct. 11, 2019) (Hornak, J.) (Temporary Restraining Order required $5,000 bond); Doggie Dental Inc. v. Max_Buy, No. 19-cv-746 (W.D. Pa. June 27, 2019) (Hornak, J.) (Temporary Restraining Order*

*required $5,000 bond); Doggie Dental Inc. v. Anywill, No. 19-cv-682 (W.D. Pa. June 13, 2019) (Hornak, J.) (Temporary Restraining Order required $5,000 bond); Airigan Solutions, LLC v. Artifacts_Selling, Civil Action No. 18-cv-1462-NBF (Temporary Restraining Order entered on November 2, 2018, $5,000.00 bond required), and Airigan Solutions, LLC v. Babymove, Civil Action No. 19-cv-166-NBF (Temporary Restraining Order entered on February 14, 2019, $5,000.00 bond required), Rapid Slicer, LLC v. Buyspry, Civil Action No. 19-cv-249-MJH (Temporary Restraining Order entered on March 11, 2019, $5,000 bond required), Showtech Merchandising, Inc. v. Various John Doe, et al, 2:12-cv-1270 (W.D. Pa. Sept. 6, 2012); See Wow-Virtual Reality, Inc. v. 740452063 et al.,* No. 18-cv-3618, Dkt. 18 (S.D.N.Y. April 25, 2018); *Rovio Entertainment Ltd. and Rovio Animation OY v. Best Baby and Kid Store, et al.,* No. 17-cv- 4884-KPF, Dkt. 6 (S.D.N.Y. June 28, 2017); *Rovio Entertainment Ltd. and Rovio Animation OY v. Angel Baby Factory d/b/a Angelbaby_factory et al.,* No. 17-cv-1840-KPF, Dkt. 11 (S.D.N.Y. March 27, 2017). Moreover, one New York Court has gone as far as to hold that no security bond is necessary in similar circumstances. *See, e.g., Ontel Products Corp. v. Airbrushpainting Makeup Store a/k/a Airbrushespainting, et al.,* No. 17-cv-871-KBF, Dkt. 20 (S.D.N.Y. Feb. 6, 2017).[16]

Plaintiffs believe that Defendants would be unable to show a strong likelihood of harm, and even if Defendants were to experience a likelihood of harm, such harm is outweighed by the harm to Plaintiff, as detailed above. For these reasons, Plaintiffs respectfully request that the Court, in accordance with Fed. R. Civ. P. 65(a), enter the Security Bond in the amount of $5,000.

---

[16] The Second Circuit has held that "[d]istrict courts ... are vested with wide discretion in determining the amount of the bond that the moving party must post." *Doctor's Assocs., Inc. v. Stuart,* 85 F.3d 975, 985 (2d Cir. 1996). Typically, "the amount of the bond posted is the limit that a wrongfully restrained party may recover," but the Court must also balance this against a likelihood of harm the non-movant would be able to show. *Interlink Int'l Fin. Servs,, Inc.* v. *Block,* 145 F. Supp. 2d 312, 314 (S.D.N.Y. 2001); *see also Doctor's Assocs.,* 85 F.3d at 985.

## IV. **CONCLUSION**

For the reasons set forth above, Plaintiffs respectfully request that its Application be granted *ex parte* and that the Court enter: 1) a temporary restraining order; 2) an order restraining assets and Merchant Storefronts; 3) an order to show cause why a preliminary injunction should not issue; and 4) an order authorizing expedited discovery against Defendants, the Third Party Service Providers and the Financial Institutions, in the form of the [Proposed] Order accompanying this Application, and such other relief to which Plaintiffs may show they are legally entitled.

Respectfully submitted,

Dated: November 20, 2023

/s/ Stanley D. Ference III
Stanley D. Ference III
Pa. ID No. 59899
courts@ferencelaw.com

Brian Samuel Malkin
Pa. ID No. 70448
bmalkin@ferencelaw.com

FERENCE & ASSOCIATES LLC
409 Broad Street
Pittsburgh, Pennsylvania 15143
(412) 741-8400 – Telephone
(412) 741-9292 – Facsimile

Attorneys for Plaintiffs