IN UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JACKI EASLICK, LLC, *et al.*,<br><br>        Plaintiffs,<br><br>v.<br><br>CJ EMERALD, *et al.*,<br><br>        Defendants. | Civil Action No. 2:23-cv-2000<br><br>**FILED UNDER SEAL** |

**DECLARATION OF JACKLYN EASLICK
IN SUPPORT OF PLAINTIFFS' *EX PARTE* APPLICATION
FOR ENTRY OF A TEMPORARY RESTRAINING ORDER
AND PRELIMINARY INJUNCTION**

I, JACKLYN EASLICK, do hereby declare:

1. I am over eighteen (18) years of age. I have never been convicted of a felony or any criminal offense involving moral turpitude, and I am fully competent to testify to the matters stated herein. I have personal knowledge of every statement made in this Declaration and such statements are true and correct.

2. I am the owner and managing director of Plaintiff Jacki Easlick, LLC ("JEL"). JEL is the 100% owner of Plaintiff JE Corporate LLC ("JEC") which owns all the intellectual property, including the trademarks and US Design Patent No.D695,526 S, the subject of which is the TOTE HANGER® brand handbag hanger hook. JEL sells the TOTE HANGER® brand handbag hanger hooks. Together, JEL and JEC are the Plaintiffs in this case.

3.	I make this declaration in support of Plaintiffs' *Ex Parte* Application for Entry of a Temporary Restraining Order and Preliminary Injunction against Defendants, the Individuals, Partnerships, and Unincorporated Associations identified on **Schedule "A"** to the Complaint.

4.	The Defendants use the interactive commercial Internet websites and Internet based e-commerce stores ("Online Marketplace Platforms" or "OMPs") using the seller identities and store names set forth on **Schedule "A"** to the Complaint.

5.	Before starting my own companies, I was the Product Development Director for Vera Bradley and ran that company's office and design studio. After a medical emergency that landed me in the ICU, I left Vera Bradley in 2010. Jobless, I began Jackie Easlick, LLC to design and create my own products.

6.	From my experience and travels, I realized that consumers like me needed a way to hang and organize their handbags, so I designed and invented the TOTE HANGER® brand handbag hanger hook. Today, Plaintiffs' JACKI EASLICK® brand encompasses many high quality, affordable luxury products, including, but not limited to women's clothing, shoes, handbags, jewelry, and other accessories, such as the TOTE HANGER® brand handbag hanger hook. ("Plaintiffs' Product").

7.	Plaintiffs have created and innovated all of their own products, packaging, and advertising.  This is a costly effort involving graphic design, industrial design and tooling.  It takes time to create, design, test, redesign and retest prototypes.  Products are introduced to retailers via tradeshows across the world. This introduction process costs a lot of money but it is a chance to show customers the quality and use of the product.

8. Using the brand name TOTE HANGER®, genuine goods comprising Plaintiffs' Product are widely legitimately advertised and promoted by Plaintiffs, their authorized distributors, and unrelated third parties via the Internet. Over the past several years, visibility on the Internet, particularly via Internet search engines such as Google, Yahoo!, and Bing has become increasing important to Plaintiffs' overall marketing.

9. Thus, Plaintiffs and their authorized distributors expend significant monetary resources on Internet marketing, including search engine optimization ("SEO") strategies. Other costs include print catalog ads, tradeshows, and handing out free samples. Those strategies allow Plaintiffs and their authorized retailers to fairly and legitimately educate consumers about the value associated with Plaintiffs' brand and the goods sold thereunder. The success of the Plaintiffs' Product is due in part to Plaintiffs' marketing and promotional efforts. These efforts include advertising and promotion through television, retailer websites, including Etsy and Wayfair, and other internet-based advertising, print, participation in trade shows, among other efforts, including in Pennsylvania in The Container Stores and Lowes. Plaintiffs' Product has been featured on *Get Organized* with *Home Edit* on Netflix, websites, social media, and various point-of-sale materials. Similarly, Defendants' individual seller's stores are indexed on search engines and compete directly with Plaintiffs for space in the search results.

10. Plaintiffs developed and sells their TOTE HANGER® brand handbag hanger hook under the registered TOTE HANGER® trademark ("Plaintiffs' Mark") No. 4408783 for "metal hooks" in class 6. A copy of the trademark registration certificate is attached to the Complaint as **Exhibit 3A.** Plaintiffs also own US Design Patent D 695,526 S, the subject of which is the ornamental design of Plaintiffs' Product. ("Plaintiffs' Patent" or "Plaintiffs' Design Patent") (Figures of the Plaintiffs' Patent are shown below).



A copy of the Plaintiffs' Design Patent is attached to the Complaint as **Exhibit 3B**.

11. The Plaintiffs' Product is known and famous for its distinctive design such that consumers recognize the design as originating from Plaintiffs. Below are images of Plaintiffs' Product, (ASIN[1] B07GJ1FVGC) which retails for $12.99:

---

[1] Refers to Amazon Standard Identification Number. Each product is assigned a unique ASIN when listed on Amazon.






12.     The unique features of Plaintiffs' Product, Plaintiffs' Mark and Plaintiffs' Work, including the distinct photographs, the design, the instructions, the packaging, and the unique presentation of the product, all comprise Plaintiffs' valuable intellectual property ("IP") and all

have become distinct in consumer's minds such that consumers associate all of this IP with Plaintiffs' Product.

13. Plaintiffs' Product has unique ornamental features. Plaintiffs are also the owner of various published photographs, videos, artwork, creative text, and product instructions appearing on their web sites https://jackieaslick.com/ and https://www.totehanger.com/ ("Plaintiffs' Works"). Plaintiffs' Product is marked in accordance with the Patent Act. Screen shots of the Plaintiffs' Amazon Store and Websites showing Plaintiffs' Work are shown in **Complaint Exhibit 2.**[2]

14. Due to the success of Plaintiffs' Product, Plaintiffs have become the target of multiple infringers seeking to profit off the goodwill, reputation, and fame enjoyed by Plaintiffs' Mark, Work, Patented Design, and Plaintiffs' Product.

15. Plaintiffs have been forced to police the various Internet marketplaces to identify and seek takedowns of unlawful listings for the Infringing Products since allowing the unlawful listings to continue is causing damage to Plaintiffs' reputation and bottom line. Some Defendants sell their Infringing Products at a bargain basement price that specifically undercuts the controlled retail price of the Plaintiffs' Product.. Because of the software provided by the various Internet Marketplaces, the lowest priced items are sorted to the top and/or promoted by the software and then purchased by the consumers. Plaintiffs' Product is thus ignored. Plaintiffs have had varied success in identifying and requesting takedowns of the various unlawful listings and as soon as one is taken down another unlawful listing replaces it.

---

[2] As set forth in the Complaint, and proven in **Composite Exhibit 1**, all of the Defendants are infringing on Plaintiff's Patent ("Infringing Products").

16. Another major problem with the Internet Marketplaces is that there is a direct and convenient connection between various Chinese and other unidentified manufactures to the Infringing Products. In essence, a counterfeiter in Vietnam or Russia, for example, may order a crate of Infringing Products from a Chinese manufacturer, have them drop shipped to a fulfillment center in the United States, and then sell the Infringing Products to a US consumer through a Third-Party Service Provider. The ease of this system encourages knock-offs to flourish.

17. For these reasons, Plaintiffs retained the legal counsel of Ference & Associates LLC ("the Ference firm") to perform the policing of various Internet marketplaces. During the process, the Ference firm identified many Chinese manufacturers operating on Marketplace Storefronts hosted by the Internet marketplaces. These manufacturers were supplying many of the other identified Defendants with infringing products flooding the Internet marketplaces and damaging Plaintiffs' business. This damage to Plaintiffs' business will continue unless Plaintiffs receive the sought after restraining order and injunctive relief.

18. Defendants' sale, distribution, and advertising of the Infringing Product are highly likely to cause consumers to believe that Defendants are offering genuine versions of Plaintiffs' Product when in fact they are not. To illustrate, below are several examples which vividly show that the Infringing Product itself and the manner in which it is marketed is designed to confuse and mislead consumers into believing that they are purchasing Plaintiffs' Product or that the Infringing Product is otherwise approved by or sourced from Plaintiffs:



Additional photograph comparisons of Plaintiffs' Product and the Infringing Products appear in **Exhibit 1** attached to the Complaint.

19.     Defendants' actions have resulted in actual confusion in the marketplace between Defendants' Infringing Product and the genuine version of Plaintiffs' Products. As poorly

designed and manufactured products, there is a risk of injury to and disappointment from the confused customers.

20. The Infringing Products threaten to destroy the reputation of high quality that Plaintiffs' Product has earned.

21. Defendants do not have, nor have they ever had, the right or authority to use Plaintiffs' Patented Design, for any purpose. Defendants' unlawful activities have deprived and continue to deprive Plaintiffs of their rights to fair competition. By their activities, Defendants are defrauding Plaintiffs and the consuming public for Defendants' benefit. Defendants should not be permitted to continue their unlawful activities, which are causing Plaintiffs ongoing irreparable harm. Accordingly, Plaintiffs are seeking entry of a temporary restraining order prohibiting Defendants' infringement of the Plaintiffs.

22. Given Defendants' copying and therefore infringing on Plaintiffs' Patent in violation of 35 U.S. Code § 271, the Infringing Products are indistinguishable to consumers, both at the point of sale and post-sale. By using Plaintiffs' intellectual property, Defendants have created a false association between their Infringing Products, their Internet e-commerce stores, and Plaintiffs. Such false association, constitutes unfair competition, infringes on Plaintiffs' Patent, and is causing and will continue to cause Plaintiffs' irreparable harm and damage.

23. The infringements of Plaintiffs' Patent deprive Plaintiffs of the ability to control the creative content protected by the Patent Act, it devalues the Plaintiffs' brand by associating it with inferior quality goods, and it undermines the value of the Plaintiffs' IP by creating the impression that infringement may be undertaken with impunity which threatens Plaintiffs' ability to attract investors and markets for the Plaintiffs' Products.

24. I have reviewed **Composite Exhibit 1** and the pictured web listings and upon my information and belief, the Defendants identified in **Schedule "A"** of the Complaint, were and/or are currently manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale and or/selling non genuine, infringing versions of Plaintiffs' Product and copying and using Plaintiffs' Patented Design, with the non-genuine, copies of Plaintiffs' Product directed to U.S. consumers, including those consumers in Pennsylvania, through their e-commerce stores.

25. None of the identified Defendants are authorized re-sellers of genuine version of Plaintiffs' Product. Moreover, none of the identified Defendants are authorized to manufacture, import, export, advertise, offer for sale or sell Plaintiffs' Product. Further, Plaintiffs never consented or granted permission to any of the identified Defendants to use Plaintiffs' Patented Design.

26. I have confirmed that all of the identified products pictured in **Composite Exhibit 1** are infringements of Plaintiffs' Product and upon information and belief, the Defendants set forth in **Schedule "A" of the Complaint** were and/or are currently manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale and/or selling infringing and unfairly competing products with Plaintiffs' Patented Design, to sell to U.S. consumers, including those consumers in Pennsylvania, through their Online Marketplace Storefronts. Through visual inspection of Defendants' listings for Infringing Products, it was confirmed that each Defendant is featuring, displaying, and/or using Plaintiffs' Patented Design without authorization and that the products that each Defendant is offering are infringing versions of the Plaintiffs' Product. The checkout pages or order forms for the Infringing Products confirm that each Defendant was and/or is still currently offering for sale and/or selling

Infringing Products through their respective Merchant Storefronts and User Accounts and that each Defendant provides shipping and/or has actually shipped Infringing products to the United States, including to customers located in Pennsylvania. At checkout, a shipping address located in the Pittsburgh area ("the Pennsylvania Address") in the Western District of Pennsylvania verified that each Defendant provides shipping to the Pennsylvania Address. I inspected the detailed web listings describing the Infringing Products Defendants are offering for sale through the Internet based e-commerce stores operating under each of their respective Seller IDs, and determined the products were not genuine versions of Plaintiffs' Products. Further, each of the Defendant's web listing infringes on the Plaintiffs' Patented Design.

27. Defendants' actions have caused and will continue to cause, in the event the requested relief is not granted, irreparable harm to Plaintiffs' goodwill and reputation as well as to the unassuming consumers who will continue to believe that the Defendants' cheaply produced, inferior, and typically faulty infringing products and knock-offs are produced, authorized, approved, endorsed, or licensed by Plaintiffs, when they are not.

28. Defendants' intentional and illegal conduct, including offering for sale and selling inferior infringing and knock-offs into the U.S. and the Commonwealth of Pennsylvania has caused lost profits to Plaintiffs and damaged the inherent value of Plaintiffs' business and the Plaintiffs' Mark, and, by diluting the brand and goodwill, damaging Plaintiffs' reputation for providing high quality products, and interfering with Plaintiffs' relationships with its customers and authorized resellers, as well as impeding Plaintiffs' ability to attract new customers and business. Defendants are willfully and in bad faith infringing on Plaintiffs' Work, thereby unjustly profiting from such activities at Plaintiffs' expense.

29. All of the injuries and damages described above are taking place in the United States, including in Pittsburgh, Allegheny County, Pennsylvania.

30. In addition to trying to stop the injuries and damages caused to Plaintiffs' business, Plaintiffs are also seeking in this lawsuit to protect consumers from being exposed to and purchasing the substandard, faulty, and potentially dangerous knock-offs and infringing products that wrongly indicate their origin as being from Plaintiffs or wrongfully use Plaintiffs' Patented Design.

31. I have worked with Plaintiffs' legal counsel in this case to assist them in identifying knock-off products and have provided them with various leads in order to find the various outlets for the infringing and knock-off products. If called upon by the Court, Plaintiffs' legal counsel is able to explain additional differences between the genuine version of Plaintiffs' Product and the knock-off products and unfairly competing products offered by the identified Defendants.

32. To be sure that none of the Defendants receive advance notice of the relief and remedies requested in Plaintiffs' Complaint, or the *Ex Parte* Application for Entry of a Temporary Restraining Order and Preliminary Injunction in this case, neither I nor anybody else at Plaintiffs have publicized the filing of this lawsuit.

I declare under penalty of perjury that the foregoing is true and correct.

*Dated: November 20, 2023*

Rye, NY

                                              /s/Jacklyn Easlick
                                                **JACKLYN EASLICK**