IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JACKI EASLICK, LLC, *et al.*, | |
| Plaintiffs, | Civil Action No. 2:23-cv-2000 |
| v. | |
| CJ EMERALD, *et al.*, | |
| Defendants. | **FILED UNDER SEAL** |

**DECLARATION OF STANLEY D. FERENCE III IN SUPPORT OF PLAINTIFFS'**
***EX PARTE* APPLICATION FOR ENTRY OF A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

I, STANLEY D. FERENCE III, hereby declare as follows:

1. I am an attorney with the law firm of Ference & Associates LLC ("the Ference Firm"), located at 409 Broad Street, Pittsburgh, Pennsylvania 15143 and represent Jacki Easlick ("Plaintiff") in the above-referenced action.

2. I make and submit this declaration in support of Plaintiffs' *ex parte* application for the following: 1) a temporary restraining order; 2) an order restraining assets and Merchant Storefronts; 3) an order to show cause why a preliminary injunction should not issue; and 4) an order authorizing expedited discovery against the above-named Defendants, Third Party Service Providers, and Financial Institutions, in light of Defendants' intentional and willful offerings for sale and/or sales of Infringing Products ("Application").

**Document Authentication**

    3.      According to the Fiscal Year 2021 U.S. Customs and Border Protection ("CBP") Intellectual Property Seizure Statistics Report, e-commerce sales have resulted in a sharp increase in the shipment of unauthorized products into the United States. Over 89% of all CBP intellectual property seizures were smaller international mail and express shipments (as opposed to large shipping containers). *Id.* Over half (51%) of CBP seizures originated from mainland China and Hong Kong. *Id.* A true and correct copy of an excerpt of this report is attached hereto as **Exhibit 1**.

    4.      According to Daniel C.K. Chow, in "Alibaba, Amazon, and Counterfeiting in the Age of the Internet," 40 NW. J. INT'L L. & BUS. 157, 186 (2020), third-party service providers do not adequately subject new sellers to verification and confirmation of their identities, allowing counterfeiters to "routinely use false or inaccurate names and addresses when registering with these e-commerce platforms." Further, "E-commerce platforms create bureaucratic or technical hurdles in helping brand owners to locate or identify sources of counterfeits and counterfeiters*"* (pages 186-187). A true and correct copy of this report is attached hereto as **Exhibit 2**.

    5.      A report on "Combating Trafficking in Counterfeit and Pirated Goods" prepared by the U.S. Department of Homeland Security's Office of Strategy, Policy, and Plans (Jan. 24, 2020) finds that on "at least some e-commerce platforms, little identifying information is necessary for a counterfeiter to begin selling" and recommending that "[s]ignificantly enhanced vetting of third-party sellers" is necessary. Counterfeiters hedge against the risk of being caught and having their websites taken down from an e-commerce platform by preemptively establishing multiple virtual store-fronts. Since platforms generally do not require a seller on a third-party marketplace to identify the underlying business entity, counterfeiters can have many

different profiles that can appear unrelated even though they are commonly owned and operated. A true and correct copy of this report is attached hereto as **Exhibit 3**.

**Rule 65(b) Certifications**

6.  In my experience policing the Plaintiffs' products, and based upon my review of lawsuits filed by other brand owners, sellers of counterfeit and/or infringing products, particularly those sellers whose product listings are removed, merely change the description or photograph and then re-post the listing for the products on their respective Merchant Storefront[1] or modify or create a new User Account[2] and/or Merchant Storefront and proceed to sell the same product again. Likewise, these counterfeit sellers are sophisticated enough to monitor the US courts through PACER and the like looking for lawsuits that name them or their associates Merchant Storefronts and will drain their related financial accounts upon any notice that a lawsuit is filed against their activity.

7.  Based upon my personal experience and my review of lawsuits filed by other brand owners, I have learned that the Defendants selling on online marketplaces do not display their registered business name or trade name, contact name, complete address, phone numbers, or any other contact information. These Defendants use their respective Merchant Storefronts and User Accounts to anonymously sell their Infringing Products. Likewise, these Defendants

---

[1] As defined in the Complaint, a "User Account" is any and all accounts with online marketplace platforms such as, aliexpress.com, Amazon.com, eBay.com, Joybuy, Temu. Walmart.com, and wish.com, as well as any and all as yet undiscovered accounts with additional online marketplace platforms held by or associated with Defendants, their respective officers, employees, agents, servants and all other persons in active concert with any of them.

[2] As defined in the Complaint, a "Merchant Storefront" is any and all User Accounts through which Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them operate storefronts to manufacture, import, export, advertise, market, promote, distribute, display, offer for sale, sell and/or otherwise deal in products, including Infringing Products, which are held by or associated with Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them.

typically use shipping services like EMS and DHL and ePacket. These shipping services provide minimal tracking and/or use incomplete or made-up return addresses to further secret their identities.

8. Based upon the foregoing facts, supported by the evidence set forth in **Composite Exhibit 1**, it is submitted that providing notice of the Motion for Temporary Restraining Order and the restraints of the Defendant's Merchant Storefronts and Accounts would allow the Defendants to avoid the Court's Order thus depriving the Plaintiffs of any damage recovery and otherwise prevent the full operation of the Court's Order.

9. To prevent the Defendants from escaping the effects of the Court's Order, Plaintiffs, Plaintiffs' Counsel and their agents have not publicized the filing of this lawsuit or the request for *ex parte* relief.

10. It is respectfully submitted that based upon the Complaint allegations, and the declarations and exhibits submitted therewith, Plaintiffs have met the requirements of Fed. R. Civ. P. 65 (b) in its application to the court for an Ex Parte Temporary Restraining Order because:

> (a) the specific facts in the affidavit and the verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and
>
> (b) the movants' attorney (undersigned) has herein certified in writing that notice would, in this case, defeat the purposes of the application for the *ex parte* temporary restraining order and asset restraint.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: Pittsburgh, Pennsylvania
November 20, 2023

/Stanley D. Ference III/
Stanley D. Ference III

- 5 -