IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| JACKI EASLICK, LLC, and JE CORPORATE LLC, | |
| Plaintiffs, | Civil Action No. 2:23-cv-2000 |
| v. | |
| CJ EMERALD, ABEL TANG, ACCENCYC US, ATRISS, AUTROW, BESTOYARD, BOKWIN, BONNIE CHILD, CBTONE, COCO'S HOUSE, COLORED FLAG, DSVENROLY DIRECT, ENTERTAINMENT FIRST, FACING THE OCEAN, FEPERIG, FITNICE OFFICIAL, FULL OF STARS.MIN, GARDEISH, GUTAPO, HEMPHILL HEN, HERLLOY, HOME DEPUTY, IDUSHOME, JAGOGH YSON, JINGWEI-US, JONERCEY, JRUIA, KARIN YANG, KEYBOO INC, LASENERSM, LIMICOUNTS, LIPU HOOKER, LITEVISO, LMPOSING, LUKINM, M.METEORITE, MAYBELLER, MUYUSH, MYFOLRENA OFFICIAL, MZEKGXM, NEZA-US, NISHUNA, PATRICK YAO, PBFZ, PENGWH SHOP, QIKITA, ROBITENO, SHANNON WENHA, SI PEIHONG, SINUOXIANG, SOMIROW, SURMOUNTY, THINKCREATORS, THOMAS ZACK YANG, TRACY ZHONG, TRAVELNA, UFURMATE US, UME SPORTS, VITONG, WAITKEY DIRECT, WEKIWGOT-US, YANHUSLSNE, ZARA LEI, ZEDODIER, ZGCZZ, ZHANGHETING, and ZHONG ROY, | **FILED UNDER SEAL** |
| Defendants. | |

---

**DECLARATION OF NICHOLAS MESITI, ESQ., IN SUPPORT OF PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION**

---

I, Nicholas Mesiti, Esq., under penalty of perjury, declare and state as follows:

I. **INTRODUCTION**

1.    I am an attorney duly admitted to practice law in the State of New York and have been retained as an expert by JE Corporate, LLC and Jacki Easlick, LLC (hereinafter "Plaintiffs") in connection with the above-captioned action. I make this declaration in support of Plaintiffs' motion for a preliminary injunction.

2.      My Curriculum Vitae is attached as an exhibit (see **Exhibit A).**  My time in this matter is billed at a rate of $580 per hour.

3.      As set forth in the Complaint in this matter, JE Corporate, LLC is the owner of United States Patent No. D695,526, entitled "HANDBAG HANGER HOOK" (hereinafter "the `526 patent") (see **Exhibit B).** Plaintiffs have accused CJ Emerald, Abel Tang, AccEncyc US, Atriss, Autrow,  Bestoyard, BokWin, Bonnie Child, CBTONE, Coco's House, Colored Flag, DSVENROLY Direct, Entertainment First, Facing the Ocean, Feperig, FitNice Official, Full of Stars.min, Gardeish, Gutapo, Hemphill Hen, Herlloy, Home Deputy, IdusHome, Jagogh Yson, JingWei-US, Jonercey, JRUIA, Karin Yang, Keyboo Inc., Lasenersm, Limicounts, LIPU Hooker, LiteViso, Lmposing, Lukinm, M.Meteorite, Maybeller, Mutush, Myfolrena Official, Mzekgxm, Neza-US, Nishuna, Patrick Yao, PBFZ, PengWH Shop, Qikita, Robiteno, Shannon Wenha, Si Peihong, Sinuoxiang, Somirow, Surmounty, ThinkCreators, Thomas Zack Yang, Tracy Zhong, Travelna, Ufurmate US, UME Sports, Vitong, Waitkey Direct, Wekiwgot-US, Yanhuslsne, Zara Lei, Zedodier, ZGCZZ, Zhangheting, and Zhong Roy, (hereinafter "Defendants") of infringing the `526 patent with the following products:

>            Infringing Product Type 1.
>            Infringing Product Type 2.
>            Infringing Product Type 3.
>            Infringing Product Type 4.

4.      I have been retained to provide an opinion on Defendants' infringement of the `526 patent, and the `526 patent's validity.  In forming the opinions expressed herein, I relied on my extensive experience as a patent attorney, which includes experience prosecuting and litigating utility and design patents and the factual considerations and legal analyses brought to bear in determining infringement and validity thereof.

## II.      BACKGROUND, EDUCATION, AND QUALIFICATIONS

5.      I have been a practicing attorney since 1988, and am currently a member and shareholder in the intellectual property law firm of Heslin, Rothenberg, Farley, & Mesiti, P.C., located at 5 Columbia Cir., Albany, NY, where I have practiced law since 1990.  My

practice focuses exclusively on intellectual property law including patent, trademark, copyright, and unfair competition law with emphasis on utility patent, design patent, trademark, and copyright litigation before federal trial and appellate courts of the United States. I have represented numerous clients at trial and on appeal for the purposes of seeking preliminary injunctions, permanent injunctions, accountings and damages. I have counseled clients in various intellectual property matters, including infringement of design patents.

6.   I received a Bachelor of Science degree in Mechanical Engineering in 1985 from Rensselaer Polytechnic Institute in Troy, New York. I received my Juris Doctorate degree in 1988 from Albany Law School of Union University, Albany, New York.

7.   I personally have prosecuted and/or litigated over a hundred design patents with the United States Patent and Trademark Office and United States federal courts, and my firm has likewise prosecuted and/or litigated over 3000 design patents.

### III.   OVERVIEW OF MY EXPERT OPINIONS

8.   My expert opinions are based on my knowledge, background, experience, and my review of the materials listed below:

     The complaint in this matter;

     United States Patent No. D695,526, and the prosecution history thereof and the references and prior art cited therein (see **Exhibit B**);

     United States Patent No. D560,924 (see **Exhibit C**);

     United States Patent No. 5,575,446 (see **Exhibit D**);

     United States Patent No. D475,278 (see **Exhibit E**);

     United States Patent No. D493,092 (see **Exhibit F**);

     United States Patent No. D644,438 (see **Exhibit G**);

     One of Infringing Product Type 1 (see **Exhibit H**);

     One of Infringing Product Type 2 (see **Exhibit I**);

     One of Infringing Product Type 3 (see **Exhibit J**);

     One of Infringing Product Type 4 (see **Exhibit K**);

     Plaintiff's webpage featuring the design (see **Exhibit L**);

     Webpages featuring Infringing Product Type 1 (see **Exhibit M**);

     Webpages featuring Infringing Product Type 2 (see **Exhibit N**);

     Webpages featuring Infringing Product Type 3 (see **Exhibit O**); and

Webpages featuring Infringing Product Type 4 (see **Exhibit P**).

9.    It is my expert opinion that the accused products infringe the `526 patent, and that the `526 patent is valid over the references and prior art cited in the `526 patent and by the United States Patent and Trademark Office during prosecution.

10.   In formulating my opinions, I have drawn from my understanding of United States law pertaining to interpreting the claims of design patents, determining whether articles infringe such claims, and whether such claims are valid.  Among the many pertinent federal court decisions which I am familiar with and which I have based my analyses on, the following cases are included:  *Microsoft Corp. v. i4i Ltd. P'ship,* 131 S. Ct. 2238, 180 L. Ed. 2d 131 (2011); *Graham v. John Deere Co. of Kansas City,* 383 U.S. 1, 86 S. Ct. 684 (1966); *Gorham Mfg. Co. v. White,* 81 U.S. 511, 20 L. Ed. 731 (1871); *Crocs, Inc. v. Int'l Trade Comm'n,* 598 F.3d 1294 (Fed. Cir. 2010); *Int'l Seaway Trading Corp. v. Walgreens Corp.,* 589 F.3d 1233 (Fed. Cir. 2009); *Egyptian Goddess, Inc. v. Swisa, Inc.,* 543 F.3d 665 (Fed. Cir. 2008) *(en banc); Catalina Lighting, Inc. v. Lamps Plus, Inc.,* 295 F.3d 1277 (Fed. Cir. 2002); *Hupp v. Siroflex of Am., Inc.,* 122 F.3d 1456 (Fed. Cir. 1997); *OddzOn Products, Inc. v. Just Toys, Inc.,* 122 F.3d 1396 (Fed. Cir. 1997); *L.A. Gear, Inc. v. Thom McAn Shoe Co.,* 988 F.2d 1117 (Fed. Cir. 1993); and *In re Sung Nam Cho,* 813 F.2d 378 (Fed. Cir. 1987); *Ethicon Endo-Surgery, Inc. v. Covidien, Inc.* 796 F.3d 1312 (Fed. Cir. 2015).

## IV.    LEGAL STANDARDS APPLIED IN AN INFRINGEMENT ANALYSIS

11.   I understand that the first step in conducting an analysis of infringement of a design patent entails construing the patent's claim ("claim construction"), which is an issue of law, followed by a factual inquiry as to whether there has been infringement.  *Egyptian Goddess, Inc. v. Swisa, Inc.,* 543 F.3d at 679-80.

### Construction of Design Patent Claims

12.   I understand that a design patent covers the nonfunctional, ornamental features of a design.

13. Design patents claim an overall design, and a claim construction that results from excessive focus on individual features of a design at the expense of considering the overall design is incorrect. *Crocs, Inc. v. Int'l Trade Comm'n,* 598 F.3d at 1303. Because design patents typically claim designs as shown in drawings, the primary basis for construing the overall design claimed in such patents is by observation of the drawings. *Crocs, Inc. v. Int'l Trade Comm'n,* 598 F.3d at 1302; *Egyptian Goddess, Inc. v. Swisa, Inc.,* 543 F.3d at 679. Because claim construction consisting of detailed verbal descriptions is likely to define a claim scope that is not an accurate representation of the overall visual impression manifested by the claimed drawings themselves, such verbally detailed construction of design patent claims is disfavored. *Crocs, Inc. v. Int'l Trade Comm'n,* 598 F.3d 1302; *Egyptian Goddess, Inc. v. Swisa, Inc.,* 543 F.3d at 679.

14. Additional factors, such as conventions applied in drafting design patents and their drawings and assertions made during patent prosecution, may also be brought to bear to determine the scope of patent protection embodied in the drawings claimed in a design patent. *Egyptian Goddess, Inc. v. Swisa, Inc.,* 543 F.3d at 680.

## Infringement of Design Patent Claims

15. I further understand that determining infringement of a design patent's claim is a factual determination and that it requires application of what is termed the "ordinary observer" test. *Gorham Mfg. Co. v. White,* 81 U.S. at 528; *Egyptian Goddess, Inc. v. Swisa, Inc.,* 543 F.3d at 670.

16. Infringement is found according to the ordinary observer test when, "'in the eye of an ordinary observer, giving such attention as a purchaser usually gives, two designs are substantially the same, [and] the resemblance is such as to deceive such an observer, inducing him to purchase one supposing it to be the other.'" *Egyptian Goddess, Inc. v. Swisa, Inc.,* 543 F.3d at 670, quoting *Gorham Mfg. Co. v. White,* 81 U.S. at 528. While a side-by-side comparison of the claimed design and the infringing design may be helpful in evaluating infringement, the test itself focuses on how the designs would

be interpreted by an ordinary observer familiar with the prior art, and not merely on whether the designs have shared features. *Croc, Inc. v. Int'l Trade Comm'n*, 598 F.3d at 1307.

17.    Infringement is found where an article embodies the overall effect of a claimed design. *Crocs, Inc. v. Int'l Trade Comm'n*, 598 F.3d at 1306. Because infringement requires only similarity of an article's design to a claimed design and not absolute identity between the two, infringement is found where an article's design is similar enough to a claimed design to exhibit the overall impression of the ornamental design features as claimed, and a finding of infringement does not require that the design of the article be identical to the claimed design. *Egyptian Goddess, Inc. v. Swisa, Inc.,* 543 F.3d at 678.

18.    In addition to comparing a patented design to an allegedly-infringing article in applying the ordinary observer test, comparison with prior designs that are similar to the patented design may also be of assistance, because the ordinary observer is presumed to have a general understanding of such prior designs as well. *Crocs, Inc. v. Int'l Trade Comm'n,* 598 F.3d at 1303; *Egyptian Goddess, Inc. v. Swisa, Inc.,* 543 F.3d at 678-79.

19.    The ordinary observer test is applied by considering what impression an ordinary purchaser would form when purchasing an accused article, rather than the impression an expert in the field would form under those circumstances. *Egyptian Goddess, Inc. v. Swisa, Inc.,* 543 F.3d at 670.

## IV.    LEGAL STANDARDS APPLIED IN A VALIDITY ANALYSIS

20.    To be valid, the invention claimed in a design patent must be novel and nonobvious. Tests for novelty and nonobviousness are applied to the claims of a design patent in the same manner as they are to those of a utility patent. *Hupp v. Siroflex of Am., Inc.,* 122 F.3d at 1462. Furthermore, just as for utility patents, a design patent is presumed valid, and this presumption can be overcome only by clear and convincing evidence. *Microsoft Corp. v. i4i Ltd. P'ship,* 131 S. Ct. at 2243; *Catalina Lighting, Inc. v. Lamps Plus, Inc.,* 295 F.3d at 1288.

**Functionality**

21.    The presence of functional features in a design does not render a claim to such a design invalid.  Rather, the scope of protection afforded by such a claim is limited to the ornamental, nonfunctional aspects of the claimed design.  *OddzOn Products, Inc. v. Just Toys, Inc.,* 122 F.3d at 1406.  Thus, when the claimed design is compared to the accused design, functional features are to be ignored.  *Catalina Lighting, Inc. v. Lamps Plus, Inc.,* 295 F.3d at 1287.  Furthermore, "[i]n determining whether a claimed design is primarily functional, '[t]he function of the article itself must not be confused with 'functionality' of the design of the article.'" *Ethicon Endo-Surgery, Inc. v. Covidien,* 796 F.3d at 1328 (quoting *Hupp v. Siroflex of Am., Inc.* 122 F.3d at 1462). A design is functional and thus invalid if the design is essential to the use and purpose of the article. *Ethicon Endo-Surgery, Inc. v. Covidien*, 796 F.3d at 1328; *L.A. Gear, Inc. v. Thom McAn Shoe Co.,* 988 F.2d at 1123. And, a design is essential to the use or purpose of the article if the design is "dictated by" its use or purpose (i.e., function). *Ethicon Endo-Surgery, Inc. v. Covidien*, 796 F.3d at 1328 (citing *In re Carletti,* 328 F.2d 1020, 1022 (1964)); *see also L.A. Gear, Inc. v. Thom McAn Shoe Co.,* 988 F.2d at 1123. When there are numerous different designs that are capable of performing the same function as a claimed design, differences between such designs and the claimed design are not dictated by functional concerns and may be considered ornamental.  *L.A. Gear, Inc. v. Thom McAn Shoe Co.,* 988 F.2d at 1123. The availability of such alternative designs is an important, if not dispositive, factor in evaluating the legal functionality of a claimed design. *Ethicon Endo-Surgery, Inc. v. Covidien*, 796 F.3d at 1329-30. As a result, "an inquiry into whether a claimed design is primarily functional should begin with an inquiry into the existence of alternative designs." *Id.* at 1330. "To be considered an alternative, the alternative design must simply provide 'the same or similar functional capabilities.'" *Id.* at 1331 (quoting *Rosco, Inc. v. Mirror Lite Co.*, 304 F.3d 1373, 1378 (Fed. Cir. 2002)

**Novelty**

22.    The claim to a design is not invalid for anticipation (i.e., lack of novelty) unless a prior art reference by itself teaches a design that is substantially the same as the claimed design.  In this regard, the "ordinary observer" test that is applied to determine whether an article infringes the claim in a design patent is also applied to determine whether a prior art reference renders the claim in a design patent invalid for anticipation.  That is, a

design patent is novel when its overall appearance is not so substantially similar to a design embodied in a single prior art reference that an ordinary observer would be deceived into mistaking the claimed design for that embodied in the prior art reference. *Int'l Seaway Trading Corp. v. Walgreens Corp.,* 589 F.3d at 1239-40.

## Nonobviousness

23.     The claim to a design is not invalid for obviousness unless, at the time the claimed design was invented, the overall appearance of the claimed design would have been obvious to someone who has ordinary skill in designing the articles involved, in light of prior art that collectively contains all of the ornamental features of the claimed design.  Four factors must be considered in determining whether a claim to a design is obvious:  (1) the scope and content of the prior art; (2) differences between the claim and the prior art; (3) the level of ordinary skill in the prior art; and (4) secondary considerations, if any, of nonobviousness.  *Graham v. John Deere Co. of Kansas City,* 383 U.S. at 17-18, 86 S. Ct. at 694; *Hupp v. Siroflex of Am., Inc.,* 122 F.3d at 1462; *L.A. Gear, Inc. v. Thom McAn Shoe Co.,* 988 F.2d at 1124.

24.     A claim to a design is not invalid for obviousness merely because each of several prior art references contain the features of the claimed design.  Rather, invalidity for obviousness requires that there was some reason, for ornamentality purposes, to combine the teachings of the prior art to create a design with the same overall visual appearance as the claimed design.  *In re Sung Nam Cho,* 813 F.2d at 382.

V.    **ANALYSES**

## Claim Construction

25.    The `526 patent claims "[t]he ornamental design for a handbag hangar hook, as shown and
described."  One embodiment is depicted therein in eight drawings.  The eight drawings
corresponding to the depicted embodiment are shown below, and are described in the `526
patent as follows:

Fig. 1 is a perspective view of the handbag hanger hook;

Fig. 2 is a front elevational view thereof;

Fig. 3 is a rear elevational view thereof;

Fig. 4 is a right-side elevational view thereof;

Fig. 5 is a left-side elevational view thereof;

Fig. 6 is a bottom plan view thereof;

Fig. 7 is a top plan view thereof; and,

Fig. 8 is a reduced scale perspective view thereof wherein the top hook is hung on a
rod, with a handbag handing from the bottom hook. The broken line showing the rod
and handbag in Fig. 8 is included for the purpose of showing environmental structure
and forms no part of the claimed design.



FIG. 1

FIG. 2

FIG. 3

FIG. 4

FIG. 5

FIG. 6

FIG. 7

FIG. 8

26.     The prosecution of the `526 patent does not include activity or actions which would in any way narrow the scope of the patented design or affect its claim construction. Thus, the claim construction of the `526 patent is based primarily upon the patent itself. Considering the overall visual impression given by these drawings, I construe the claim of the `526 patent, based upon the drawings therein, from the perspective of a person of ordinary skill in the art of handbag hanger hooks, as the design for a handbag hanger hook as illustrated in FIG. 1-8 of the `526 Patent, with the understanding that functional elements or features are to be discounted and only ornamental features included. Also, although detailed descriptions of the patented design are disfavored in claim construction, I have set forth below a written description of the patented design, which may be used in claim construction. The patented design includes the following ornamental elements, generally described:

(a)     When viewed from the front, a generally hook shaped top portion with a slight flare near the tip of the top portion, the top portion having a fairly consistent radius, and the hook portion terminating in a bulbous-shaped-type-tip. The top portion is connected to a bottom portion which is rotated ninety degrees from the top portion causing the bottom portion to appear substantially as a straight line from the front. The bottom portion also terminates in a bulbous-shaped-type-tip;

(b)     When viewed from the side, the top portion appears as a substantially straight vertical line formed by a rear section of the top portion with a very slight curvature with a partially visible front section which extends at an angle from the rear section which terminates in a bulbous-shaped-type-tip. The top portion is connected to the bottom portion by an angled offset section in the plane of the bottom portion. The bottom portion is generally U-shaped and terminates in a bulbous-shaped-type-tip;

(c)     When viewed from the top, the design has a generally cross shape, in which the bottom portion appears as a generally straight line terminating in a bulbous-shaped-type-tip, and in which the top portion appears as a generally straight line which is perpendicular to the bottom portion. The top portion includes a small flare near one end which terminates in a bulbous-shaped-type-tip. A slight offset with a curvature connects the top portion and the bottom portion; and

(d)     The overall form of the design is a hooked top portion in the shape of the top half of an "S," which is connected to a substantially U-shaped bottom portion rotated ninety degrees from the top portion. The top portion is connected to the bottom

11

portion by an offset section extending at an angle in the plane of the bottom portion. Both terminal ends of the design terminate in bulbous-shaped-type-tips.

## **Infringement**

27.   To perform my infringement analysis, I viewed the accused articles, including from the same perspectives as the drawings claimed in the `526 patent.  Photographs of the accused articles are included in **Exhibits H-K.** Comparisons of the accused articles, the patented design, and the closest prior art designs are included in **Exhibits Q-T**

28.   I then compared the patented design as shown in the `526 patent drawings as construed herein with the accused design to determine whether an ordinary, non-expert observer would consider them to be substantially similar to each other.

29.   I further determined what effect the consideration of prior art designs would have on the impressions formed by comparing the patented design with the accused articles.  To do this, I reviewed the references cited in the file history of the `526 patent. Among the designs, I considered the embodiments taught in United States Patent No. D560,924 (see **Exhibit C**) (hereinafter the `924 patent) and United States Patent No. 5,575,446 (see **Exhibit D**) (hereinafter the `446 patent) to be the most similar to the invention claimed in the `526 patent. The '924 and `446 patents are thus used for the analysis as the closest comparative designs found among the references cited in the file history of the `526 patent.

30.   Table 1, *infra,* compares first side views of a first embodiment claimed in the `526 patent with photographs of Defendant's accused Product Type 1, in view of the embodiments taught in the '924 and `446 patents, respectively. A more comprehensive comparison of these designs showing alternative views can be found in **Exhibit Q**.

| THE CLOSEST COMPARATIVE DESIGNS, THE DESIGN CLAIMED IN THE `526 PATENT, AND DEFENDANTS' INFRINGING PRODUCT TYPE 1 | | | | |
|---|---|---|---|---|
| | '924 Design | '446 Design | Patented Design | Infringing Product Type 1 |
| First Side |  |  |  |  |

31.     Table 2, *infra,* compares first side views of a first embodiment claimed in the `526 patent with photographs of Defendant's accused Product Type 2, in view of the embodiments taught in the '924 and `446 patents, respectively. A more comprehensive comparison of these designs showing alternative views can be found in **Exhibit R**.

| THE CLOSEST COMPARATIVE DESIGNS, THE DESIGN CLAIMED IN THE `526 PATENT, AND DEFENDANTS' INFRINGING PRODUCT TYPE 2 | | | | |
|---|---|---|---|---|
| | '924 Design | '446 Design | Patented Design | Infringing Product Type 2 |
| First Side |  |  |  |  |

13

32.    Table 3, *infra,* compares first side views of a first embodiment claimed in the `526 patent with photographs of Defendant's accused Product Type 3, in view of the embodiments taught in the '924 and `446 patents, respectively. A more comprehensive comparison of these designs showing alternative views can be found in **Exhibit S**.

| THE CLOSEST COMPARATIVE DESIGNS, THE DESIGN CLAIMED IN THE `526 PATENT, AND DEFENDANTS' INFRINGING PRODUCT TYPE 3 | | | | |
|---|---|---|---|---|
| | '924 Design | '446 Design | Patented Design | Infringing Product Type 3 |
| First Side |  |  |  |  |

33.    Table 4, *infra,* compares front views of a first embodiment claimed in the `526 patent with photographs of Defendant's accused Product Type 4, in view of the embodiments taught in the '924 and `446 patents, respectively. A more comprehensive comparison of these designs showing alternative views can be found in **Exhibit T**.

| THE CLOSEST COMPARATIVE DESIGNS, THE DESIGN CLAIMED IN THE `526 PATENT, AND DEFENDANTS' INFRINGING PRODUCT TYPE 4 | | | | |
|---|---|---|---|---|
| | '924 Design | '446 Design | Patented Design | Infringing Product Type 4 |
| Front |  | N/A |  |  |

34.     As is readily apparent, the designs of the accused articles are substantially similar, if not virtually identical, to the design claimed by the `526 patent.  And, the differences between the patented design and the comparative prior art designs are substantial.  A non-exhaustive set of examples of ornamental design features shared by the patented design and the accused articles includes:

(a)     When viewed from the front, the patented design and the accused articles exhibit a generally hook shaped top portion having a fairly consistent radius, the hook portion terminating in a bulbous-shaped-type-tip. The top portion is connected to a bottom portion which is rotated ninety degrees from the top portion, causing the bottom portion to appear substantially as a straight line from the front. The bottom portion also terminates in a bulbous-shaped-type-tip;

(b)     When viewed from the side, the top portion appears as a substantially straight line which terminates in a bulbous-shaped-type-tip.  The top portion is connected to the bottom portion by an offset in the plane of the bottom portion. The bottom portion is generally U-shaped and terminates in a bulbous-shaped-type-tip;

(c)     When viewed from the top, a generally cross shape, in which the bottom portion appears as generally a straight line terminating in a bulbous-shaped-type-tip, and in which the top portion appears as a generally straight line which is perpendicular to the bottom portion.  The top portion terminates in a bulbous-shaped-type-tip.  A slight offset connects the top portion and the bottom portion; and

(d)     The overall form of the patented design and the infringing designs is a hooked top portion in the shape of the top half of an "S," which is connected to a substantially U-shaped bottom portion rotated ninety degrees from the top portion. The top portion is connected to the bottom portion by an offset in the plane of the bottom portion. Both terminal ends of the designs terminate in bulbous-shaped-type-tips.

35.     Thus, the overall appearance of the accused articles is, if not virtually identical, at least

so similar to the design claimed in the `526 patent that, in my opinion, in light of the prior art, an ordinary observer would be unlikely to differentiate between them. In arriving at my opinion, I have construed the entirety of the design as indicated herein as being non-functional. However, even if there are functional components, my opinion of infringement would not change as an ordinary observer would still be unlikely to differentiate the overall appearance between the accused and patented designs. Although there are some differences between each of the accused articles and the patented design, these differences are insubstantial as they do not significantly affect the appearance of the overall design. Thus, although not entirely identical, the accused articles are substantially the same as the patented design.

36.    Even though some features of the design may perform a function, those features are not considered "functional" as the term is used with respect to design patents. Specifically, the patented design is not dictated by its use or purpose. Any function which may be performed by features of the patented design can be accomplished equivalently by a number of different designs. For example, the function of holding a handbag on a hanger can be performed by numerous alternative designs other than the patented design, such as the handbag hanger hook designs found in the '924 and '446 patents. Because both of these alternative designs can function in the same manner as the patented design in holding a handbag, there is no utilitarian reason for the specific design choices in the patented design, and those choices are considered ornamental. These choices include, among other features, the ninety-degree rotation between the top portion and bottom portion of the patented design, the slight offset in the plane of the bottom portion, and the bulbous-shaped-type-tips. Furthermore, even if the purpose of the patented design includes holding a handbag on a bar or similar structure at a ninety degree angle from the bar, the patented design is not functional. The size and shape of the parts of the handbag hanger hook can be changed and still function identically to the patented design. For example, the bottom section of the design could be of different shapes or proportions, such as square or V-shaped or a modified square or V-shape, and still function similarly, while looking substantially different than the patented design. Thus, due to the presence of numerous different designs which can equally accomplish the same function as the patented design, the patented design is not dictated by its function as a handbag hanger hook and is thus non-functional.

37.    It is therefore my opinion that the overall design claimed in the `526 patent is not
       functional, and Defendants are infringing the `526 patent.

## V.    VALIDITY OF THE `526 PATENT

38.    To perform my validity analysis, I considered the `526 patent, its prosecution history, and all
       of the references cited therein.

39.    Notably, the examiner issued no objections to the patentability of the patented design during
       examination and issued a Notice of Allowance as a first action, requiring only a minor
       Examiner's amendment to the figure descriptions in the application for clarity purposes.

40.    Like the examiner, I too considered all of the references cited in the `526 patent and,
       again like the examiner, am of the opinion that the ornamental features of the patented
       design are novel and nonobvious.

41.    To determine novelty of the `526 patent, I ascertained whether an ordinary observer would
       have found the overall visual impression of the patented design and any design taught within
       a single prior art reference to be so substantially similar as to mistake one for the other.
       None of the references considered individually teaches a design with an overall appearance
       that is so substantially similar to the design claimed in the `526 patent that an ordinary
       observer would confuse one for the other.  Therefore, it is my opinion that the design
       claimed in the `526 patent is novel and the patent is not invalid for anticipation.

42.    To determine nonobviousness of the `526 patent I first determined the scope and content of
       the prior art.  I next considered the level of ordinary skill in the art of handbag hanger hooks.
       I further considered the differences between the prior art and the design claimed in the `526
       patent.  I further considered whether, at the time the patented design was invented, it would
       have been obvious to a designer of handbag hanger hooks, possessing ordinary skill in the
       art, to combine the prior art references to make a design that is claimed by the `526 patent.
       The prior art references I considered were those cited in the `526 patent and considered by
       the examiner during prosecution.  It is my opinion that these references do not collectively
       teach all of the features of the design claimed in the `526 patent such that, at the time the
       patented design was invented, it would have been obvious for a designer of handbag hanger

hooks possessing ordinary skill to combine the teachings of these references to create the patented design.  It is therefore my opinion that the design claimed in the `526 patent is nonobvious and is not invalid for obviousness, over the references cited in the `526 patent.

43.    Based on the information received as set forth herein, my opinion is therefore that the `526 patent is valid.

44.    I further declare under the penalty of perjury that the statements made herein are true to the best of my knowledge.

Dated:  November 20, 2023                    /s/Nicholas Mesiti_____
                                             Nicholas Mesiti, Esq.