IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JACKI EASLICK, LLC, et al., | ) |
| Plaintiff, | ) Case No. 2:23-cv-02000 |
| v. | ) Hon. Judge William S. Stickman |
| CJ EMERALD, *et al.*, | ) |
| Defendants. | ) |

**Defendants' Response to Plaintiffs' Motion for Preliminary Injunction**

**NOW COME** certain defendants[1] ("Defendants"), by and through their undersigned counsel, in opposition to Plaintiff's motion for preliminary injunction [Dkt. 4] and argue as follows.

### I. Procedural Background

Plaintiff filed its Complaint on November 20 2023, alleging that Defendants committed design patent infringement. [Dkt. 2]. Also on November 20, 2023, Plaintiff filed an *ex parte* motion for entry of a temporary restraining order, which the Court granted on the same day. [Dkts. 4, 22]. Plaintiff wishes to convert the TRO into a preliminary injunction, however for the reasons below it does not have a reasonable likelihood of success on the merits. *See, e.g.*, LG Elecs. Inc. and LG Elecs. Alabama, Inc. v. The P'ships and Unincorporated Assocs. Identified in Schedule C, No. 21-cv-02600 [Dkt. 37] (N.D. Ill. June 17, 2021) (dissolving TRO on emergency basis and ordering that Amazon.com "immediately unfreeze and relist on Amazon.com the Moving Defendants' Amazon storefront accounts previously frozen by order of this court").

### II. Argument

---

[1] abel tang, ATriss, BESTOYARD, Bonnie Child, Colored Flag, Entertainment First, Facing the Ocean, Feperig, Full of stars.min, Gardeish, hemphill hen, Herlloy, Jagogh yson, Jonercey, Karin Yang, Limicounts, LIPU Hooker, Lmposing, M.Meteorite, Maybeller, Nishuna, Patrick Yao, PBFZ, Qikita, Robiteno, Shannon Wenha, Si Peihong, sinuoxiang, Somirow, Surmounty, ThinkCreators, Thomas Zack Yang, tracy Zhong, Travelna, Vitong, zara lei, ZHONG ROY

### a. Legal Standard

A "preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." Mazurek v. Armstrong, 520 U.S. 968, 972 (1997). In order to properly receive a preliminary injunction, Plaintiff must have demonstrated by a clear showing that "(1) the threat of irreparable harm for which there is no adequate remedy at law; (2) that the threatened injury to plaintiff outweighs the harm an injunction might inflict on the defendant; (3) that the plaintiff has a reasonable likelihood of success on the merits; and (4) that the issuance of a preliminary injunction would not disserve the public interest." Am. Can Co. v. Mansukhani, 742 F.2d 314, 321-22 (7th Cir. 1984). The movant "bears the burden of persuasion with regard to each factor in the preliminary injunction relief analysis" and if it "fails to meet just one of the prerequisites for a preliminary injunction, the injunction must be denied." Smith v. Foster, 2016 WL 2593957 (E.D. Wis. May 5, 2016), *quoting*, Cox v. City of Chicago, 868 F.2d 217, 219-23 (7th Cir. 1989). The strength, or lack thereof, of Plaintiff's likelihood of success on the merits affects the balance of harms. Illinois League of Advocates for the Developmentally Disabled v. Illinois Dept. of Human Servs., 60 F. Supp. 856, 889 (N.D. Ill. 2014).

### b. Plaintiff cannot show a likelihood of success on the merits because Defendants' products do not infringe the '526 Patent.

To show likelihood of success on the merits for the purposes of a preliminary injunction, a plaintiff "must prove that success in establishing infringement is more likely than not." Pressure Specialist, Inc. v. Next Gen Mfg. Inc., 469 F. Supp. 3d 863, 868-69 (N.D. Ill. 2020) (internal citations omitted). The accused device must embody every claim limitation in the patent or its equivalent. Id.

A design patent is infringed "'[i]f, in the eye of an ordinary observer, giving such attention as a purchaser usually gives, two designs are substantially the same, if the resemblance is such as to deceive such an observer, inducing him to purchase one supposing it to be the other.'" Dyson, Inc.

v. SharkNinja Operating LLC, 2018 WL 1906105 at *9 (N.D. Ill. Mar. 29, 2018), *citing*, Egyptian Goddess, Inc. v. Swisa, Inc., 543 F.3d 665, 670 (Fed. Cir. 2008).  The ordinary observer is "one of ordinary acuteness who is a principal purchaser of the underlying articles with the claimed designs." Ethicon Endo-Surgery, Inc. v. Covidien, Inc., 796 F.3d 1312, 1337 (Fed. Cir. 2015) (internal citations omitted).  The critical issue is whether "the effect of the whole design [is] substantially the same" as the corresponding portions of the accused design.  Payless Shoesource, Inc. v. Reebok Int'l, Ltd., 998 F.2d 985, 991 (Fed. Cir. 1993).

"Design patents have almost no scope. The claim at bar, as in all design cases, is limited to what is shown in the application drawings." In re Mann, 861 F.3d 1581, 1582 (Fed. Cir. 1988).  Here, the asserted patent includes solid black lines, which indicate a specific, narrow ornamental framed shelf design (in contrast to broken lines that would indicate that feature is not part of the claimed design).  *See*, In re Maatita, 900 F.3d 1369, 1372 (Fed. Cir. 2018) (in a design patent, "the solid lines...show the claimed design, whereas the broken lines show structure that is not part of the claimed design"); 37 C.F.R. § 1.152 (design patent drawing regulations setting forth the same).  Moreover, "surface shading should be used to show the character of contour of the surfaces represented." 37 C.F.R. § 1.152.

Additionally, claim construction of a design patent "limits the scope of the patent to its overall ornamental visual impression, rather than to the broader general design concept." Dyson, Inc. v. SharkNinja Operating LLC, 2018 WL 1906105 at *9 (N.D. Ill. Mar. 29, 2018).  Moreover, when a design contains both functional and ornamental aspects, "it is entitled to a design patent whose scope is limited to those [ornamental] aspects alone and does not extend to any functional elements of the claimed article." Id.  It should go without saying that the '526 Patent contains multiple features that are necessary for it to function as a hangar hook.  For example the top of the hook must be curved in such a way that it will hang over a typical cylindrical rod in a closet or other

storage space, and the bottom hook must be curved upwards to secure a handbag or other device to the bottom.  It should be noted that the mere fact the '526 Patent includes these upper and lower look designs that serve a functional purpose, does not preclude those elements from having protectable ornamentation.  Sport Dimension, Inc. v. Coleman Co., 820 F.3d 1316, 1321 (Fed. Cir. 2016). For example, in Ethicon, the Federal Circuit found that although a design patent did not protect the general design concept of the functional elements, those elements "nevertheless ha[d] some scope—the particular ornamental designs of those underlying elements."  Ethicon Endo-Surgery, Inc. v. Covidien, Inc., 796 F.3d 1312, 1334 (Fed. Cir. 2015).

Following, the '526 Patent does not protect the general design concept of a hangar hook including a functional upper and lower hook, and only protects the particular ornamental design of those underlying functional elements.  Id. ("although the Design Patents do not protect the general design concept of an open trigger, torque knob, and activation button in a particular configuration, they nevertheless have some scope - the particular ornamental designs of those underlying elements.").  Despite this, Plaintiff has attempted to broaden the scope of the '526 Patent and claim a likelihood of success on the merits because Defendants' products include the same general, functional upper and lower hook features.  This is improper and only represents that Defendants' products have the same *design concept* as the '526 Patent, not that they have the same visual impression.  Ethicon, 796 F.3d at 1336 ("On a general conceptual level, both designs include an open trigger, a small activation button, and a fluted torque knob in relatively similar positions within the underlying ultrasonic device. Similarity at this conceptual level, however, is not sufficient to demonstrate infringement of the claimed designs."); Durdin v. Kuryakyn Holdings, Inc., 440 F. Supp. 2d at 931-32 ("A description that merely represents the general design concept is too broad because design patents are entitled to almost no scope beyond the precise content of the patent drawings.") (internal citations omitted); OddzOn Prod., Inc. v. Just Toys, Inc., 122 F.3d 1396 (Fed.

Cir. 1997) ("We agree with the district court's claim construction, which properly limits the scope of the patent to its overall ornamental visual impression, rather than to the broader general design concept of a rocket-like tossing ball."). In other words, because the top and bottom hooks are functional, the '526 Patent protects only the ornamental designs adorning those features and not the general concept of a hangar hook with top and bottom hooks. Id. at 1337 ("because these elements have functional purposes, the Design Patents protect only the ornamental designs adorning those elements, and not the general concept of an ultrasonic surgical device having an open trigger, a fluted knob, and rounded bottom."). Thus, as shown in Figure 1, the solid lines and shading shown in the asserted patent constitutes the claimed design, and the '526 Patent does not protect the concept of a hangar with functional top and bottom hooks.



**Figure 1: Figs. 1 and 2 of the '526 Patent**

In contrast, it is readily apparent that Defendants' products do not contain the design limitations present in the asserted patent. Defendants products can generally be broken into four different groups selling identical or virtually identical products:

- Group 1, which comprises defendants LIPU Hooker, Herlloy, Jagogh Yson, Patrick Yao, Colored Flag, Full of starts.min, Nishuna, Si Peihong, zara lei, Karin Yang, Travelna, all sell <u>black</u> hangar hook products;

- Group 2, which comprises defendants Maybeller, Qikita, ATriss, Shannon Wenha, sinuoxiang,

Facing the Ocean, Surmounty sell <u>copper</u> colored hangar hook products;

- Group 3, which comprises Somirow, ThinkCreators M.Meteorite, Thomas Zack Yang, hemphill hen sell <u>gold</u> colored hangar hook products; and

- Group 4 which comprises ZHONG ROY, Tracy Zhong, ABEL TANG, Feperig, Robiteno, Limicounts, BESTOYARD, Gardeish, Vitong, Entertainment First, Lmposing, Bonnie Child, Jonercey, PBFZ which all sell <u>silver</u> hangar hook products.

As shown in Table 1, it is readily apparent that Defendants' products do not contain the design limitations present in the '526 Patent. Notably, as shown in the red circles in Table 1, the top hooks of the asserted design flare out at the end of the functional rounded hook middle, while all of Defendants' products are a traditionally shaped "fish-hook" or hangar design. Moreover, none of Defendants' products include the "cork-screw" feature shown in the blue circle in Table 1 of the asserted patent. Still further, each of Defendants' products contain a thickened rubber portion over the ends of the two featured hooks, whereas the asserted design includes circular ball shaped endings that are not present in Defendants' products.



| Figs. 1 and 3 of the '526 Patent | Defendants' Products |
|---|---|
|  | Group 1     Group 2 |



**Table 1: Comparison of '526 Patent and Defendants' Products**

See also, generally, [Dkt. 11]. While the differences in design between Defendants' products and the asserted patent are readily apparent in any context, the differences between the designs are even more prominent when viewed "giving such attention as a purchaser usually gives", that is, viewing the accused product hanging on a horizontal pole or a closet or coat rack. *See*, Egyptian Goddess, 543 F.3d at 670. In this context, the upper hook shape and readily visible, and the differences between the hook shape in Defendants' products and the asserted design becomes even more readily apparent. An ordinary observer would not overlook the readily apparent differences in the top hook shape, midportion twist (there is no corkscrew-life feature in Defendants' products whatsoever), and configuration, and this dissimilarity, among others, would prevent deception of an ordinary observer and keep the accused product from being so similar to the claimed designs that "in the market and with purchasers they would pass for the same thing - so much alike that even persons in the trade would be in danger of being deceived." Egyptian Goddess, Inc., 543 F.3d at 670. Accordingly, it is more likely than not that Defendants' products do not infringe the asserted patent, thus Plaintiff has no likelihood of success on the merits and their motion should be denied.

    c. **The asset restraint should be reduced to, at most, Defendants' profits from the**

**accused products because the Court's power to impose pre-judgment asset freezes under Rule 65 is limited to an equitable accounting of such profits.**

The Supreme Court has held that district courts generally lack the authority "to issue a preliminary injunction preventing [a defendant] from disposing of [its] assets pending adjudication" of a plaintiff's claim for money damages. Grupo Mexicano de Desarrollo v. Alliance Bond Fund, 527 U.S. 308, 333 (1999). This has been affirmed in the Third Circuit, which noted that Grupo Mexicano held that "an injunction freezing assets cannot be entered in an action for damages where no lien or equitable interest in the assets is claimed." Karpov v. Karpov, 555 F. App'x 146, 147 n.2 (3d Cir. 2014); Akers v. Akers, 2015 WL 4601155 at *2 (E.D. Pa. July 31, 2015) ("A federal court has no authority generally to freeze a defendant's funds to help ensure satisfaction of a judgment should the plaintiff prevail on an underlying legal claim."); *See also*, Karaha Boda Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara, 500 F.3d 11, 117 n.8 (2d Cir. 2007) ("[F]ederal courts lack power to issue…[i]njunctions that prohibit a party from transferring assets pending resolution of an action."); CSC Holdings, Inc. v. Redisi, 309 F.3d 988, 996 (7th Cir. 2002); Micnerski v. Sheahan, 2002 WL 31415753, at *1 (N.D. Ill. Oct. 25 2002) ("federal district courts do not have the power to grant preliminary injunctions to prevent a defendant from transferring assets in which no lien or equitable interest is claimed"). Prejudgment asset restraints, therefore, are limited to cases seeking equitable relief. Deckert v. Independence Shares Corp., 311 U.S. 282 (1940). In other words, "a plaintiff may obtain a prejudgment freeze on a defendant's assets only if he has asserted a **cognizable equitable claim**, has demonstrated a sufficient nexus between that claim and specific assets of the defendant which are the target of the injunctive relief, and has shown that the requested interim relief is a reasonable measure to preserve the status quo in aid of the ultimate equitable relief claimed." Akers, 2015 WL 4601155 at *2.(emphasis added).

Applying these principles, any prejudgment asset freeze should be limited to amounts that

the plaintiff is reasonably likely to recover pursuant to an equitable accounting of profits in this case. 35 U.S.C. § 289; Cengage Learning, Inc. v. Doe 1, 2018 WL 2244461, at *3 (S.D.N.Y. Jan. 17, 2018); *see also*, Deckers Outdoor Corp. v. P'ships & Unincorporated Assocs. Identified on Schedule A, 2013 WL 12314399 at *2 (N.D. Ill. Oct. 31, 2013).   ("[W]here equitable relief is sought, the appropriate scope of prejudgment restraint must be limited only to what is reasonably necessary to secure the (future) equitable relief.  For example, where (as here) a litigant seeks the equitable remedy of an accounting of profits, then if the amount of the profits is known, then the asset freeze should apply on to that specific amount, and no more... In other words, the asset-restraint order must be limited only to the extent that is needed to secure the equitable remedy; the scope of the exception (to the general ban on prejudgment restraint) is limited by the scope of the exception's rationale.").  The current injunction froze all funds in Defendants' accounts, regardless of source, however Defendants have provided evidence showing that Plaintiff has no equitable interest in particular restrained assets, as they are not the proceeds of the allegedly infringing activities. Karpov, 555 F. App'x at 147 n.2 ("an injunction freezing assets cannot be entered in an action for damages where no lien or equitable interest in the assets is claimed.").

To exempt assets from an asset freeze, the burden is on the party seeking relief to present documentary proof that particular assets [are] not the proceeds of counterfeiting activities.  Monster Energy Co. v. Chen Wensheng et al., 136 F. Supp. 3d 897, 910 (N.D. Ill 2015).  Defendants have provided such documentary proof, including sales records of the allegedly-infringing products supported by the attached Declaration of Xiaowen Li.  Defendants currently have more than $1,000,000 frozen in their accounts compared to a total of 37 sales of the accused provide for a total revenue and maximum equitable monetary award of $653.12 in the U.S.  Declaration of Xiaowen Li ¶ 4-5.  This is in no way "equitable", and there is no basis for including amounts in Defendant's accounts beyond their respective profit amounts.  *See, e.g.*, CSC; *See also*, Klipsch Grp., Inc. v. Big

Box Store Ltd., 2012 WL 4901407, at *2 (S.D.N.Y. Oct. 11, 2012) (reducing asset freeze upon defendants to $1,000 from $2,000,000 after defendants' documentary showing of profits earned from allegedly infringing goods).  The amount of any asset restraint on the Defendants' accounts should be reduced to, at most, the revenue from the Defendants' accounts' respective sales of allegedly-infringing products.

### III. Conclusion

With the benefit of adversary briefing, the Court can now see that Defendants' claims are not likely to succeed, and therefore the extraordinary relief provided by Rule 65 is unwarranted.  At a minimum, the asset restraint afflicting Defendants' accounts is overbroad and should be limited according to, at most, their revenue of the allegedly infringing products, if not simply the profit therefrom in accordance with the scope of equitable relief available.

Dated this December 11, 2023

        Respectfully Submitted,

        /s/Adam E. Urbanczyk
        Adam E. Urbanczyk
        AU LLC
        444 W. Lake St. 17th Floor
        Chicago, IL 60606
        (312) 715-7312
        adamu@au-llc.com
        *Counsel for Defendants*