IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JACKI EASLICK, LLC, *et al*, <br><br> *Plaintiffs*, <br><br> v. <br><br> CJ EMERALD, *et al*, <br><br> *Defendants*. | Civil Action No. 2:23-cv-2000 <br><br> Hon. William S. Stickman IV |

### **MEMORANDUM OPINION**

WILLIAM S. STICKMAN IV, United States District Judge

Pending before the Court is a Motion for Reconsideration (ECF No. 85) (the "Motion") filed by Plaintiffs, Jacki Easlick, LLC ("Easlick") and JE Corporate LLC ("JE") (collectively, "Plaintiffs") on February 13, 2024.[1] Plaintiffs filed the Motion seeking reconsideration of the Court's January 26, 2024 order (ECF No. 76) (the "Preliminary Injunction Order") and Memorandum Opinion (ECF No. 75) ("Preliminary Injunction Opinion") denying their motion for a preliminary injunction (ECF No. 4) ("Preliminary Injunction Motion"). In the Preliminary Injunction Opinion, the Court concluded that Plaintiffs, the moving parties, failed to make the requisite showing for the two gateway factors for a preliminary injunction, (1) likelihood of success on the merits and (2) irreparable harm. (ECF No. 75, p. 19). The Motion asks the Court

---

[1] On February 26, 2024, Plaintiffs notified the Court that they filed an appeal to the Court of Appeals for the Federal Circuit. (ECF No. 91). The Court, however, still has jurisdiction pursuant to Rule 4(a)(4)(B)(i) of the Federal Rules of Appellate Procedure. *See* FED. R. APP. P. 4(a)(4)(B)(i) ("If a party files a notice of appeal after the court … enters a judgment--but before it disposes of any motion listed in Rule 4(a)(4)(A)--the notice becomes effective to appeal a judgment or order … when the order disposing of the last such remaining motion is entered.").

to reconsider these two conclusions on the grounds of new evidence and clear error of law. (ECF No. 85, pp. 4–6). For the following reasons, the Court will deny the Motion.

### I.   STANDARD OF REVIEW

Motions for reconsideration must be strictly reviewed and sparingly granted. *See Williams v. City of Pittsburgh*, 32 F. Supp. 2d 236, 238 (W.D. Pa. 1998). Parties may not use such motions to "relitigate issues the court has already decided," *Id.*, or to "raise new arguments or evidence that could have been proffered prior to the issuance of the order in question," *Qazizadeh v. Pinnacle Health Sys.*, 214 F. Supp. 3d 292, 295–96 (M.D. Pa. 2016). Rather, parties may only request that a court revisit one of its prior decisions if justice so requires. *See Howard Hess Dental Lab'ys Inc. v. Dentsply Int'l, Inc.*, 602 F.3d 237, 251 (3d Cir. 2010) ("The purpose of a motion for reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence." (cleaned up)). In considering whether reconsideration is appropriate, courts are guided by the applicable Federal Rule of Civil Procedure—Rule 54(b), 59(e), or 60(b).

Motions for reconsideration are usually brought under Rule 59(e) or 60(b). *See Dayoub v. Penn-Del Directory Co.*, 90 F. Supp. 2d 636, 637 (E.D. Pa. 2000). To seek reconsideration under Rule 59(e), a moving party must demonstrate at least one of the following grounds: (1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court granted the motion for summary judgment; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice. *See Howard Hess Dental*, 602 F.3d at 251 (citations omitted). Similarly, to seek reconsideration under Rule 60(b), a party must prove one of six grounds enumerated in the rule itself. *See* FED. R. CIV. P. 60(b)(1)–(6); *see also United States v. Fiorelli*, 337 F.3d 282, 288 (3d Cir. 2003). These rules, however, only provide

2

for reconsideration of final judgments, not interlocutory orders. *See Dayoub*, 90 F. Supp. 2d at 637.

To seek reconsideration of an interlocutory order, a party must file a motion under Rule 54(b). *See Qazizadeh*, 214 F. Supp. 3d at 295 ("[M]otions for reconsideration of interlocutory orders—whether denials of summary judgment, grants of partial summary judgment, or any other non-final orders—are motions under Federal Rule of Civil Procedure 54(b)."). District courts generally possess more discretion to reconsider interlocutory orders than to reconsider final judgments. *See Foster v. Westchester Fire Ins. Co.*, 2012 WL 2402895, at *4 n.1 (W.D. Pa. June 26, 2012). Accordingly, "reconsideration of [interlocutory] orders may be had even if the movant cannot show" one of the particular grounds permitting reconsideration of final orders. *See Qazizadeh*, 214 F. Supp. 3d at 295. Nevertheless, "the movant must still establish good cause for why the court should revisit its prior decision." *Id.* And, pursuant to the law of the case doctrine, courts should only "grant motions for reconsideration in 'extraordinary circumstances.'" *Foster*, 2012 WL 2402895, at *4 n.1 (quoting *In re Pharmacy Benefit Managers Antitrust Litig.*, 582 F.3d 432, 438–39 (3d Cir. 2009)). The extraordinary circumstances permitting reconsideration of prior decisions "align neatly" with the three grounds justifying reconsideration under Rule 59(e). *Id.*; *see also A&H Sportswear Co., Inc. v. Victoria's Secret Stores, Inc.*, 2001 WL 881718, at *1 (E.D. Pa. May 1, 2001) ("Courts tend to grant motions for reconsideration sparingly and only upon the grounds traditionally available under Fed. R. Civ. P. 59(e).").

## II. Factual and Procedural Background

On December 18, 2023, Plaintiffs filed the Preliminary Injunction Motion requesting the Court enjoin Defendant AccEncyc US ("AE") from its unauthorized "promoting, advertising,

distributing, offering for sale, and selling" of Plaintiffs' patented TOTE HANGER® brand handbag hanger hook ("Tote Hanger") associated with U.S. Patent No. D 695,526 S ("Design Patent"). (ECF No. 2, pp. 2, 5, 25); (ECF No. 4); (ECF No. 22); (ECF No. 46). Plaintiffs claimed that AE infringed on the Design Patent by offering knock-off versions ("Accused Product") of the Tote Hanger on online marketplaces. (ECF No. 2, pp. 2–3).

The next day, the Court heard oral argument at a videoconference injunction hearing ("Preliminary Injunction Hearing") on the Preliminary Injunction Motion where the parties argued whether the Court should impose a preliminary injunction for the alleged design-patent infringement and pre-judgment asset restraint.[2] (ECF No. 65). During the Preliminary Injunction Hearing, the Court asked counsel for Plaintiffs if they had "any documentary evidence or witnesses to present." (*Id.* at p. 3). Plaintiffs' counsel responded, "[i]n terms of evidence, we're going to rely on what was submitted with our papers … [and are] pleased to answer any questions the Court may have." (*Id.*).

In its ensuing Preliminary Injunction Order, the Court denied the Preliminary Injunction Motion. (ECF No. 76). The Court held that Plaintiffs had not met their burden of establishing a likelihood of success on the merits and irreparable harm, two critical factors that a movant must demonstrate for a court to grant a preliminary injunction. (ECF No. 75, pp. 1, 19 n.2). As to the likelihood of success on the merits, the Court compared the ornamental features of the two

---

[2] Counsel for the Maybeller Defendants (ABEL TANG, ATRISS, BESTOYARD, BONNIE CHILD, COLORED FLAG, ENTERTAINMENT FIRST, FACING THE OCEAN, FEPERIG, FULL OF STARS.MIN, GARDEISH, HEMPHILL HEN, HERLLOY, JAGOGH YSON, JONERCEY, KARIN YANG, LIMICOUNTS, LIPU HOOKER, LMPOSING, M.METEORITE, MAYBELLER, NISHUNA, PATRICK YAO, PBFZ, QIKITA, ROBITENO, SHANNON WENHA, SI PEIHONG, SINUOXIANG, SOMIROW, SURMOUNTY, THINKCREATORS, THOMAS ZACK YANG, TRACY ZHONG, TRAVELNA, VITONG, ZARA LEI, ZHONG ROY) appeared at oral argument. (ECF No. 65). Plaintiffs and the Maybeller Defendants entered into a consent order for a preliminary injunction on December 22, 2023. (ECF No. 56).

designs and found "a substantial question [exists] of whether the claimed and accused designs are plainly dissimilar." (*Id.* at p. 15). As to irreparable harm, the Court concluded that Plaintiffs failed to provide concrete evidence to support a showing of irreparable harm. (*Id.* at p. 19).

Subsequently, on February 13, 2024, Plaintiffs filed the Motion, petitioning the Court to reconsider its Preliminary Injunction Order and Opinion, vacate its Preliminary Injunction Order, and grant their Preliminary Injunction Motion. (ECF No. 85).

### III.  ANALYSIS

Plaintiffs seek reconsideration under Rule 54(b). The Court holds that there is no reason to disturb its prior ruling. No intervening change in the controlling law has occurred, and there is no clear error of law or fact that the Court must correct. While Plaintiffs believe that "new evidence" has come to light that was not available when the Court adjudicated their Preliminary Injunction Motion, and that the new evidence warrants the imposition of a preliminary injunction against AE, the Court disagrees. The United States Court of Appeals for the Third Circuit has made it clear that "'new evidence,' for reconsideration purposes, does not refer to evidence that a party ... submits to the court after an adverse ruling. Rather, new evidence in this context means evidence that a party could not earlier submit to the court because that evidence was not previously available." *Howard Hess Dental*, 602 F.3d at 252.

#### A.  The Court Will Not Review Plaintiffs' New Evidence

Plaintiffs argue that the Court should reconsider their Preliminary Injunction Motion because, at the time of the Preliminary Injunction Hearing, AE had "submitted its opposition after the response period expired," and, therefore, AE "prevent[ed] Plaintiffs from replying *before* the hearing." (ECF No. 85, p. 4) (emphasis added). A motion for reconsideration "may not be used as a means to argue new facts or issues that inexcusably were not presented to the

court in the matter previously decided." *Romero v. Allstate Ins.*, 1 F. Supp. 3d 319, 420 (E.D. Pa. 2014). "[N]ew evidence, for reconsideration purposes, does not refer to evidence that a party … submits to the court after an adverse ruling. Rather, new evidence in this context means evidence that a party could not earlier submit to the court because that evidence was not previously available." *Blystone v. Horn*, 664 F.3d 397, 415 (3d Cir. 2011). "Where evidence is not newly discovered, a party may not submit that evidence in support of a motion for reconsideration." *Harsco Corp. v. Zlotnicki*, 779 F.2d 906, 909 (3d Cir. 1985).

Plaintiffs assert that AE's late filing of its opposition caused only evidence of photographs and drawings to be available to the Court at the time of the Preliminary Injunction Hearing. (ECF No. 85, p. 4). Specifically, Plaintiffs argue that the physical evidence, *i.e.*, tangible copies of the hooks at issue, were not in the Court's hands. (*Id.*). They also assert that Easlick's testimony about irreparable harm was not available to the Court. (*Id.*). For both assertions, Plaintiffs fail to explain how the physical evidence or Easlick's irreparable harm testimony was unavailable to them before they filed their Preliminary Injunction Motion and before the Preliminary Injunction Hearing. And the Court sees no reason why Plaintiffs could not provide the physical evidence or testimony at either juncture. At best, Plaintiffs regret their decision to rest on what they "submitted with [their] papers." (ECF No. 65, p. 3).

When litigating their Preliminary Injunction Motion, Plaintiffs had the burden to show that the Accused Product infringed upon the Tote Hanger and that AE's infringement caused Plaintiffs to suffer irreparable harm, but they failed to meet their burden. *See Doe v. Boyertown Area Sch. Dist.*, 897 F.3d 518, 526 (3d Cir. 2018). With their Preliminary Injunction Motion, Plaintiffs submitted pictures of the handbag hanger hooks at issue and a declaration from Easlick. (ECF No. 8); (ECF No. 11). Plaintiffs provided nothing more for their Preliminary

Injunction Motion or at the Preliminary Injunction Hearing. Plaintiffs' proffering of the physical evidence and Easlick's testimony now is nothing more than evidence that was available before the Preliminary Injunction Opinion and Preliminary Injunction Order. None of this evidence constitutes new evidence. For these reasons, the Court does not find that the evidence warrants reconsideration.[3]

      **B.**      **The Court Did Not Err in Applying the Ordinary Observer Test**

Plaintiffs assert that the Court erred in its Preliminary Injunction Opinion and Order by (1) mistakenly focusing on the individual elements of the Tote Hanger instead of the overall appearance of the patented design; and (2) failing to compare the two designs in view of the prior art. (ECF No. 85, p. 4). Motions for reconsideration "address[] only factual and legal matters that the Court may have overlooked. It is improper on a motion for reconsideration to ask the Court to rethink what it had already thought through—rightly or wrongly." *Gibbs-Squires v. Cosby*, No. 16-768, 2017 WL 5515952, at *1 (E.D. Pa. March 17, 2017) (citation and internal quotation marks omitted). Ultimately, the Court disagrees with Plaintiffs as they have not demonstrated that the Court erred in applying the ordinary observer test.

First, Plaintiffs contend that, when applying the ordinary observer test, the Court overlooked the overall appearance of the patented design in favor of individual elements. (ECF No. 85, p. 4). From Plaintiffs' perspective, the Court improperly eliminated structural elements in construing the scope of their design patent claim. (*Id.*). By discounting these structural elements, Plaintiffs assert that the Court employed an element-by-element comparison instead of analyzing the overall visual impressions of the claimed and accused designs. (*Id.*).

---

[3] Even if the Court was willing to consider the physical copies of the handbag hanger hooks, the Court would find that this alleged "missing physical evidence" confirms its infringement analysis in the Preliminary Injunction Opinion.

The Court disagrees. To start, the Court did not eliminate any structural elements *entirely* from Plaintiffs' claim. The Court only excluded the concept of two attached hooks and the vertical configuration of the top and bottom hooks because they were driven purely by utility.[4] (ECF No. 75, p. 9). Specifically, Plaintiffs contend that the Court excluded the 90-degree offset of the top and bottom hooks and the hook shapes. (ECF No. 85, p. 5) ("[T]he 90[-]degree bend ... is the aesthetic feature... [,] and the hook shapes are not functional."). Yet, the Court did not factor out either of these ornamental features. (ECF No. 75, p. 10) ("The Design Patent, however, still protects the ornamental features of the Tote Hanger's top and bottom hooks, which include, among other non-functional features, the shape of the hooks ... [and] the 90-degree offset.").[5]

Next, the Court compared the overall impression of the two designs. In accordance with Federal Circuit precedent, the Court began its ordinary observer analysis by conducting a side-by-side comparison of the Accused Product and the Tote Hanger to analyze the overall visual effect of the two products. (ECF No. 75, pp. 14–15). The Court considered how the significant differences in each design's ornamental features, when viewed together, affected the overall designs. (*Id.* at pp. 15–16); *See Lanard Toys Ltd. v. DolgenCorp LLC*, 958 F.3d 1337, 1343

---

[4] In Easlick's "new" declaration, Plaintiffs argue that the Court's claim construction failed to consider how other products on the market are shaped differently and accomplish the same function as the Tote Hanger. (*See* ECF No. 85-2, ¶¶ 19, 28). The Court did not consider this evidence because Plaintiffs did not provide it initially. As stated in Section A above, the Court will not consider new evidence that was available, and Plaintiffs could have submitted. Based on the evidence presented, the Court's claim construction was correct.

[5] In applying the ordinary observer test, the Court did not exclude the Tote Hanger's 90-degree offset. Instead, in considering the preliminary injunction standard, the Court discussed how the dissimilarities in the two designs impacted the products' overall visual impressions, which led the Court to its conclusion that "a substantial question [exists as to] whether the claimed and accused designs are plainly dissimilar." (ECF No. 75 at p. 15). In turn, the Court did not find that Plaintiffs demonstrated that an ordinary observer would "more likely than not" be deceived into mistakenly purchasing the Accused Product instead of the Tote Hanger.

(Fed. Cir. 2020) ("Under the 'ordinary observer' test, a court must consider the ornamental features and analyze how they impact the overall design.")

As the Court explained in the Preliminary Injunction Opinion, upon viewing the claimed and accused designs, as a whole, an ordinary observer would immediately gravitate to the center of the hooks as they are prominent and distinctive. (ECF No. 75, pp. 15) ("After comparing the overall visual effect of the two products, the most obvious difference lies with the center of each handbag hook. … [T]he human eye is immediately drawn to the contrasting corkscrew-like center of the Tote Hanger against the laterally bent center of the Accused Product.").[6] As the eye drifts from the center of the hooks, other dissimilarities in ornamental features become immediately noticeable, such as the shapes of the bottom hooks, the "sphere-shaped caps compared to the tube-like caps on the Accused Product," and the Tote Hanger's flared tip. (*Id.* at p. 15).

The Court did not find any of the ornamental dissimilarities to be minor or trivial. *See, e.g.*, (*Id.* at p. 15) ("In contrast, the Accused Product's bottom hook is crescent-shaped and connected to the center of the hook …. [W]hat is critical is that an ordinary observer would notice how the Accused Product's bottom hook is bent in a more open-face manner than the Tote Hanger's."). Instead, the Court found them to be significant differences that were integral to their respective designs and impacted the ordinary observer's overall visual impressions. (ECF No. 75, pp. 15–16) (citing *Int'l Seaway Trading Corp. v. Walgreens Corp.*, 589 F.3d 1233, 1243 (Fed. Cir. 2009) ("The mandated overall comparison is a comparison taking into account significant differences between the two designs, not minor or trivial differences that necessarily

---

[6] *See also* (ECF No. 75, p. 15) ("Even if the pictures of the Tote Hanger and the Accused Product were mixed randomly, an ordinary observer could quickly restore them to their original order upon viewing the center of the parties' handbag hooks.").

exist between any two designs that are not exact copies of one another.")). As a result, the Court determined that Plaintiffs did not show that the accused design "more likely than not" infringes upon the claimed design. (ECF No. 75, pp. 6, 16).

Second, Plaintiffs claim that the Court did not consider the prior art in its initial infringement analysis. (ECF No. 85, p. 1). The Court did not analyze the prior art because it determined that a substantial question exists as to whether the Tote Hanger and the Accused Product are "plainly dissimilar," which is not enough to show that there is a likelihood of substantial similarly between the two designs. (ECF No. 75, p. 15) "Where the claimed and accused designs are 'sufficiently distinct' and 'plainly dissimilar,' the patentee fails to meet its burden of proving infringement as a matter of law." *Ethicon Endo-Surgery, Inc. v. Covidien, Inc.*, 796 F.3d 1312, 1335 (Fed. Cir. 2015) (citing *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 678 (Fed. Cir. 2008)). Therefore, the Court had no reason to consider the prior art in its initial infringement analysis. Plaintiffs desire for the Court to rethink how it applied the ordinary observer test is not a proper basis for a motion for reconsideration.

Even if the Court had considered the prior art, the outcome of the Preliminary Injunction Order and Preliminary Injunction Opinion would not have changed. If the claimed and accused designs are not plainly dissimilar, and prior art exists, "resolution of the question of whether the ordinary observer would consider the two designs to be substantially the same will benefit from a comparison of the claimed and accused designs with the prior art." *Samiam Group, LLC v. Coopersburg Assocs., Inc.*, 650 F. Supp. 3d 295, 312 (E.D. Pa. 2023) (citation omitted). "When the differences between the claimed and accused design are viewed in light of the prior art, the attention of the hypothetical ordinary observer will be drawn to those aspects of the claimed design that differ from the prior art." *Egyptian Goddess, Inc.*, 543 F.3d at 676.

Here, the prior art submitted by Plaintiffs differs from the claimed design in many respects.

| '924 Design | '446 Design | Patented Design |
|---|---|---|
| | | |

(ECF No. 11, p. 14). Those ornamental dissimilarities include the shapes of the hooks, the finished ends, flared tips, and the downward bent center of the hook. Each of these ornamental dissimilarities are some of the same ornamental dissimilarities that the Court held impacted the ordinary observer's perception of the overall claimed design against the accused design. With the attention of the hypothetical ordinary observer still drawn to these significant differences, as noted in the Preliminary Injunction Opinion, re-application of the ordinary observer test would not have changed the overall visual effect of the two designs. As such, Plaintiffs have not shown that an ordinary observer would "more likely than not" be deceived into mistakenly purchasing the Accused Product instead of the Tote Hanger. Plaintiffs are not entitled to preliminary injunctive relief.

## IV. Conclusion

For these reasons, the Court holds that reconsideration is not appropriate. It will deny Plaintiff's motion by Order of Court to follow.

BY THE COURT:

_____
WILLIAM S. STICKMAN IV
UNITED STATES DISTRICT JUDGE

Date: 4-17-24